1  Shaun Setareh (SBN 204514)
   shaun@setarehlaw.com
2  Jose Maria D. Patino, Jr. (SBN 270194)
   jose@setarehlaw.com
3  Tyson Gibb (SBN 339154)
   tyson@setarehlaw.com
4  **SETAREH LAW GROUP**
   9665 Wilshire Boulevard, Suite 430
5  Beverly Hills, California 90212
   Tel:    (310) 888-7771
6  Fax:    (310) 888-0109

7  Attorneys for Plaintiffs,
   AMANDA HALE AND JESUS GOMEZ
8
   [*additional counsel listed on following page*]
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  AMANDA HALE and JESUS GOMEZ., on      Case No. 3:21-cv-09978-VC
    behalf of themselves and all others similarly
14  situated, and the general public,      **NOTICE OF MOTION AND MOTION FOR
                                           CLASS CERTIFICATION;
15              *Plaintiff*,               MEMORANDUM OF POINTS AND
                                           AUTHORITIES**
16      vs.

17  BRINKER INTERNATIONAL, INC., a
    Delaware corporation; BRINKER
18  INTERNATIONAL PAYROLL COMPANY,
    L.P., a Delaware limited partnership;
19  BRINKER RESTAURANT CORPORATION,
    a Virginia corporation; and DOES 1 through 50,
20  inclusive,                             *Hearing Information*
                                           Date:        September 26, 2024
21              *Defendants*.              Time:        10:00am
                                           Courtroom:  4
22

23

24

25

26

27

28

---

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1

**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
Andrew J. Rowbotham (SBN 301367)
arowbotham@haineslawgroup.com
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424)292-2350
Fax: (424)292-2355

Attorneys for Plaintiffs
AMANDA HALE and JESUS GOMEZ

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on September 26, 2024 at 10:00 a.m., or as soon thereafter as may be heard in Courtroom 4 of the United States District Court for the Northern District of California, located on the 17th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. Plaintiff Amanda Hale and Plaintiff Jesus Gomez (collectively "Plaintiffs") will and hereby do move this Court for an order certifying the following classes:

**Missed Meal Period Class**
All non-exempt employees of Defendants in California who signed the same arbitration agreement as Plaintiffs Hale and Gomez,[1] who worked a shift in excess of 6 hours, and whose timekeeping records do not reflect any recorded meal period for such shifts, during the time period November 18, 2018 through the present.

**Missed Rest Period Class**
All non-exempt positions of Defendants in California who signed the same arbitration agreement as Plaintiffs Hale and Gomez, and who worked a shift of at least 3.5 hours during the time period November 18, 2018 through the present.

**Cell Phone Reimbursement Class**
All non-exempt positions of Defendants in California who signed the same arbitration agreement as Plaintiffs Hale and Gomez, and who were required to utilize their personal cell phone to use the application HotSchedules, during the time period November 18, 2018 through the present.

Plaintiff further moves for an order pursuant to Fed. R. Civ. P. 23(g) appointing Setareh Law Group and Haines Law Group, APC, as class counsel. This Motion is made pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Compendium of Evidence filed herewith, all other documents on file with the Court in this action, and any further argument as may be made at the hearing.

DATED: July 17, 2024                                     SETAREH LAW GROUP

                                                        /s/ Shaun Setareh
                                                        SHAUN SETAREH
                                                        Attorneys for Plaintiffs

---

[1] Plaintiffs have limited their class definitions to a subset of employees who signed the same unconscionable arbitration agreement as Plaintiffs Hale and Gomez. This Court has held that "if a class is certified, it will be limited to this subset of employees." *See* ECF 66. The putative class members signed the same arbitration agreement as Hale and Gomez which this Court found to be unconscionable. *See* ECF 22.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................ 3

      A.   Plaintiffs Amanda Hale and Jesus Gomez ............................................... 3

      B.   Brinker's Meal Period and Rest Break Policies ....................................... 4

      C.   Brinker's Meal Period and Rest Break Practices ..................................... 4

      D.   Brinker's Timekeeping System and Attestation Process ......................... 9

      E.   Brinker's Failed to Reimburse Employees for Required Cell Phone Usage.......... 10

III.  SUMMARY OF APPLICABLE LAW.......................................................... 11

      A.   An Employer's Obligation to Provide Meal Periods .............................. 11

      B.   An Employer's Obligation to Authorize and Permit Rest Periods....................... 14

      C.   An Employer's Obligation to Reimburse Employees for Business Expenses ....... 16

IV.   ARGUMENT .................................................................................................... 16

      A.   The Standards for Class Certification .................................................... 16

      B.   The Standards of Rule 23(a) Have Been Met .......................................... 18

            1.   The Classes are Numerous ............................................................ 18

            2.   Commonality is Satisfied .............................................................. 18

            3.   Typicality is Satisfied as Plaintiffs and Class Members Have the Same Claims........................................................................................... 20

            4.   Adequacy is Satisfied: Plaintiffs Have No Conflicts of Interest With Class Members, are Able to Vigorously Prosecute the Action, and have Hired Qualified Counsel .................................................. 20

      C.   The Standards of Rule 23(b)(3) Have Been Met................................... 21

            1.   Common Questions Predominate: the Claims Turn on Common Legal Issues, and Damages Can be Feasibly and Efficiently Calculated............. 22

            2.   Individualized Issues as to Damages Do Not Defeat Predominance. ........ 22

            3.   The Classes are Ascertainable......................................................... 24

            4.   Class-Action Treatment Is Superior to Individual Actions. ...................... 24

V.    CONCLUSION................................................................................................. 25

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

i

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

**TABLE OF AUTHORITIES**

Cases

*Abdullah v. U.S. Sec. Associates*, 731 F.3d 952, 957 (9th Cir. 2013) .......................... 19, 22

*Adobe Systems, Inc. Securities Litig.*, 139 F.R.D. 150 (N.D.Cal. 1991)......................... 21

*Alberts v. Aurora Behavioral Health Care,* 241 Cal.App.4th at 409 (2015) ...................... 15

*Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)............................................... 22, 25

*Arroyo v. International Paper Co.*, 2020 WL 887771 (N.D. Cal. 2020) ........................... 16

*Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977)................. 17

*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 267................................ 15

*Blackie v. Barrack*, 524 F.2d 891, 907 n. 17 (9th Cir. 1975)............................... 17, 18, 25

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012)............................ 1, 13, 14, 15

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)........................... 24

*Cicairos v. Summit Logistics, Inc.,* 133 Cal. App. 4th 949, 962 (2005) ........................... 24

*Cochran v. Schwan's Home Serv., Inc.* (2014) 228 Cal.App.4th 1137, 1144.................................. 16

*Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013).................................................. 23

*Del Campo v. American Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 592 (N.D. Cal. 2008). 19

*Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) ........................ 17

*Donohue v. AMN Services, Inc.*, 11 Cal.5th 58, 61 (2021)................................. 1, 11, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).................................. 17, 18, 25

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) ........................... 17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).................................. 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)............................... passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) ................................ 17

*Hernandez v. Mendoza,* 199 Cal.App.3d 721, 727-728 (1981) .................................... 23

*Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982)............................. 18

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013) ........................ 24

*Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2012)........................... 22

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ................................................................................................................. 22

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008) ........................................ 17

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983) .................................................. 17

*Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1114 (2007) ................................... 15

*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 (C.D. Cal 2006) ................................... 19, 22

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998) ....................................... 18

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ......................................... 22

*Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985) ............................................................. 20

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 627, 679-80 (S.D. Cal. 1999) ....................................... 24

*Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ....................................................... 17, 21

*Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. Apr. 30, 2009) ...................... 16

*Troester v. Starbucks Corporation*, 5 Cal.5th 829, 830 (2018) .................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456-57 (2016) .................................................. 23

*Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996). ........................... 17, 24

*Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150 (9th Cir. 2016) ............................... 23

*Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) ............................. 17, 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011) ............................................................. 18, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust Litig.)*, 280 F.3d 124 (2nd Cir. 2001) ......................................................................................................... 22

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................................... 21

*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ................... 18, 24

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.). ......................................... 17

Statutes

Lab. Code § 512 ............................................................................................................................... 14

Lab. Code, § 226.7, subd. (c) .......................................................................................................... 12

Lab. Code, § 512, subd. (a) ............................................................................................................. 12

Labor Code § 1174 .......................................................................................................................... 23

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

Labor Code § 226.7(c) ............................................................................................. 14

Labor Code § 2802 .................................................................................................. 16

Other Authorities

3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002). ........................ 17

Industrial Welfare Commission (IWC) wage order No. 5-2001, § 11(A) ........................ 12

Wage Order 5, § 12(A) ............................................................................................. 15

Wage Order No. 5 .................................................................................................... 12

Wage Order No. 5, § 11(B) ....................................................................................... 12

Rules

Fed. R. Civ. P. 23 (a)(2) ........................................................................................... 19

FED. R. CIV. P. 23(a)(1) ............................................................................................ 18

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 20

Fed. R. Civ. P. 23(b)(3)(A) ....................................................................................... 24

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................................... 25

Fed. R. Civ. P. 23(a) ................................................................................................ 18

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 21

Fed. R. Civ. P. 23(b)(3) .............................................................................. 21, 22, 24

Fed. R. Civ. P. 30(b)(6) ...................................................................................... passim

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The "Brinker" Defendants[2] own and operate over one hundred restaurants in California, including such chains as Chili's Grill and Bar and Maggiano's Little Italy. Plaintiff Amanda Hale worked as a food server employed with Brinker at a Chili's Grill & Bar restaurant location in Simi Valley, CA, while Plaintiff Jesus Gomez worked as a cook at a Chili's Grill & Bar restaurant location in Carson, CA. Notably, these *Brinker* Defendants are the same defendants that were in the seminal wage and hour case entitled *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012), which is well known for settling the law about an employer's obligation to provide meal periods.

Despite being the poster child for meal period non-compliance following the California Supreme Court's 2012 decision, Brinker has knowingly and flagrantly continued to violate the law by wholesale failing to provide its employees with any actual opportunity to take a meal period on shifts that are longer than six hours.  This is not a close call or a case on the margins. In stark contrast, **96.2% of shifts in excess of 6.0 hours do not have any recorded meal period**.  As this Court is aware, under the California Supreme Court's holding in *Donohue v. AMN Services, Inc*., 11 Cal.5th 58, 61 (2021), "time records showing noncompliant meal periods raise[s] a rebuttable presumption of meal period violations, including at the summary judgment stage."   Here, Brinker will not be able to overcome that presumption because **Brinker readily admits that it does not schedule meal periods at all, nor does Brinker have any type of "breaker" system to relieve employees who may wish to take a meal period**.  As a result, employees have no means of receiving a meal period, other than specifically requesting that their manager or supervisor provide one to them during the course of their shift.  And as a practical matter, putative class members cannot request a meal period because doing so would leave the restaurant understaffed and would result in their workload being transferred onto their co-workers. For example, if a cook such as Plaintiff Gomez wanted to take a meal period, he would be required to ask a manager for one because there are no breaks scheduled and there is no "breaker" employee to relieve him.  Consequently, if Plaintiff

---

[2] The "Brinker Defendants" consist of named Defendants Brinker International, Inc.; Brinker International Payroll Company, L.P.; and Brinker Restaurant Corporation.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

Gomez took a meal period his cooking duties would get pushed onto his co-workers while he was on his meal period.  Similarly, if Plaintiff Hale wanted to take a meal period, it would require other servers to cover her tables while she was on her break.  As a result, Brinker has created a "culture" (a term repeatedly used by the Rule 30(b)(6) witness during her deposition[3]) at its restaurants, where it contends that its employees freely choose to waive their meal and rest periods in favor of working 6-12 hour non-stop shifts with no breaks.

Contrary to Brinker's absurd argument that employees never want to take a break because of the "culture," the truth is that by failing to schedule any meal periods or provide any breaker coverage system, Brinker has placed its employees into a situation where they are actively discouraged from requesting a meal period, because doing so will result in their co-worker having to take on their additional workload for the entire duration of the break period.  As a result, it is no surprise that **96.2%** of all shifts worked in excess of 6.0 hours have no recorded meal period whatsoever, and Brinker has only paid a Labor Code Section 226.7 meal period premium for a minuscule number of these violations. (Compendium, Ex. U (Declaration of James Toney ("Toney Decl.")), ¶¶ 4-5.) Specifically, in the timekeeping and payroll data provided to Plaintiffs, there were approximately 779,422 shifts in excess of 6.0 hours, and of those, 749,468 shifts had no recorded meal period (i.e., a 96.2% violation rate for missed meal periods). (*Id.*) There were only an estimated 7,645 Section 226.7 meal period premium payments paid to putative class members during the entire class period. (*Id.*) Compared to the 749,468 shifts in excess of 6.0 hours with no recorded meal period, this would cover **only 1.02% of all missed meal breaks**

Similar to its failure to provide off-duty meal periods, Brinker has also failed to authorize and permit its employees to take off-duty rest periods. Like meal periods, rest periods are not scheduled and employees must affirmatively request relief from their work duties in order to take a rest period.  Just as with meal periods, if an employee requests that they be able to take a rest period it will result in the employee's co-workers having to pick up their workload for the duration of the break.  As a result,

---

[3] *See* Compendium of Evidence in Support of Plaintiffs' Motion for Class Certification ("Compendium") Ex. D (Deposition of Catherine Fredricks ("Fredricks Depo.")) 39:21-40:3 (testifying that it is "not in the culture" for Brinker's employees to take unpaid 30 minute meal periods), 45:21-25 (testifying that an unpaid 30-minute break is an "anomaly" in restaurant industry culture), 47:21-48:1 (uncommon in Chili's culture for an employee to request to take an unpaid 30 minute meal period).

2

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1   employees are habitually denied an actual ability to take their rest periods because they are inherently

2   pressured to not push their workload onto their co-workers who do not take their breaks due to "Brinker's

3   culture" of not taking breaks as testified to by Brinker's Rule 30(b)(6) witness.

4       Finally, Brinker requires Plaintiffs and the putative class to download and use "HotSchedules" on

5   their cellular phones in order to enter and view their shift times, request schedule changes, request co-

6   workers to cover a shift, and communicate with management.  Despite requiring employees to use

7   HotSchedules for these work-related purposes, Brinker did not reimburse them for these necessary

8   business expenditures in violation of Labor Code section 2802.

9   **II.     STATEMENT OF FACTS**

10      **A.     Plaintiffs Amanda Hale and Jesus Gomez**

11      Plaintiff Amanda Hale worked as a food server employed with Brinker at a Chili's Grill & Bar

12  restaurant location in Simi Valley, CA. (Compendium Ex. E (Declaration of Amanda Hale ("Hale

13  Decl.")), ¶ 5.) Plaintiff Hale was employed with Brinker from approximately December of 2005 until

14  approximately July 2020. (*Id.*)  Her job involved waiting on tables and being responsible for servicing

15  customers, as well as cleaning and generally ensuring the restaurant operates smoothly. (*Id.*)  Plaintiff

16  Jesus Gomez was a cook for Brinker at a Chili's Grill & Bar restaurant location in Carson, CA. Plaintiff

17  Gomez was employed with Brinker from approximately 2006 to October 2020. (Compendium Ex. F

18  (Declaration of Jesus Gomez ("Gomez Decl.")), ¶ 5.) His job primarily involved "heart-of-house" tasks

19  such as cooking food and cleaning the kitchen. (*Id.*)

20      At all times during the applicable limitations period, Plaintiffs worked in an environment where

21  Brinker regularly denied them an opportunity to take their meal and rest periods. (Hale Decl. ¶¶ 8-11;

22  Gomez Decl. ¶¶ 8-11.)  Meal periods and rest periods were not scheduled and were often not taken because

23  Plaintiffs were busy handling their work obligations and were not provided with shift relief or an

24  opportunity to take a meal period. (Hale Decl. ¶ 8; Gomez Decl. ¶ 8.) For example, during the restaurant's

25  frequent busy hours, Plaintiff Hale would not be provided relief during her shift making it impossible to

26  walk away from her tables and work obligations in order to clock out of work and take a meal or rest

27  period. (Hale Decl. ¶¶ 8-11.) Plaintiff Gomez regularly worked on a line and could not simply abandon

28  his duties without another employee having to cover his position (and because no relief was provided, he

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

3

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1   did not have the opportunity to take a meal or rest period). (Gomez Decl. ¶¶ 8-11.)

2       Pursuant to Brinker's explicit policies, Brinker required that Plaintiffs Hale and Gomez download

3   and use on their personal cell phone the application HotSchedules. (Hale Decl. ¶ 12; Gomez Decl. ¶ 12.)

4   Plaintiffs regularly communicated with management and their co-workers via personal cellphone (and the

5   HotSchedules application) regarding work necessities, their shifts, covering for other employees, work,

6   and other matters pertinent to their employment with Brinker. (*Id.*)

7       **B.      Brinker's Meal Period and Rest Break Policies**

8       Defendants' employment handbooks in effect from June 2013 to September 2021, and from

9   September 2021 onwards (and at all times during the applicable limitations period) both lack a meal period

10  and rest break policy. (*See* Compendium Ex. A (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 10, Ex.

11  1.) Brinker's California Meal and Rest Break Policy in effect from May 2015 to June 2019 does not advise

12  Plaintiffs and the putative class members that they are entitled to premium wages in any instance they are

13  denied the opportunity to take a meal period or rest break, or in instances when they are interrupted or

14  taken late. (Fredericks Depo. 17:4-9, Ex. 9.) Brinker's California Meal Period and Rest Break Policy

15  effective from June 2019 forward is substantively the same. (Fredericks Depo. 17:4-9, Ex. 10.) Brinker's

16  policies do not mention premium wages and plainly threaten Plaintiffs and the putative class with

17  disciplinary action "up to and including termination" for failing to follow the policy. (*See* Fredericks

18  Depo., Exs. 9, 10.)

19      **C.      Brinker's Meal Period and Rest Break Practices**

20      Brinker does not schedule meal periods or rest periods for Plaintiffs or the putative class members.[4]

21  As testified to by Brinker's Rule 30(b)(6) witness, for an employee to take a meal period or a rest period,

22  the employee must affirmatively ask the manager for a meal period, as Brinker does not schedule any meal

23  periods for its non-exempt employees:

24      Q. Okay. So the management does not have a duty to schedule meal breaks for a given
        shift?

25

26      [4] *See* Compendium Exs. G-T for all putative class member declarations submitted in support of
    class certification.  [*All cites to these declarations will hereinafter use the form "Last Name Decl."*]

27  Duran Decl., ¶ 5; Crosby Decl. ¶ 5; McSpadden Decl. ¶ 5; Rapozo Decl. ¶ 5; Widlak Decl. ¶ 5; Gutierrez
    Decl. ¶ 5; Barrios Decl. ¶ 5; Cadger Decl. ¶ 5; Mott Decl. ¶ 5; Bonhus Decl. ¶ 5; Roundy Decl. ¶ 5; Bell

28  Decl. ¶ 5; Millis Decl. ¶ 5.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

4

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

A. No, we do not schedule meal breaks for a shift.

***

Q. Okay. And so it's your understanding that currently that is the practice for hourly non-exempt Chili's employees in California, right?

A. Correct, we do not schedule breaks.

Q. But you're not -- and when you say "breaks," you mean meal breaks, correct?

A. Yes, Andrew. We do not schedule 30-minute meal breaks or ten-minute meal breaks.

Q. But you're not sure if that extends all the way back to November 18, 2017?

A. To my knowledge, Chili's has never scheduled for meal breaks.

Q. Okay. How about the same question as to rest breaks. Is it your understanding that Brinker has not scheduled rest breaks for hourly nonexempt Chili's employees in California?

A. That is correct; it is my understanding that we have not scheduled rest breaks.

Q. And has that been the same since November 18, 2017, to the present?

A. To my knowledge, yes.

***

Q. Are there any other procedures that ensure that they can take these meal periods to which they're entitled?

A. Every shift a team member works at a Chili's restaurant, they have the opportunity to take a break. They have the opportunity to approach a manager on duty and request a break.

Q. Okay. So they have to go to a manager and request a break?

A. Yes.

Q. Is that correct?

A. Yeah.

(Fredericks Depo. 30:22-24, 102:4-24, 29:3-14.)

Plaintiffs and the putative class members confirm that they were virtually never able to take their 30-minute uninterrupted meal period, which is reflected by Brinker's timekeeping records that confirm 96% of shifts over 6 hours in duration have no recorded meal period.[5] (Toney Decl. ¶ 5.) Brinker is not ensuring it provides the putative class members with *bona fide* relief from duty and the opportunity to take a meal period. Brinker's 30(b)(6) witness testified that "[i]t's so uncommon in the restaurant industry for a team member in the middle of a lunch rush -- you're talking about something that just isn't in our -- it's not our culture. People just don't in the middle of the heat -- you know, servers would never want to take a break." (Fredericks Depo. 39:21-40:1.)

Plaintiffs and the putative class would not have an ability take their meal period because Brinker does not schedule meal periods for its employees, and chronically understaffed each work shift with not enough workers and required the putative class members to cover their shift duties at all times, forcing

---

[5] *See* Duran Decl., ¶ 6; Crosby Decl. ¶ 6; McSpadden Decl. ¶ 6; Rapozo Decl. ¶ 6; Widlak Decl. ¶ 6; Gutierrez Decl. ¶ 6; Barrios Decl. ¶ 6; Cadger Decl. ¶ 6; Mott Decl. ¶ 6; Bonhus Decl. ¶ 6; Roundy Decl. ¶ 6; Bell Decl. ¶ 6; Millis Decl. ¶ 6.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

Plaintiffs and the putative class to work through their meal periods.[6] As noted above, if Plaintiffs or putative class members wanted to take a meal period, this would require another employee covering their work duties while they were on a break, as confirmed by Brinker's Rule 30(b)(6) witness:

> Q. So the management does not have a duty to schedule meal breaks for a given shift?
> A. No, we do not schedule meal breaks for a shift.
> Q. Okay. And so how -- in terms of operating procedure, how is the manager supposed to ensure that they get their breaks?
> A. When a meal break is requested, the manager has to shift and deploy duties of that team member going on break to make sure that the restaurant is still operating as it needs to be.
> Q. Okay. So does that mean the manager has to ensure that someone is available to cover the break?
> A. The manager has to ensure that the restaurant duties at that time are taken care of if someone is not in their role doing their job responsibilities.

(*See* Fredericks Depo., 30:22-31:14.)

Brinker's Rule 30(b)(6) witness clearly testified that Brinker does not schedule meal or periods, and an employee wanting to take a break must specifically ask their manager for a break, which again, goes against Brinker's "culture" of not taking breaks. As Brinker's 30(b)(6) witness testified:

> So when a break is requested, a 30-minute unpaid break, it is such an anomaly that managers find a way to make it happen. If team members say they were not given a break or they would have taken it, I want to make sure that you were presenting the question in the right way as well, seeing it's an unpaid -- your time at Chili's is unpaid for. So it's such -- they're an hourly employee. They don't want to be outside of their family or other friends unless they're being paid for their time. So that's why it's so important, if a break of 30 minutes unpaid is needed, the managers find a way to make it happen, because it's such a rare occurrence in the restaurant industry and culture of a Chili's restaurant.

(Fredericks Depo., 53:14-54:2.) Brinker's "culture" as explained by the 30(b)(6) witness is to simply assume that putative class members do not want a break. (*See* Fredericks Depo., 47:7-11 ("We do not schedule 30-minute breaks. We would never have to accommodate every team member requesting a 30-minute break. That's never happened in our environment. So we don't plan for things that are an anomaly.").) Plaintiffs and the putative class members were forced to request a meal period from their manager, who could then use their discretion to deny meal periods if the request didn't fit within Brinker's business needs. (Fredericks Depo. 30:6-9 ("Managers schedule [breaks] based on the restaurant needs

---

[6] *See* Duran Decl., ¶ 6; Crosby Decl. ¶ 6; McSpadden Decl. ¶ 6; Rapozo Decl. ¶ 6; Widlak Decl. ¶ 6; Gutierrez Decl. ¶ 6; Barrios Decl. ¶ 6; Cadger Decl. ¶ 6; Bonhus Decl. ¶ 6; Roundy Decl. ¶ 4; Bell Decl. ¶ 6; Millis Decl. ¶ 6.

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   during the time of day for the business. So they will have the appropriate amount of staff to handle the

2   business at hand.")) Brinker's 30(b)(6) witness also acknowledged that if a putative class member

3   "absolutely needs" a 30-minute break, it presents a hassle for the management team and has negative

4   consequences for Brinker. (Fredericks Depo. 36: 22-25 ("If the team member absolutely needs a 30-minute

5   break, they make it happen, and it's usually at the cost of the other team members and the guest service."))

6          As should be clear from Brinker's records, restaurants in California are so busy that putative class

7   members missed their meal period entirely in 96.2% of the shifts they worked. (Toney Decl., ¶ 5) This is

8   a reality that Brinker's 30(b)(6) witness also acknowledged explicitly. (Fredericks Depo., 125:16-20 ("The

9   restaurant industry fluctuates and you have to adjust to business and the environment at the moment. If we

10   have a bus walk in, you make it happen. You make sure it's all hands on deck, everyone is in position, and

11   you take care of everything at need.").) During the "peak" hours, Plaintiffs and the putative class members

12   are explicitly denied the opportunity to take any breaks and are expected to work tirelessly. As the 30(b)(6)

13   witness elaborated: "So team members are very aware of when peak hours are going to happen, and they're

14   there to work during those peak hours." (Fredericks Depo., 33: 8-10.)  Brinker's management explicitly

15   puts the burden of taking a meal period entirely on the employee, pressuring them forgo their meal periods

16   if it should inconvenience the restaurant:

17          Q. So doesn't that put pressure on the team members just to not take breaks?
           [*Objection omitted*]
18          A. No. It puts pressure on the team member to think about if they need a break to maybe
           think about the time they're requesting a break.

19

20   (Fredericks Depo., 37: 2-8.)

21          Like meal periods, Brinker does not schedule rest breaks and has no policy to ensure a ten-minute

22   break has been taken. (Fredericks Depo. 34:13-14 ("We have no policy to ensure a ten-minute break has

23   been taken.").) Like their meal periods, Plaintiffs and the putative class members can only take a ten-

24   minute rest break subject to requesting it from the manager who has discretion to deny the request.

25   (Fredericks Depo. 34: 13-19 ("We have policies to ensure a team member can **request** a ten-minute break,

26   but we have no way to validate or ensure that they have completed a requested ten-minute break.")

27   (emphasis added).)

28          Plaintiffs and the putative class do not recall receiving a formal written meal period or rest break

7

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

policy that encouraged employees to take their meal periods and rest breaks.[7] Plaintiffs and the putative class did not receive additional compensation, or premium pay, on those occasions when they worked a shift longer than 6.0 hours and were not afforded with any opportunity to take a meal period.[8]

With respect to failure to provide rest breaks (about which Brinker's California Meal Period and Rest Break policies omit any reference to its California employees' legal right, as noted above), Brinker's practices—or rather the lack thereof—are even worse, since Brinker has never had a process in place to make rest break premium payments, as California law requires for missed rest breaks:

> Q. Okay. Now, we've been discussing the generation of premium payments for meal periods. Does Brinker have a similar procedure for premium payments with respect to rest period violations?
> A. No, we do not.
> Q. Okay. So if any employee wanted to report a rest break violation, that they missed it or they couldn't take it, is there a procedure for that with respect to payroll?
> A. If a manager wanted to report it, he would call in to payroll and would request the payout. It is not something we've ever encountered before.
> Q. Okay. I was just going to ask that. So to your knowledge, there's never been a premium payment made for a rest period violation by Brinker?
> A. No, there's not been.
> ***
> Q. Okay. And so you said that no manager has ever reported a rest break violation to payroll during -- since 2017?
> A. That is correct. We don't currently have an earnings element set up to use for it.
> Q. Okay. Even if somebody -- if a manager were to come up now and say, you know, one of my employees missed a rest break so we need to pay the premium, there's no process or procedure set up in payroll to deal with that situation?
> A. Well, if that situation arose, the process would be to get with legal counsel and our PW partners to discuss the actions that would be required in order to pay that.
> Q. So you'd have to have a meeting and essentially come up with a new procedure for how to do it?
> A. That is correct… We would need guidance from legal on how to compliantly pay it.
> Q. Okay. So there's never been any sort of policies and procedures addressing any rest break violations in terms of the procedures that payroll follows?
> A. That is correct.
> Q. Okay. And do you know if it's ever come up as a potential -- you know, a potential change to make in the future or in future iterations of the payroll policy? … So outside [of] conversations with legal counsel, can you answer the question?
> A. No one has ever come to me to talk about how to pay a rest penalty.

(*See* Compendium Ex. C (Deposition of Melodie Hunt ("Hunt Depo.")), 38:21-41:4.)

---

[7] *See* Duran Decl., ¶ 6 McSpadden Decl. ¶ 6; Rapozo Decl. ¶ 6;. Gutierrez Decl. ¶ 6; Barrios Decl. ¶ 6;

[8] *See* Duran Decl., ¶¶ 8, 10; Crosby Decl. ¶ 7; McSpadden Decl. ¶¶ 8, 10; Widlak Decl. ¶¶ 8, 10; Cadger Decl. ¶¶ 7, 9; Bonhus Decl. ¶ 7; Bell Decl. ¶¶ 8, 9; Millis Decl. ¶¶ 7, 8.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

### D.    Brinker's Timekeeping System and Attestation Process

Plaintiffs and the putative class members are coerced into completing an attestation claiming that they "voluntarily" chose to skip their meal and rest periods each time they clock out at the end of the shift. (*See* Hunt Depo., 23:12-29:12, 29:24-35:16, 35:25-36:10; 37:4-38:20, Exs. 2, 3, 4, 5.)  When Plaintiffs and the putative class clock-out, they swipe their employee card at a Point-of-Sale terminal or enter their employee ID into a handheld device.  (Hunt Depo., 24:7-25:16, 31:7-13.)  If they work a shift of over 5 hours in length, they are then presented with an attestation screen, which requires them to affirm that they were provided "a 30-minute meal period before the 5th hour worked & a 2nd one before the 10th hour worked" and that they voluntarily chose not to take their meal periods if they did not do so. (Hunt Depo., 31:14-33:19, Exs. 4, 5, 6.)  The employee then has two options at this screen and can either press the button that says "YES" or the button that says "NO." (Hunt Depo., 34:20-35:1.)  If the employee selects "YES" indicating that voluntarily skipped their breaks, the employee will continue to clock-out as usual. (Hunt Depo., 35:2-4.)  Brinker admit that prior to April 22, 2019, if the employee selected "NO" indicating that they did not get a chance to take their breaks, then a "Break Rule Violation" screen would appear asking for Manager approval. (Hunt Depo., 35:5-12.)  Without the Manager swipe, the employee could not clock out. (*Id.*)  Brinker claims that after April 22, 2019, if the employee selects "NO" indicating that they did not get a chance to take their breaks, they are then clocked out without needing a manager approval, and a meal period payment is generated. (Hunt Depo., 37:4-38:20.) Putative class members have confirmed that they were pressured into selecting "YES" on the prompt for a variety of reasons, such as managers requiring them to stay for an additional 30 minutes at the end of their shift to take a "meal period" if they said that they did not have an opportunity to take their meal period.[9]

Further, Brinker provides their management team with a report every Monday documenting which employees refused to "voluntarily" skip their meal periods. (Fredericks Depo., 68:7-15 ("Management does not know instantly that they chose that. They will not know who was paid a penalty until a report is distributed that lets them know what team members have missed breaks and notified them that they have. Q: Okay. So when does that report get sent to the management A: I believe it's every Monday. It's a

---

[9] *See* Duran Decl., ¶ 7.

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

weekly report.)) When management notices that a certain employee is not "voluntarily" skipping their meal periods, Brinker views this as an opportunity to "coach" that employee. (Fredericks Depo. 68:21-24.) The 30(b)(6) designee further testified that if a putative class member were to repeatedly select "no" repeatedly, it would result in "coaching" because they are having a bad experience at work. (Fredericks Depo. 78:17-25 ("When we have someone repeatedly saying 'No,' that means that we need to check in because they're not having a good experience at work, and we need to make sure they understand -- first of all, if they're not an expert at meal break policies, you know, let's help coach them, even though they've probably signed off -- well, they had to sign off to get to that point. So let's have a conversation with them. Our goal isn't to come across negative.")

Brinker's 30(b)(6) designee explicitly acknowledged that members of the putative class have no idea what the attestation is even for and hurry past the screen so they can simply get out and move on. (Fredericks Depo., 70:3-9 ("What I'm referring to is, some of them did not understand what they were hitting. A lot of team members, like I said before, they want to get in and get out and get on, and they're hitting buttons (indicating) just to go, 'I'm out of here.' They didn't realize what they were hitting. Some of them said, Oh, I thought I answered them correctly.")

**E.      Brinker's Failed to Reimburse Employees for Required Cell Phone Usage**

Brinker's "WORK SCHEDULE POLICY" requires that Plaintiffs and the putative class download and use "HotSchedules" in order to enter and view their shift times, request schedule changes, request other people cover a shift, and communicate with management. (Setareh Decl. ¶ 11, Ex. 2.) The Work Schedule Policy effective since July 2011, applicable to all class members, provides as follows:

> Team Members must enter schedule requests via HotSchedules. Managers will attempt to honor schedule requests subject to staffing needs and limitations. Managers will post all schedules via the HotSchedules system prior to the schedule's effective dates,. Team Members may also contact HotSchedules via telephone to obtain a copy of their schedule. You are responsible for knowing your schedules, and for either working or covering your schedules shifts. Failure to report for work when you are scheduled may result in disciplinary action, up to and including termination.

> Shift changes must be approved by a manager and be requested through HotSchedules in accordance with the HotSchedules shift change procedures. Failure to follow proper shift change procedures can result in disciplinary action, up to and including termination. Team Members serving military reserve duty should give managers as much advance notice as possible (see Leave of Absence Policy).

(*Id.*)  Plaintiffs accessed and used HotSchedules on their ***personal*** cell phones and were not reimbursed

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

for any expenses incurred as a result of having to use this application on their personal cellphone. Brinker's express policy, applicable at all times during the limitations period, does not provide for any reimbursement in the policy. (*Id.*) Currently, the HotSchedules app is $2.99 on the app store. (Setareh Decl. ¶ 12, Ex. 3.) Plaintiffs and the putative class were required to download this application and use it for scheduling purposes and to communicate with management and their co-workers regarding shift changes or scheduling, but were not provided with any reimbursement.[10]

In practice, Plaintiffs and the putative class were required to use HotSchedules on their personal cellphones, and were regularly required to maintain contact regarding scheduling requirements and their shifts using their personal cell phones, as well as answer work related inquiries.[11] Brinker's employment handbook does not address reimbursement for required use of a personal cell phone and does not provide for any mechanism through which Plaintiffs and the putative class could seek reimbursement for required usage of their personal cell phone for business purposes. (*See* Compendium Ex. A.) In practice, Plaintiffs and the putative class were not reimbursed for use of their personal cellphones although they generally spent over $50 per month on their cell phone bill.[12]

## III.     SUMMARY OF APPLICABLE LAW

### A.  An Employer's Obligation to Provide Meal Periods

Under California law, employers must generally provide employees with one 30-minute meal period that begins no later than the end of the fifth hour of work... *Donohue v. AMN Services, Inc*., 11 Cal.5th 58, 76 (2021) (citing Lab. Code, § 512, subd. (a); Industrial Welfare Commission (IWC) wage order No. 5-2001, § 11(A) (Wage Order No. 5).) If an employer does not provide an employee with a compliant meal period, then "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal ... period is not provided." (Lab.

---

[10] *See* Duran Decl., ¶ 13; McSpadden Decl., ¶ 14; Rapozo Decl., ¶ 14; Roundy Decl. ¶ 12; Bell Decl. ¶ 14;

[11] *See* Duran Decl., ¶ 13; Crosby Decl., ¶ 12; McSpadden Decl., ¶ 14; Rapozo Decl., ¶ 14; Cadger Decl. ¶ 10; Mott Decl. ¶ 10; Bonhus Decl. ¶ 12; Roundy Decl. ¶ 12; Bell Decl. ¶ 14; Millis Decl. ¶ 14

[12] *See* Duran Decl., ¶ 13; Crosby Decl., ¶ 12; McSpadden Decl., ¶ 14; Rapozo Decl., ¶ 14; Cadger Decl. ¶ 10; Mott Decl. ¶ 10; Bonhus Decl. ¶ 12; Roundy Decl. ¶ 12; Bell Decl. ¶ 14; Millis Decl. ¶ 14

1  Code, § 226.7, subd. (c); see Wage Order No. 5, § 11(B).)

2  The California Supreme Court's landmark decision in *Donohue v. AMN Services, LLC*, states

3  that if employer's timekeeping records reflect non-compliant meal periods, there is a rebuttable

4  presumption that a compliant meal period was not provided:

> Applying the presumption does not mean that time records showing missed, short, or
> delayed meal periods result in "automatic liability" for employers. If time records show
> missed, short, or delayed meal periods with no indication of proper compensation, then a
> rebuttable presumption arises. Employers can rebut the presumption by presenting
> evidence that employees were compensated for noncompliant meal periods or that they
> had in fact been provided compliant meal periods during which they chose to work.
> "Representative testimony, surveys, and statistical analysis," along with other types of
> evidence, "are available as tools to render manageable determinations of the extent of
> liability." (Brinker, supra, 53 Cal.4th at p. 1054 (conc. opn. of Werdegar, J.).)

10  *Donohue v. AMN Services, Inc.*, 11 Cal.5th 58, 61 (2021) ("*Donahue*").

11  In light of the 96.2% violation rate for failure to provide first meal periods, it is Brinker's burden

12  to prove that the putative class actually received the opportunity for 30-minute, uninterrupted meal periods.

13  It is clear both from the data and the testimony of Brinker's Rule 30(b)(6) witnesses, Plaintiffs and the

14  putative class members that Brinker systemically fails to provide hourly non-exempt employees with the

15  opportunity to take meal periods. According to Brinker's own timekeeping data, 96.2% of shifts in excess

16  of 6.0 hours reflect no meal period. It is also apparent from the testimony of Brinker's Rule 30(b)(6)

17  witness that meal periods were not taken because they were not scheduled, and it was the "culture" at

18  Brinker that employees would not take their meal and rest periods. *See* fn. 3.

19  As the California Supreme Court further explained in *Donohue*:

> The employer's duty is to ensure that it provides the employee with bona fide relief from
> duty and that this is accurately reflected in the employer's time records. Otherwise, the
> employer must pay the employee premium wages for any noncompliant meal period. (*See
> Brinker*, supra, 53 Cal.4th at pp. 1040– 1041, 139 Cal.Rptr.3d 315, 273 P.3d 513.) If time
> records show noncompliant meal periods, then a rebuttable presumption of liability arises.

23  *Donohue*, 11 Cal.5th at 77.

24  Here, it is clear that Brinker is not ensuring it provides the putative class members with bona fide

25  relief from duty and the opportunity to take a meal period. Brinker's 30(b)(6) witness testified that "[i]t's

26  so uncommon in the restaurant industry for a team member in the middle of a lunch rush -- you're talking

27  about something that just isn't in our -- it's not our culture. People just don't in the middle of the heat --

28  you know, servers would never want to take a break." (Fredericks Depo. 39:21-40:1.) Brinker will

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

12

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   attempt to rebut the *Donohue* presumption created by its meal period records  through the use of an

2   electronic waiver and attestation process where Plaintiffs and the putative class were forced to

3   acknowledge that they had "voluntarily" waived their meal and rest periods, if they wanted to punch out

4   and leave work without having a manager interaction about why they were claiming they were not

5   afforded with a meal or rest period. (See Hunt Depo. 29:9-34:16, 34:25-35:10, 36:4-37:20, Exs. 4, 5, 6.)

6   Brinker will attempt to argue, boldfaced, that its employees are "voluntarily" *missing* a meal break

7   entirely for 96.2% of the 749,468 meal period eligible shifts worked during the limitations period.  The

8   voluntariness of an employee's choice matters because "an employer may not undermine a formal policy

9   of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks."

10  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1040 (2012). However, the legitimacy of

11  the attestation process is contradicted by Brinker's Rule 30(b)(6) witness, who clearly and unequivocally

12  testified that Brinker does not schedule meal or periods, and an employee wanting to take a break must

13  specifically ask their manager for a break, which again, goes against Brinker's "culture" of not taking

14  breaks.  As Brinker's 30(b)(6) witness testified:

15          So when a break is requested, a 30-minute unpaid break, it is such an anomaly that
        managers find a way to make it happen.· If team members say they were not given a break
16      or they would have taken it, I want to make sure that you were presenting the question in
        the right way as well, seeing it's an unpaid -- your time at Chili's is unpaid for.· So it's such
17      -- they're an hourly employee. They don't want to be outside of their·family or other friends
        unless they're being paid for their time. So that's why it's so important, if a break of 30
18      minutes unpaid is needed, the managers find a way to make it happen, because it's such a
        rare occurrence in the restaurant industry and culture of a Chili's restaurant.
19

20  (Fredericks Depo., 53:14-54:2.) Brinker's "culture" as explained by the 30(b)(6) witness is to simply

21  assume that putative class members do not want a break. "We do not schedule 30-minute breaks. We

22  would never have to accommodate every team member requesting a 30-minute break. That's never

23  happened in our environment. So we don't plan for things that are an anomaly." (Fredericks Depo., 47:7-

24  11).) Plaintiffs and the putative class members were forced to request a meal period from their manager,

25  who could then use their discretion to deny meal periods if the request did not fit within Brinker's

26  business needs. (Fredericks Depo., 30: 6-9 ("A: Managers schedule [breaks] based on the restaurant

27  needs during the time of day for the business. So they will have the appropriate amount of staff to handle

28  the business at hand.")) As should be clear from Brinker's records, restaurants in California are so busy

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  that putative class members missed their meal period entirely in 96.2% of the shifts they worked. (Toney

2  Decl., ¶ 5.) This is a reality that Brinker's 30(b)(6) witness also acknowledged explicitly. (*See* Fredericks

3  Depo., 125:16-20 ("The restaurant industry fluctuates, and you have to adjust to business and the

4  environment at the moment. If we have a bus walk in, you make it happen. You make sure it's all hands

5  on deck, everyone is in position, and you take care of everything at need.").)

6       During the "peak" hours, Plaintiffs and the putative class members are explicitly denied the

7  opportunity to take any breaks and are expected to work tirelessly. As the 30(b)(6) witness elaborated:

8  (Fredericks Depo., 33: 8-10. ("So team members are very aware of when peak hours are going to happen,

9  and they're there to work during those peak hours.") Brinker's management explicitly puts the burden of

10  taking a meal period entirely on the employee, pressuring them not to ask for their meal periods if it

11  should inconvenience the restaurant.

12       Q.· So doesn't that put pressure on the team members just to not take breaks?
     MR. REESE: Objection. Vague; calls for speculation; incomplete hypothetical.

13       A.· No.· It puts pressure on the team member to think about if they need a break to maybe
     think about the time they're requesting a break.

14

15  (Fredericks Depo. 37:2-8.) But Brinker's "culture" of failing to authorize meal periods and putting

16  business needs above the rights of their employees runs afoul of well-established principles of the law.

17  Under California law, employers must provide meal periods where an employee is relieved of all duty.

18  Lab. Code § 512; *Brinker*, 53 Cal.4th at 1034. Where an employer fails to affirmatively authorize a meal

19  period required under the Wage Order, it is not only liable for premium pay under Labor Code § 226.7(c),

20  but is also precluded from asserting waiver as an affirmative defense. *See id.* at 1032 ("No issue of waiver

21  ever arises for a rest [or meal] break that was required by law but never authorized; if a break is not

22  authorized, an employee has no opportunity to decline to take it.").

23      **B.     An Employer's Obligation to Authorize and Permit Rest Periods**

24       Wage Order 5, § 12(A) states: "[e]very employer shall authorize and permit all employees to take

25  rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest

26  period time shall be based on the total hours worked daily at the rate of ten (10) minutes **net rest** time per

27  four (4) hours or major fraction thereof."  In the event that an employer fails to authorize and permit an

28  employee to take all required rest periods, the penalty is one hour per day for each day that there is a

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1   violation pursuant to Labor Code section 226.7.  Labor Code § 226.7, subd. (b); *see Murphy v. Kenneth*

2   *Cole Productions, Inc*., 40 Cal.4th 1094, 1114 (2007).

3       Inherent as part of the duty to authorize and permit employees to take rest periods is an employer's

4   obligation to provide employees with an actual opportunity to take a rest period.   Uniform noncompliance

5   is not required in order to certify a rest period class, and as noted by the Court of Appeal in *Alberts v.*

6   *Aurora Behavioral Health Care,* it is only necessary to show "a consistent application of a policy," which

7   in this case has resulted from Brinker's uniform policy of not scheduling rest periods for any employees

8   and denying rest breaks when requested. *Alberts, supra,* 241 Cal.App.4th at 409 (2015) ("plaintiffs do not

9   claim they were universally denied all breaks, nor must they do so to warrant certification. *Brinker, supra,*

10  53 Cal.4th 1004, does not require class proponents to establish the universal application of an allegedly

11  illegal policy; rather, a class proponent need only show a 'consistent[ ]' application of the policy.").

12      The California Supreme Court has stated that: "We have interpreted [the Wage Order] as requiring

13  strict adherence to [the rest break] requirement and we have scrupulously guarded against encroachments

14  on this 10-minute period." *Troester v. Starbucks Corporation,* 5 Cal.5th 829, 830 (2018). The California

15  Supreme Court has held in no uncertain terms that the rest period must be, as the language implies, duty-

16  free. *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 267 (citing Dept. of Industrial

17  Relations, DLSE Opn. Letter No. 2002.02.22 (Feb. 22, 2002) p. 1). The California Supreme Court

18  explicitly held that California law requires employers to relieve their employees of all work-related duties

19  and employer control during 10-minute rest periods. *Id.* at 272.

20      Brinker does not schedule rest breaks and has no policy to ensure a ten-minute break has been

21  taken. (Fredericks Depo., 34:13-14 ("We have no policy to ensure a ten-minute break has been taken.").)

22  Like their meal periods, Plaintiffs and the putative class members can only take a ten-minute rest break

23  subject to requesting it from the manager who has discretion to deny the request. (Fredericks Depo. 34:

24  16-19. ("We have policies to ensure a team member can request a ten-minute break, but we have no way

25  to validate or ensure that they have completed a requested ten-minute break.").)  Brinker's intent to ignore

26  the requirements of California law is underscored by the fact that it has never had a process in place to

27  make rest break premium payments, nor has the issue ever been raised to its payroll department.  (Hunt

28  Depo. 38:21-41:4.)

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

C.      **An Employer's Obligation to Reimburse Employees for Business Expenses**

Labor Code section 2802 requires employers to reimburse workers for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Claims for not being reimbursed for expenses pertaining to the work-related use of their personal cell phones are compensable. *Cochran v. Schwan's Home Serv., Inc.* (2014) 228 Cal.App.4th 1137, 1144 ("Does an employer always have to reimburse an employee for the reasonable expense of the mandatory use of a personal cell phone, or is the reimbursement obligation limited to the situation in which the employee incurred an extra expense that he or she would not have otherwise incurred absent the job? The answer is that reimbursement is always required. Otherwise, the employer would receive a windfall because it would be passing its operating expenses on to the employee. Thus, to be in compliance with section 2802, the employer must pay some reasonable percentage of the employee's cell phone bill. Because of the differences in cell phone plans and work-related scenarios, the calculation of reimbursement must be left to the trial court and parties in each particular case.")  "The purpose of this statute is to prevent employers from passing their operating expenses on to their employees."  *Id*. (internal quotation marks omitted).  For purposes of Section 2802, "Once the employer [knows or has reason to know that the employee has incurred an expense], then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense."  *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. Apr. 30, 2009)

Defendants had reason to know that the putative class members were incurring expenses related to the use of their personal cell phones, as they expressly required Plaintiffs and the putative class members to use the phone application HotSchedules and yet did nothing to reimburse them for these expenses. *See Arroyo v. International Paper Co.*, 2020 WL 887771 (N.D. Cal. 2020). To be clear, no reimbursement payments were made to Plaintiffs or the putative class members during the limitations period for any cell phone reimbursements.

## IV.    ARGUMENT

A.      **The Standards for Class Certification**

Parties seeking certification bear the burden of demonstrating that they meet the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Ellis v. Costco*

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

*Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011), citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), amended by 273 F.3d 1266 (9th Cir.2001).   The requirements of Rule 23 "should be liberally construed."  3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002).

When deciding on a certification motion, all factual allegations in Plaintiffs' operative complaint must be accepted as true.  *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977); *Blackie v. Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).  As the Ninth Circuit reiterated in *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983), a limited "inquiry into the substance of a case may be necessary to ascertain satisfaction of Rule 23(a)'s commonality and typicality requirements, [but] it is improper to advance a decision on the merits to the class certification stage."  *Id.* at 480 (citing *Eisen*, 417 U.S. at 177-178); see also *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).  Instead, at this point, the Court need only determine if the Plaintiff has satisfied Rule 23, ***not weigh competing evidence***.  *Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at, 901 n.17.

Evidence is not evaluated on an admissibility standard, such as would be the case for summary judgment or trial.  At the certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008), reversed on other grounds.  "[T]he court may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)), and a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).

In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.' " *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal. 1998)).  "In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089

17

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

1  (N.D. Cal. 2011)

2  **B.      The Standards of Rule 23(a) Have Been Met**

3         "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose

4  claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011).  Under Rule 23(a), the

5  party seeking certification must demonstrate, first, that (1) the class is so numerous that joinder of all

6  members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

7  defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

8  representative parties will fairly and adequately protect the interests of the class. In this context, "the

9  question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits,

10 but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

11 178 (1974).  The court "is bound to take the substantive allegations of the complaint as true," *Blackie v.*

12 *Barrack*, 524 F.2d 891, 907 n. 17 (9th Cir. 1975)

13        **1.      The Classes are Numerous**

14        Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable,"

15 not impossible.  FED. R. CIV. P. 23(a)(1); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).

16 There is no specific number of class members required for certification.   "Nonetheless, courts have

17 recognized that the numerosity requirement is generally satisfied when the class is in excess of forty

18 members. *See Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982) (finding 39 individuals

19 was likely sufficient number), vacated on other grounds.

20        Here, the class size has been acknowledged to exceed one thousand employees and is estimated to

21 be approximately 1,289 employees during the class period. (Toney Decl., ¶ 4.) All 1,289 putative class

22 members were subject to Brinker's meal period, rest period, and cell phone reimbursement policies and

23 practices during the limitations period. As such, numerosity cannot reasonably be disputed on any as to

24 any of the proposed classes.

25        **2.      Commonality is Satisfied**

26        Rule 23(a)(2) requires that there be questions of fact or law common to the class.  Fed. R. Civ. P.

27 23 (a)(2).  The Ninth Circuit has explained the commonality requirement as follows in an opinion

28 affirming the certification of a wage and hour claim:

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

18

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

The Supreme Court has recently emphasized that commonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.' " *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir.2012) (quoting Wal–Mart, 131 S.Ct. at 2551) (internal alteration omitted). Put another way, the key inquiry is not whether the plaintiffs have raised common questions, "even in droves," but rather, whether class treatment will "generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart*, 131 S.Ct. at 2551 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009)) (emphasis added) (internal quotation marks and alteration omitted). This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is "a single significant question of law or fact.

*Abdullah v. U.S. Sec. Associates*, 731 F.3d 952, 957 (9th Cir. 2013).

Further, commonality can be provided not only by common claims but also by common defenses. *See, e.g*., *Del Campo v. American Corrective Counseling Servs., Inc*., 254 F.R.D. 585, 592 (N.D. Cal. 2008) ("With respect to legal commonality, Defendants are asserting a common defense.").Here, based on the class definitions and the issues described above, class members share an overarching common set of claims regarding the legality of Defendant's employment practices. *See*, *e.g.*, *Negrete v. Allianz Life Ins. Co*., 238 F.R.D. 482, 488 (C.D. Cal. 2006) (finding commonality satisfied where class members' claims "derive from a common core of salient facts, and share many common issues" and granting class certification).

Here, commonality exists as to each of the three proposed classes. With respect to the Missed Meal Period Class, all class members worked under Brinker's policies and practices where meal periods were not scheduled and were only *potentially* made available if an employee requested to take a meal period. As a result, class members uniformly did not take their meal periods as timekeeping records confirm that 96.2% of shifts over 6.0 hours do not have any meal periods. Whether employees did not take meal periods because Brinker never provided them, or alternatively, because employees voluntarily chose not take them, is a common issue as class members were uniformly subjected to Brinker's policies and practices surrounding meal periods.

With respect to the Missed Rest Period Class, Brinker has acknowledged that just like meal periods, it does not schedule rest periods, and if an employee wants to take a rest period, the employee has to ask a manger for one. Just as with the Missed Meal Period Class, if an employee wishes to take a rest

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   period, that employee would be required to request a rest period from the manager, and the workload

2   would be transferred onto another employee who would need to provide coverage. Common issues include

3   whether Brinker's failure to schedule any rest periods for class members has uniformly deprived them of

4   their ability to take duty free rest periods.

5   Finally, as to the Cell Phone Reimbursement Class, common issues include whether Brinker

6   required employees to download HotSchedules on their **personal** cell phones and use this app in

7   connection with their work duties.

8   **3.     Typicality is Satisfied as Plaintiffs and Class Members Have the Same**

9   **Claims**

10  Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the

11  claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards,

12  representative claims are 'typical' if they are reasonably coextensive with those of absent class members;

13  they need not be substantially identical."   *Hanlon*, 150 F.3d at 1020; *see also Schwartz v. Harp*, 108

14  F.R.D. 279, 282 (C.D. Cal. 1985). The commonality, typicality, and adequacy-of-representation

15  requirements "tend to merge" with each other.  *Wal-Mart*, at 2551 n. 5 (citing *Gen. Tel. Co. of Sw. v.*

16  *Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

17  Plaintiffs are members of the proposed class and suffered the same injuries as fellow class

18  members – namely, the wage and hour violations alleged in the operative complaint.  Plaintiffs' and absent

19  class members' claims arise from the same conduct and are based on the same legal theories. Plaintiffs

20  and absent class members signed the same unconscionable arbitration agreement. Like all class members,

21  Plaintiffs were subjected to Brinker's policies and practices requiring that they work through their meal

22  periods and rest periods, and requiring that they use their personal cell phones for work related purposes.

23  Typicality is satisfied.  (Hale Decl. ¶¶ 5-12; Gomez Decl. ¶¶ 5-12.)

24  **4.     Adequacy is Satisfied: Plaintiffs Have No Conflicts of Interest With Class**

25  **Members, are Able to Vigorously Prosecute the Action, and have Hired**

26  **Qualified Counsel**

27  The adequacy requirement under Rule 23(a)(4) requires: (1) that the proposed representative

28  plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

20

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1   by qualified and competent counsel. *See Hanlon*, 150 F.3d at 1020 (adequacy turns on absence of conflicts

2   with other class members and whether named plaintiffs and their counsel prosecute the action vigorously).

3   In *Staton v. v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), the Ninth Circuit stated two questions that

4   define  adequacy of representation: (1) do the representative plaintiffs and their counsel have any conflicts

5   of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute

6   the action vigorously on behalf of the class?  *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.  Here,

7   the answer to the first is "No," and the second, "Yes."

8        The declaration of Plaintiffs submitted herewith demonstrate that Plaintiffs suffered the same wage

9   and hour issues as other class members, that they understand their role as class representative, and that, to

10  their knowledge, they have no known conflicts of interest with any other class members.[13]  (Hale Decl.,

11  ¶¶ 3-4; Gomez Decl. ¶¶ 3-4; Setareh Decl. ¶ 8; Haines Decl. ¶ 14.) Because they are adequate, this Court

12  should appoint them to represent the class.

13       Similarly, counsels' declarations establish that Plaintiffs' counsel are experienced litigating wage

14  and hour class actions and other complex cases.  (*See,* Setareh Decl., ¶¶ 3-9; Haines Decl., ¶¶ 2-13.)

15  Counsel have investigated the claims, demonstrated their knowledge of applicable law, and demonstrated

16  that they can and will vigorously prosecute this class action.  (Setareh Decl., ¶ 7; Haines Decl. ¶ 13.)

17       **C.      The Standards of Rule 23(b)(3) Have Been Met.**

18       Under Rule 23(b)(3), certification is proper if (1) questions of law or fact common to the members

19  of the class predominate over any questions affecting only individual class members; and (2) class

20  treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

21  *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-

22  63 (9th Cir. 2001); *Negrete*, 238 F.R.D. at 487, 489.  Here, Plaintiffs satisfy both prongs**.**

23  *///*

24

25       [13] The test is "whether or not plaintiffs have demonstrated a willingness and vigor to prosecute the

26  action, whether they have any disabling conflicts going to the heart of the controversy, and whether they
     have qualified counsel."  *In re Adobe Systems, Inc. Securities Litig*., 139 F.R.D. 150, 156 (N.D.Cal. 1991)

27  (plaintiffs understood gravamen of their claims, and need not be intimately familiar with every issue).  *See
     also, Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (Adequacy depends on counsel's qualifications,

28  an absence of antagonism, a sharing of interests between representatives and absentees, and unlikelihood
     of collusion.)

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1. **Common Questions Predominate: the Claims Turn on Common Legal Issues, and Damages Can be Feasibly and Efficiently Calculated.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Court must find that questions of law or fact common to the class members predominate over any questions affecting only individual members.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust Litig.)*, 280 F.3d 124, 136 (2nd Cir. 2001) (common questions predominate where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.").

The Ninth Circuit holds that predominance is met where common questions of liability are present and damages can be feasibly and efficiently calculated. *See, e.g.*, *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2012) (finding predominance where wage & hour claims presented common questions and damages could be calculated using company documents and testimony); *Abdullah*, 731 F.3d at 964-67 (predominance satisfied where plaintiffs' claims would prevail or fail in unison given the common legal questions and ability to calculate class damages).  The Ninth Circuit looks for "a common nucleus of operative facts and potential legal remedies," but does not require complete identity among class members.  *Hanlon*, 150 F.3d at 1022-23.  Class certification is appropriate where the action focuses on the words and conduct of the defendants, rather than on the behavior of individual class members.  *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) ("focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members").

Plaintiffs herein demonstrate that there are numerous, important questions of law and fact which, as in the cases discussed above, are based on Defendant's conduct and are common to the members of the classes (here, the common conduct raises common questions about the legality of Brinker's wage and hour policies and practices).

2. **Individualized Issues as to Damages Do Not Defeat Predominance.**

In a wage and hour case, the potential need to prove damages on an individual basis does not defeat predominance and therefore is not a basis for denying certification. *Vaquero v. Ashley Furniture*

22

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

*Industries, Inc.,* 824 F.3d 1150 (9th Cir. 2016).  In *Vaquero* the defendant in a wage and hour case argued that under *Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013) predominance does not exist if damages must be calculated on an individual basis. The Ninth Circuit rejected that construction of *Comcast:* "We have interpreted *Comcast* to mean that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Id.* at 1154.  The Ninth Circuit further explained: "In a wage and hour case, unlike an antitrust class action, the employer-defendant's actions *necessarily* caused the class members' injury. . . . Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages . . . stemmed from *Defendants'* actions." *Id.* at 1155.

Further, while it may be necessary to use statistical evidence to determine the amount of damages owed, as the Supreme Court has ruled there is nothing wrong with that. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456-57 (2016). In *Tyson*, the United States Supreme Court explained as follows:

> In this suit . . . respondents sought to introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records. If the employees had proceeded with 3,344 individual lawsuits, each employee likely would have had to introduce (statistical evidence) to prove the hours he or she worked. Rather than absolving the employees from proving individual injury, the representative evidence here was a permissible means of making that very showing.

Plaintiffs may calculate damages for meal period violations using Brinker's records as produced through discovery and analyzed with the help of Plaintiffs' expert James Toney. Plaintiffs can likewise calculate damages for usage of their personal cellphone (and the HotSchedules Download) by calculating the number of months worked by each putative class member and factoring in the HotSchedules initial purchase amount. Finally, as to Plaintiffs' class claims for rest breaks, statistical and survey evidence will suffice to calculate damages owed to the class. Since Brinker failed to keep proper records, the burden of proof as to the fact and amount of damages is with Defendant.  California law imposes on every employer the obligation to keep accurate records of *all* hours worked. Lab. Code § 1174; *Hernandez v. Mendoza,* 199 Cal.App.3d 721, 727-728 (1981): "Where the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." *Cicairos v. Summit Logistics, Inc.,* 133 Cal. App. 4th 949, 962 (2005). Defendants cannot use their own failure to keep records of these claims to defeat certification. Once certified, Plaintiffs will utilize all available methods to calculate damages.

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

### 3.     The Classes are Ascertainable.

Ascertainability is an "inherent" requirement under Rule 23(b)(3). *Xavier*, 787 F. Supp. 2d at 1089. "'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 627, 679-80 (S.D. Cal. 1999). "An identifiable class exists if its members can be ascertained by reference to objective criteria, but not if membership is contingent on a prospective member's state of mind." (*Schwartz*, 183 F.R.D. at 679-80.) It must be feasible to determine whether a person is a class member. *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013).

The classes sought to be certified here are defined by reference to objective criteria. Not only can the class members be identified, Brinker has already identified them. The Hourly Employee Class and the sub classes Plaintiffs seek certification of have already been identified from Defendant's records (and can be updated easily to reflect any additions). The putative class signed the same arbitrations agreement, and that group is easily ascertainable with reference to Brinker's records. All of these processes are objective, mechanical, and will result in clearly ascertained class membership**.**

### 4.     Class-Action Treatment Is Superior to Individual Actions.

Rule 23(b)(3) requires this Court to determine whether "a class action is superior to other available methods for a fair and efficient adjudication of the controversy."   A class action is superior to other methods of litigation "[w]here class wide litigation of common issues will reduce litigation costs and promote greater efficiency" and where "no realistic alternative exists to class wide treatment." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).   Rule 23(b)(3) lists four factors to be considered in deciding superiority; additional factors also confirm the superiority of class actions.

The first factor is the interest of each class member in "individually controlling the prosecution or defense of separate actions."   Fed. R. Civ. P. 23(b)(3)(A).   Here, any interest is minimal because, while the aggregate damages of class members may be large, the damages of each individual are small.   *See Hanlon*, 150 F.3d at 1023.   In fact, a class action is the only feasible means by which individual employees who are victims of Brinker's violations can hope to obtain a cost-effective remedy.   "The class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen*

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

24

*v. Carlisle & Jacqueline*, 417 U.S. 156, 186 (1974) (Douglas, J., conc. and diss. in part).  The Supreme Court aptly explained that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods.*, 521 U.S. at 617.  Therefore, because class actions were designed to thwart such injustice (*see Amchem Prods.*, *supra*), class certification is appropriate here.

The Court must compare "the difficulties likely to be encountered in the management of a class action" with other available alternatives.  *See* Fed. R. Civ. P. 23(b)(3)(D).  Management of this case as a class action will not involve such difficulty that individual actions would be a better way of resolving this controversy.  Liability to the Classes will be determined on the basis of common proof.

With respect to the need for individual damage calculations, as discussed above, "[t]he amount of damages is invariably an individual question and does not defeat class treatment."  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  As to how damages will be proven, they can be determined through well-established procedures, including straightforward analysis of Brinker's records, as well as surveys, testimony, representative sampling, and statistical extrapolation.

The claims in this matter will be proven, predominantly with two forms of concrete data.  First, Plaintiffs' class claims for missed meal periods and cell phone reimbursement can be calculated on a classwide basis using Brinker's own timekeeping and payroll records and the use of Plaintiffs' expert James Toney to analyze the precise number of missed meal period violations. Brinker's records may also be used to calculate damages for cellphone reimbursement. Finally, Plaintiffs and the putative class can substantiate the damages for the rest break claim through surveys, testimony, representative sampling, and statistical extrapolation.

## V.    CONCLUSION

All elements for class certification are met. This is a classic case for class certification, the class should be certified, and Setareh Law Group and Haines Law Group, APC should be appointed as class counsel.

///

///

///

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

25

1   DATED: July 17, 2024                        SETAREH LAW GROUP

2

3                                           */s/ Shaun Setareh*

4                                         SHAUN SETAREH
                                           JOSE MARIA D. PATINO, JR.

5                                         TYSON GIBB
                                         Attorneys for Plaintiffs

6                                         AMANDA HALE and JESUS GOMEZ

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771