Kevin D. Reese (State Bar No. 172992)
Geoffrey R. Pittman (State Bar No. 253876)
Robert Yang (State Bar No. 312964)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail:  Kevin.Reese@jacksonlewis.com
E-mail:  Geoffrey.Pittman@jacksonlewis.com
E-mail:  Rob.Yang@jacksonlewis.com

Attorneys for Defendants
BRINKER INTERNATIONAL, INC., BRINKER
INTERNATIONAL PAYROLL COMPANY, L.P.,
and BRINKER RESTAURANT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HALE and JESUS GOMEZ, on behalf of themselves and all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BRINKER INTERNATIONAL, INC., a Delaware corporation; BRINKER INTERNATIONAL PAYROLL COMPANY, L.P., a Delaware limited partnership; BRINKER RESTAURANT CORPORATION, a Virginia corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:21-cv-09978-VC<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Complaint Filed:  11/18/2021<br>Removal Filed:  12/23/2021<br>Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED………………………………………………….1

I.   INTRODUCTION .........................................................................................................1

II.  FACTUAL BACKGROUND ........................................................................................4

    A.   Chili's® and Maggiano's Little Italy Locations, Operations and Staff....................4

    B.   Plaintiffs' Complaint and Class Certification Motion ..........................................5

        1.   Plaintiffs' Complaint Alleged Brinker Provided Late and Short Meal Breaks ................................................................................................5

        2.   Plaintiffs Abandon Late and Short Lunch Theory of Liability.................6

    C.   Amanda Hale's Testimony Severely Undermines Plaintiffs Motion. .....................7

    D.   Jesus Gomez....................................................................................................10

    E.   Plaintiffs' Declarants Provide Contradictory Testimony.....................................10

    F.   Brinker's Employees Overwhelming Demonstrate the Availability of Meal and Rest Breaks and their Varying Reasons to Skip their Meal Breaks...................11

    G.   Brinker's Lawful Written Meal and Rest Break Policies ...................................12

        1.   Multi-layered Compliance on Brinker's Meal and Break Policies.....................12

        2.   Skip Reports/Attestation Data.........................................................13

    H.   FORENSIC ANALYSIS OF POS, KITCHEN PRODUCTION, AND COMPLIMENTARY/DISCOUNT MEALS DATA.........................................................14

III.  LEGAL ARGUMENT.................................................................................................16

    A.   California Meal and Rest Break Legal Principles.................................................16

    B.   Rule 23 Requires  a Rigorous Analysis Before Certifying A Class. ......................17

    C.   Plaintiffs' Meal and Rest Break Claims Cannot Be Certified Because pf Brinker Facially Compliant Meal and Rest Break Policies. ............................................18

    D.   Class Certification Is Not Proper Because Individualized Issues Predominate.................19

    E.   Plaintiffs' Claims for Failure to Reimburse Business Expenses Are Factually Unsupported and Present Highly Individualized Issues .......................................22

    F.   Plaintiffs Fails To Prove the Class Representatives Are Adequate. ......................22

        1.   Hale Is Not Acting in A Fiduciary Capacity to the Class..................22

        2.   Gomez Failure to Disclose Pending Litigation in Bankruptcy disqualifies him as a Class Representative.........................................................23

    G.   CONCLUSION.................................................................................................24

i

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ...................................................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................................19, 20

*Amey v. Cinemark*,
    No. 13-cv-05669-WHO, 2018 U.S. Dist. LEXIS 140156 (N.D. Cal. Aug. 17, 2018) .......17

*Bercy v. City of Phoenix*,
    103 F.4th 591 (9th Cir. 2024) ..................................................................................23

*Berger v. Compaq Computer Corp*,
    257 F.3d 475, 482 (5th Cir. 2001) ............................................................................22

*Dunmore v. United States*,
    358 F.3d 1107 (9th Cir. 2004) .............................................................................23, 24

*EEOC v. BNSF Ry. Co.*,
    902 F.3d 916 (9th Cir. 2018) ...................................................................................24

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..............................................................................18, 19

*Flores v. Supervalu, Inc.*,
    509 F. App'x 593 (9th Cir. 2013) .............................................................................18

*Kamar v. RadioShack Corp.*,
    375 F. App'x 734 (9th Cir. 2010) .............................................................................17

*Kamar v. Radio Shack*,
    254 F.R.D. 387 (C.D. Cal. 2008) .............................................................................17

*Kirkpatrick v. JC Bradford & Co.*,
    827 F.2d 718 (11 Cir. 1987)....................................................................................22

*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011) ...................................................................................17

*Miles v. Kirkland Stores, Inc.*,
    89 F.4th 1217 (9th Cir. 2023) ..................................................................................17

*Morlan v. Univeral Guar. Life Ins. Co.*,
    298 F.3d 609 (7th Cir. 2002) ...................................................................................24

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods*,
    31 F.4th 651 (9th Cir. 2022) ....................................................................................18

*Quinlan v. Macy's Corp. Svcs., Inc.*,
    No. CV 12-00737 DDP, 2013 U.S. Dist. LEXIS 164724 (C.D. Cal. Aug. 22, 2013) .......19

ii

*Sierra Switchboard Co. v. Westinghouse Elec. Corp.*,
    789 F.2d 705 (9th Cir. 1986) ...........................................................................23

*Sultan v. Medtronic, Inc.*,
    No. CV 11-4132-MWF, 2012 U.S. Dist. LEXIS 107046 (C.D. Cal. July 23, 2012) ...................18, 19

*Wal-Mart Stores v. Dukes*,
    131 S. Ct. 2541 (2011)...................................................................1, 18, 19

*Wang v. Chinese Daily News, Inc.*,
    737 F. 3d 538 (9th Cir. 2013) ..........................................................20

*Zinser v. Accufix Research Institute, Inc.*,
    253 F. 3d 1180 (9th Cir. 2001) .........................................................20

**California Cases**

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) ...........................................................13, 16, 19

*Cirrincione v. American Scissor Lift*, Inc,
    73 Cal. App. 5th 619 (2021)...........................................................17, 21

*Donohue v. AMN Servs., LLC*,
    11 Cal. 5th 58 (2021) ....................................................... *passim*

**Federal Statutes**

11 U.S.C.
    § 323(a)– (b) ...................................................................................23
    § 541(a)(1) ......................................................................................23

**California Statutes**

Labor Code
    § 2802.................................................................................................4

**Other Authorities**

American *Scissor Lift, Inc*..................................................................21

FRCP
    rule 23 ...................................................................................1, 17, 18, 19
    rule 23(a) ..............................................................................1, 17, 18, 19
    rule 23(b)..................................................................................17, 19
    rule 23(b)(3) ................................................................. *passim*
    rule 23(a)(4) .......................................................................................1

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Plaintiffs satisfy their burden under Federal Rule of Civil Procedure Rules ("FRCP") 23(a) and 23(b)(3) with respect to their proposed class based on alleged denied meal breaks where there is a lawful policy, but not no uniform practice, and individualized issues will predominate.

2.     Whether Plaintiffs satisfy their burden under FRCP 23(a) and 23(b)(3) with respect to their proposed class based on alleged denied rest breaks where there is a lawful policy, but no uniform practice and individualized issues will predominate.

3.     Whether Plaintiffs satisfy their burden under FRCP 23(a) and 23(b)(3) with respect to their proposed class based on alleged failure to reimburse Plaintiffs and putative class members for charges related to the use of the HotSchedules application on their personal cellphones where this is no uniform policy or practice to require the use of the HotSchedules application.

4.     Whether Plaintiffs have satisfied their burden under FRCP 23(a)(4) which requires the named class representatives will fairly and adequately protect the interests of the class.

## I.      INTRODUCTION

Plaintiffs Amanda Hale ("Hale") and Jesus Gomez ("Gomez") (together, "Plaintiffs") move this court for an order to certify the following classes: 1) Missed Meal Period Class, 2) Missed Rest Period Class and 3) Cell Phone Reimbursement Class.  Plaintiff's motion should be denied because Plaintiffs fail to present sufficient admissible evidence to satisfy the rigorous analysis required by Federal Rule of Civil Procedure Rule ("Rule" or "Rules") 23 as to the proposed classes.   Instead, Plaintiffs move for class certification without any understanding of or regard for the incredible complexity and diversity of the workforce that they seek to represent. In short, there simply is no glue that binds.

In other words, Plaintiffs have a *Dukes v. Wal-Mart* problem. They have not demonstrated that the class members "have suffered the same injury" or any injury at all.  Moreover, they have not shown that there is a "common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2545 (2011).

Plaintiffs' Motion for Class Certification ("Motion"), as to the meal and rest break claims, is based

on their recently crafted contention that all of Brinker International Payroll Company, L.P.'s (Brinker)[1] California restaurants fail to provide putative class members meal or rest breaks because Brinker does not mandate that breaks be scheduled (nor does California law) or operationally deploy "any type of 'breaker' system to relieve employees who wish to take a meal period"(also not required by California law).[2] Plaintiffs Motion at 1.  Plaintiffs contend, without representative evidence, that these operational changes are necessary for Brinker to comply with California law based on the disputed factual contention that all of Brinker's California restaurants are so understaffed[3] that no non-exempt employee has an opportunity to take either meal or rest breaks for each shift, for each job category and for each day at each restaurant. Plaintiffs' understaffing theory of liability lacks the support of any scientific analysis of staffing relative to customer order flow of Brinker restaurants throughout California. Instead, it is based on anecdotal "evidence" debunked by their own witnesses.

> "Q. And were there slow days?
>
> A. There were – of course.
>
> Q. And there were slow days in which you could take a meal break if you wanted one?
>
> A. If you wanted one and asked, I'm sure."

(Deposition of Amanda Hale, 122:5-9).

Hale's testimony is consistent with the customer order flow analysis provided  with Brinker's Opposition to the Motion[4], along with the declarations of over 50 percipient witness employees, which shows  that restaurants have peak customer times (lunch and dinner times being peak times) and much slower times,  providing employees with plenty of opportunities to take breaks – both  rest and meal breaks.  Moreover, Plaintiffs assume, without evidence, that Brinker restaurants do not have the option to provide employees with a break even when the restaurant is busy.  Plaintiffs make the nonsensical

---

[1] At all times relevant, Plaintiffs and the putative class were employed by Brinker International Payroll Company, LP.  Neither Brinker International, Inc. nor Brinker Restaurant Corp. have employed non-exempt employees in California during the relevant time period.  See Declaration of Dan Fuller.

[2] This contention deviates from Plaintiffs' theory of liability set forth in the Second Amended Complaint ("Complaint").

[3] While Plaintiffs proffer a theory of understaffing, Plaintiff's expert, James Toney, presents no analysis of staffing levels.  Moreover, understanding how many employees worked in a given restaurant on a given day during a given shift (lunch or evening), does not provide a measure of "understaffing" because the question of understaffing requires an understanding of both the level of staffing and of the level of business in the restaurant at that time.

[4] See Robert Crandall Report.

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

assumption that individual managers do not provide breaks during non-peak hours.  Additionally, the complimentary and discount meal ("Comped Meal") data demonstrates that employees were taking paid and unpaid time off to eat meals during either meal breaks, rest breaks or both.

Plaintiffs also fail to carry their burden of producing sufficient evidence demonstrating putative class members were pressured and coerced into falsely attesting that they voluntarily chose to forego their meal breaks on a per shift basis in Brinker's timekeeping system.  Brinker's affirmative defense that putative class members voluntarily chose to forego meal and rest breaks necessarily demonstrates that individualized issues predominate, precluding class certification.

Plaintiffs' additional assertion that Brinker requires Plaintiffs and putative class members to download and use the "HotSchedules" application on their cell phone device in order to engage in a variety of administrative functions without reimbursement of the $2.99 charge from the App Store is similarly not supported by the record. Hale, however, testified that she did not purchase the HotSchedules application but that her cousin did.  Further, the evidence demonstrates that Brinker did not require the purchase of the application, as HotSchedules could be accessed via a web browser *without* purchasing the application. Further, the evidence also demonstrates that those in the class who might have chosen to purchase the application did so far in advance of the class period when the application was introduced (HotSchedules only needs to be purchased once).  The evidence also shows that putative class did not need to use their personal phones to access HotSchedules because they could access it on iPads and computers in the restaurants.

Finally, neither Hale nor Gomez are adequate class representatives.  Hale is not because her testimony shows she in fact was provided the opportunity to take meal and rest breaks.  Gomez is not an adequate class representative because he filed for bankruptcy during the pendency of this action but failed to disclose his claim against Brinker.

Denial of certification as to the meal periods class is proper because: (1)  whether each employee was provided a legally compliant meal periods involves individual inquiries and vary person-by-person, restaurant-by-restaurant, day-by-day and shift-by-shift; and (2)  whether  employees were pressured to falsely select that they chose to voluntarily forego their meal period involves a highly individualized inquiries into each person's mental state and reason for selection on a shift-by-shift basis.  Plaintiffs'

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

proposed rest break class suffers a similar fate:  whether individual employees took the rest breaks that Brinker provided requires a hopelessly individualized inquiry and as such individual issues predominate. Finally, Plaintiffs' Motion with respect to an expense reimbursement class must be denied because Plaintiffs fail to present sufficient evidence to carry their burden that Brinker required the purchase of the HotSchedules application and the use of the application on their personal cellphone and thus Plaintiffs cannot establish any reimbursable expense under Labor Code § 2802.

## II.   FACTUAL BACKGROUND

### A.   Chili's® and Maggiano's Little Italy Locations, Operations and Staff

Brinker operates Chili's® and Maggiano's Little Italy ("Maggiano's") casual dining restaurants. Presently there are 108 Chili's restaurants and three Maggiano's restaurants in California. For both Chili's and Maggiano's, customer volume varies among each restaurant by day, week, season, and shift.[5]  For Chili's restaurants, some see their heaviest activity on Friday and Saturday nights (and Monday nights during football season), while others are more family-centric and are busiest on Thursdays through the weekend. [6]Although the California Chili's restaurants generally have the same hours of operation and are open from 11:00 a.m. to 10:00 p.m. Mondays through Thursdays; 11:00 a.m. to 11:00 p.m. or 11:30 p.m. on Fridays and Saturdays; and 11:00 a.m. to 10:00 p.m. on Sundays, the busy periods for each restaurant vary and can be affected by location, days of the week, time of year, college and professional sports schedules, holidays, and a host of other factors as well. As a result, staffing levels are highly correlated with anticipated customer flows at each individual restaurant.

Within a Chili's restaurant, there are numerous different jobs with different responsibilities.  "Front of the House" ("FOH") employees include Host, Food Runner, To Go, Server, Bartender, and Busser. "Heart of the House" ("HOH") (also referred to as "Back of the House" "BOH")) includes Kitchen Manager, Chef, Sous Chef, Line Cook, Dishwasher, QA Expeditor, and Prep Cook.  Morning shift times for HOH can vary by position but generally start between 10am and 11am.  The HOH employees receive complimentary (free) meals which they frequently take advantage of.  Morning shift, HOH members typically eat together before the restaurant opens to customers.  These free meals are tracked.[7]  The

---

[5] See Compendium Ex. 89 (Declaration of Crandall Report).
[6] See Compendium Ex. 89 (Declaration of Crandall Report).
[7] See Compendium Ex. 89 (Declaration of Crandall Report).

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

morning/afternoon shift for the FOH generally starts at 10 am.  Arrival times are often staggered based on the individual restaurant needs by anticipated customer flow for that day.[8]  FOH personnel are generally entitled to meals at a 50% discount which can be consumed before, during or after their shift. These meals play a significant role in employee decisions as to whether  voluntarily forgo taking an ***unpaid*** 30 minute meal break. (*Ibid.*) The Comped Meal data analysis done by Mr. Crandall shows the number of free and discounted meals given to employees in each restaurant each day.  Generally, there are two types of Comped Meals in the data.   "Group meals"  likely are "HOH" employees eating before the start of the lunch or dinner rush.  For the group meals the number of meals is recorded, but there is no direct tie to an individual employee. See Compendium Ex. 89 (Declaration of Crandall Report).  For example, for the morning shift there is often a group meal near 11 a.m. and in the mid-afternoon there is a group meal near 5 p.m. (*Ibid.*)  In addition, servers receive discounted meals which can be identified individually in the system.  Often, employees who received a comped or discounted meal in the system did not clock out for an unpaid  meal  break  and  instead  attested  that  they  were  provided  an  off-duty  unpaid  meal  break opportunity but waived taking it.  Thus, the data suggest these employees ate their meals while clocked in and paid and had economic incentive to make that exact choice. (*Ibid.*)  While plaintiffs claim without evidence that the employees were coerced into stating they voluntarily waived their opportunity to take an unpaid break, when given the choice between a paid on the clock meal (likely taken during their rest break) or taking a duty free 30 minute unpaid meal break, the evidence demonstrates overwhelmingly that employees  chose  eating  and  being  paid  and  getting  off  work  earlier. (*Ibid.*) This  is  not  particularly surprising and highlights the individualized assessment related to Plaintiffs' "pressure" theory of liability.

### B.  Plaintiffs' Complaint and Class Certification Motion

Although Plaintiffs' Complaint alleges eight claims,  their Motion is limited to first, second and fourth claims. Plaintiffs' potential  Class  is limited to a narrow category of employees subject to  specific outdated arbitration agreement this Court found defective.

### 1.  <u>Plaintiffs' Complaint Alleged Brinker Provided Late and Short Meal Breaks</u>

Plaintiff's Complaint contends that putative class members were *taking their meal breaks* but they were either taken late or short of the required 30 minutes.  Specifically, the Complaint alleges that:

---

[8] See Compendium Ex. 89 (Declaration of Crandall Report).

> Defendants have a policy and/or practice of **requiring** Plaintiffs and the aggrieved employees to take their meal periods **after the fifth hour** of work during busy shifts.[9] Additionally, Plaintiffs and the aggrieved employees **routinely clocked out for their meal periods**, quickly ate their food, and then clocked in to continue performing their duties as their worksites were understaffed.

See SAC P. 6 Lines 22-26.[10] The Complaint alleges class representatives routinely clocked out and took their meal breaks, but clocked back in short of their 30 minutes. These allegations are inconsistent with the time clock evidence showing that both Hale and Gomez rarely clocked out for any meal break and highly suggests that Plaintiffs were quickly eating on their 10-minute rest breaks not their off the clock meal breaks.  The data shows that Hale choose to voluntarily forego ("skip") her meals on 357 of the 364 shifts where she was eligible to receive a meal period. Similarly, Gomez skipped meals on 740 of his 748 meal eligible shifts.[11] In short, the evidence supports neither the original "short and late meal break" allegations in the Complaint nor the revised contentions in the Motion (understaffing and pressure).

## 2.    <u>Plaintiffs Abandon Late and Short Lunch Theory of Liability.</u>

Faced with overwhelming evidence that contradicts the theory of liability contained in the SAC, Plaintiffs' Motion abandons the pled theory and now contends that Brinker failed to provide meal breaks by virtue of being understaffed at each restaurant, , for each shift, on each day.. Plaintiffs' failure to provide *theory*, however, directly contradicts the daily attestation *evidence* that reflects employees acknowledge their choice to voluntarily forego meal breaks. To sell this new theory of liability, plaintiffs  necessarily attempt to attack the hard data that reflects over 90% of the employees attest on a per shift basis that they voluntarily chose to forego their meal breaks..  Plaintiffs motion argues that the attestations of the putative class should be ignored because the attestations were coerced. This new contention, absent from the SAC and without any supportive representative evidence, directly targets Brinker's lawful practice of not forcing employees to take unpaid off the clock meal breaks and a Time Keeping System that documents **on a per shift** basis whether the employee voluntarily chose to forego a meal break or, instead, did not have an opportunity to do so.  Under *Donohue*, Brinker's time keeping system is lawful and plaintiffs

---

[9] Plaintiffs produced no evidence of a policy or practice of requiring employees to take meal periods after the fifth hour of work.
[10] Plaintiffs complaint is devoid of key allegations contained in the operative motion for class certification and pleads no theory of liability based on chronically overstaffed restaurants or pressuring employees to falsifying time clock entries.
[11] See Compendium Ex. 89 (Declaration of Crandall Report).

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                Case No. 3:21-cv-09978-VC

complete lack of evidence a common policy or practice reflecting coercion undermines plaintiffs theory. See *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58 (2021).

Critically, Plaintiffs' theory of liability necessarily requires an individualized inquiry into the question of "why" each employee selected the "yes" prompt for each shift. Each employee may have a host of different reasons for their selection on each day.  There is nothing common about such an individualized inquiry and a such class certification for this class is improper.[12]

### C.    Amanda Hale's Testimony Severely Undermines Plaintiffs Motion.

Hale worked at the Simi Valley Chili's primarily as a food server from December 17, 2005, to March 19, 2020.[13] Hale submitted a declaration dated July 17, 2024 just a few weeks before her deposition on August 12, 2024.  While Hale's declaration was drafted and executed on the day Plaintiffs' Motion filed and plainly tailored to support the Motion, Hale stunningly walked back on large critical parts of her declaration signed in July.  Examples of contradictions made during her deposition include the following:

   a.    Declared that "I was forced to ask a manager and was frequently denied [a meal break] due to the business needs of Chilis." (Dec., ¶ 8.) Testified that no manger ever told her that she couldn't take a meal break or rest break. (Depo., 119:4-120:5.)

   b.    Declared that restaurant was not staffed enough. (Dec., ¶ 8.) Testified that she didn't know how many people were regularly scheduled to work on any given day. (Depo., 60:15-61:14.) Also testified that "Every day is different." (Depo., 73:13-74:5.)

   c.    Declared that she had been "reprimanded over meal periods." (Dec., ¶ 9.) Testified that she could not remember being punished for taking a meal break. (Depo., 166:24-167:4.) Does not recall anyone else being punished for it. (Depo., 168:24-169:7.)

   d.    Declared that she couldn't take a rest break because of understaffing. (Dec., ¶ 10.) Testified that she didn't know about rest breaks. (Depo., 170:24-171:8; 172:2-4.) Also testified that she never asked for a rest break. (Depo., 173:3-17.)

   e.    Testified that she was not able to receive comped meals unless she was on a break. (Depo., 67:5-17; 127:21-128:4.) But also testified that she could order comped meals while on the clock. (Depo., 71:15-17.)

   f.    Declared that she was "very rarely provided with meal breaks…" (Dec., ¶ 8.). But testified that she had to clock out to get comped meals. (Depo., 114:2-11.) Also testified that leaving the premises "Depending on the shift and who you were working with." (Depo., 115:7-15.)

   g.    Declared that "There was simply nobody to relieve me of my duties so that I could

---

[12] Plaintiffs contend without scientifically representative evidence that employees were "pressured" into saying YES to the waiver prompt. Nor do Plaintiffs' declarants testify that they were "pressured" into saying YES to the waiver prompt.

[13] Plaintiff Hale incorrectly stated that she was employed until June 2020.

7

take a meal break." (Dec., ¶ 8.) Testified that "some servers could have been busy, so weren't." (Depo., 78:15-20.)

h.    Declared that she had to complete an attestation in order to clock out. (Dec., ¶ 9.) Testified that she couldn't recall seeing the attestation form. (Depo., 89:16-92:20; 94:6-21.)

i.    Declared that "Upon information and belief, my co-workers did the same" when having to clicking on the attestation. (Dec., ¶ 9.) Testified that she didn't know if they really did. (Depo., 93:18-20.)

j.    Declared that she "understood that if I selected the 'no' option I would be prevented from clocking out." (Dec., ¶ 9.) Testified that she does not know what clicking "no" on the attestation would do. (Depo., 100:4-20.)

k.    Testified to not knowing when she downloaded HotSchedules. Also she did not actually purchase the app, her cousin did. (Depo., 107:7-108:3; 108:25-110:22.)

l.    Testified that there was probably other ways to access HotSchedules. Also that "majority used the app." (Depo., 108:9-24; 112:13-21.)

m.    Testified that she was never instructed to keep waiting on tables while on meal breaks (also took 30 mins). (Depo. 129:9-130:2.)

n.    Testified that she could not remember being punished for taking a meal break. (Depo., 166:24-167:4.) Does not recall anyone else being punished for it. (Depo., 168:24-169:7.)

Compendium Ex. 5.

Hale's declaration claims she feared management reprisals including the loss of her job for executing the meal period attestation truthfully based on her previously been reprimanded over meal periods.. She also declared that she did not remember receiving any additional compensation for missing her meal periods.  She made these critically important statements under oath and then dramatically walked back on these claims days later.   Hale's testimony contradicted large portions of the core statements contained in her declaration, destroyed all credibility in everything stated in her declaration, and demonstrates that she is not an adequate class representative given her apparent willingness to make false statements under oath.  Moreover, Hale also undermined the entirety of her declaration by admitting that she was not sure what time period her contentions related to between the start and end of her employment. (*Ibid.,* 175:3-22.)

Paragraph 9 of Hale's declaration is entirely aimed at supporting Plaintiffs' Motion by attacking the attestations signed by Hale and putative class member by claiming that the attestations were forced and unreliable. Hale's declaration seeks to explain why she selected "yes" ***357 different*** times to the attestation question regarding whether she voluntarily chose to forego her meal period.  Hale's declaration

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

loudly claimed that she was forced to select the "yes" when asked if she had voluntarily chosen to forego her meal breaks "at the direction of management" with the implied threat of losing her job.[14]  Hale's deposition testimony, however, cannot be reconciled with her declaration statements. Paragraph 9 of Amanda Hale's declaration begins with the false narrative of Hale being "instructed by management to simply select "yes" so I could leave for work."[15] But at her deposition she testified as follows:

> Q.      So let's see what the second sentence says (of paragraph 9 of Hale's declaration).  "I was instructed by management to simply select yes, so I could leave work for the day." Is that a true statement?
>
> A.      It *could have* been….
>
> ...
>
> Q.      And it could have not happened?
>
> A.      It could have not happened, it could have.
>
> Q.      And as you sit here today, you can't identify any manager that ever told you to simply select yes so you could leave from work for the day?
>
> A.      That's correct….

Hale's declaration claimed she followed this direction under pressure, falsely putting "yes" and in fear of selecting "no".  But her deposition testimony reads very differently:

> Q. …. You testified earlier, right, that you had no reason to think that this (selecting no) would jeopardize your employment, right?
>
> A.      Again, because I didn't always hit "no".  Now, if I would have continued that, could it, possibly, but I don't know. I don't know.
>
> Q.      Based on what? You don't know of any employee, any colleague that was ever disciplined about this, was ever yelled at, was written up?  You don't know any of those things correct?
>
> A.      Correct.
>
> Q.      You don't have any knowledge of anything bad ever happen to anyone who hit "no" right?
>
> A.      And what I can remember, I – again, I don't know.
>
> Q.      And nothing ever happened to you for hitting "no" right?
>
> A.      What I remember, no.

(Depo. 165:11-166:3, Compendium Ex. 5)

Critically, not one of the declarations submitted by or on behalf of Plaintiffs contend that they were "instructed by management" to select "Yes" so they could leave work.  ***Hale's contention is either nonrepresentative of the class she seeks to represent or simply false***. ***Both of which are disqualifying.***

---

[14] On Brinker's Aloha system, the "yes" button prompt would signify that the employee was provided with a meal period but voluntarily chose to forego it.

[15] Selecting "yes" on the Aloha system would indicate that the employee voluntarily chose to forego their meal break

9

During Hale's deposition, she readily conceded that customer flow varied, that her restaurant had slower times, that she could have taken breaks, that she was never disciplined for indicating on the time keeping system that she was unable to take a meal break, nor was she aware of anyone who had been disciplined for the same. (Depo., at 78:15-20; 93:18-20; 115:7-15; 166:24-167:4; 168:24-169:7). Hale frequently throughout her deposition could not remember the factual basis for statements made in her declaration just days earlier. *Hale effectively walked back virtually every factual contention she made in paragraph 9* and many contentions in the other paragraphs.

### D. Jesus Gomez

Gomez worked at Chili's at its Rancho Dominguez location as a cook and prep cook during the class period. As a member of HOH, Gomez's experiences were substantially different from Hale's. HOH members receive complimentary meals. Gomez *voluntarily skipped meals on 740 of his 748* meal eligible shifts. See Declaration of Crandall, Compendium Ex. 89. Despite receiving Comped Meals, Gomez at his deposition largely stuck to the script of his declaration. However, Gomez's testimony is refuted by his former coworker and percipient witness Adan Serrano who states as follows:

> I worked various times with Jesus "Chuy" Gomez. I do remember seeing that he took his lunches and breaks. Also, we have a rotation in the kitchen so that cooks could take our 30 minute lunch breaks, and I remember Chuy being a part of that rotation and I would sometimes cover for him. If Chuy did not take his lunches or breaks, it was because he did not want to. The Company does provide us rest breaks and lunch breaks."

Compendium Ex. 70 (Declaration of Adan Serrano, ¶ 42). Adan also stated that the restaurant has iPads to access HotSchedules.

### E. Plaintiffs' Declarants Provide Contradictory Testimony

The testimony of the class representative and the declarants evidence distinct variances in their experiences with Brinker. None claimed that Management coerced them to make false "skip" acknowledgments. Similar to Hale, many of the declarants contradicted statements made in their declaration at deposition and actually support Brinker's position. One declarant admitted that she voluntarily chose not to take a meal break because she had a second job that started at 5 pm.[16]

- Bill Cadger declared that he was unable to take a 10-minute uninterrupted rest period because it was considered "weak." Compendium Ex. 15 (Declaration of Bill Cadger, ¶ 8.) However, Mr. Cadger also admitted that he was not actually told that it was "weak" to take a rest break, rather it was "vibe" that he personally believed. Compendium Ex. 14

---

[16] Her shift ended at 4pm. so extending her shift by taking a meal break would have been problematic.

(Deposition of Bill Cadger, 62:5-63:25.) Mr. Cadger also testified that he saw employees smoke on breaks (Id. At 40:9-17.) He also testified that he was able to take a rest break before 6pm if he wanted to. (Id. at 37:3-20.)

- Jovia Feria actually testified that she "don't understand English very well" so she did not read her declaration before signing. Compendium Ex. 16  (Deposition of Jovia Feria, 50:12-51:25.) Despite this, she testified that manager would tell her to take rest and meal breaks. (Id. at 39:20-30:3.)

- William Widlak declared that if he "did not receive [his] meal break, a supervisor would have to come and override the attestation." Compendium Ex. 25 (Declaration of William Widlak, ¶ 7.) However, Mr. Widlak testified that as an assistant manager, he could actually override himself. Compendium Ex. 24 (Deposition of William Widlak, 46;25.)

**F.     Brinker's Employees Overwhelming Demonstrate the Availability of Meal and Rest Breaks and their Varying Reasons to Skip their Meal Breaks.**

The more than 50 declarations from different percipient witnesses submitted by Brinker demonstrate that team members had opportunities to take meal and rest breaks, they frequently chose to voluntarily forego their meal periods for a variety of personal reasons.  They frequently exercised their choice to not extend the total durational time of their shift by taking an unpaid 30 minute off the clock meal period when they could eat while on the clock via a paid rest break, or before or after their shift.  The declarants collectively loudly declare that staffing levels did not preclude their ability or their decision to take meal or rest breaks.  Their testimony also rejects the baseless contention that Brinker pressured team members into falsely indicating on Aloha system that they voluntarily choose to forego a meal period. While Amanda Hale seemingly feigned that she was completely unaware of the existence of rest breaks despite working for Brinker for 15 years, ***100%*** of the 51 declarants who submitted with the instant motion were aware of the availability of rest breaks. ***100%*** were also aware that meal breaks were provided. Similarly, ***95%*** were aware that using HotSchedules on your cell phone was not required. every single declarant was aware that Brinker provided rest breaks. The following are a few examples of employees validating that meal and rest breaks are provided and illustrating the various reasons "why" employees frequently skip ***unpaid*** 30 minute meal periods:

**Jordyn Andersen** (Compendium Ex. 26)

"The decision not to take a meal break is typically my choice unless I indicated otherwise on the Aloha system." "When I choose not to take a meal break, it's because I'm not hungry and ***not in the mood to sit for 30 minutes and do nothing***." "I typically take my rest breaks in the break room in the back or sometimes in my car. I am allowed to leave the restaurant when taking my 10-minute rest breaks."

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

**Kelvin Boakye** (Compendium Ex. 27)

"*I choose not to take a meal break because I do not feel I need it and taking it make me more tired*. For these reasons, I prefer to work through my shift without taking an unpaid meal period."

"If I missed a rest break, it is because I chose to do so, not because my supervisor prevent me from taking my rest break."

**Asa Boteler** (Compendium Ex. 28)

"I choose not to take a meal break because of the money*, I don't want to lose money*."

"During the occasions where I have not taken a rest break, I could have taken a rest break if desired, but voluntarily elected not to do so as a matter of personal choice. *Brinker did not pressure me* into not taking any rest breaks, it is voluntary on my part.

**Samuel Brennecke** (Compendium Ex. 29)

"*When I take my rest break*, I typically will be on my phone responding to message or *eat something I've ordered from the kitchen*". "*Brinker did not pressure me into not taking any rest breaks*." "I usually choose not to take a 30 minute unpaid meal break despite being provided with the opportunity to do so. The decision not to take a meal break is typically my choice unless I indicated otherwise on the Aloha system"

G.    **Brinker's Lawful Written Meal and Rest Break Policies**

Brinker's California meal and rest break policies have at all times during the putative class period provided Team Members ("TM") a 30-minute unpaid meal period on shifts over five hours that must be taken before the end of the fifth hour and which can be waived on shifts of six hours or less, and a second 30-minute meal period on shifts over ten hours that must be taken before the end of the tenth hour, and which can be waived only if the TMs works less than twelve hours and only if he or she did not waive the first meal period.[17]

Brinker's written California Meal Period and Rest Break Policy also authorizes and permits 10-minute rest breaks on shifts over 3.5 hours for every four hours or fraction thereof. *Id.* All TMs acknowledge receipt of Brinker's written meal period and rest break policies at the time of hire and are also reminded of Brinker's policies through daily reminder prompts on Brinker's Point of Sale ("POS") computers when they clock-in, trainings, restaurant meetings, and/or employee bulletins.[18]

1.    **Multi-layered Compliance on Brinker's Meal and Break Policies**

As part of on-going compliance efforts, Brinker regularly conducts training for its management

---

[18] *See* Compendium Exs. 1-4 (Deposition of Catherine Zefer-Fredericks, Melodie Hunt); 78-88 (Managers Declarations) .

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification          Case No. 3:21-cv-09978-VC

teams and for TMs. This training includes updates on its meal and break policies that are available on the Company's intranet (*BrinkerWeb > Forms and Policies > Wage and Hour Pay Guidelines > Meal Period Information*) and training at the restaurants.[19]

### 2. <u>Skip Reports/Attestation Data</u>

Brinker maintains "Skip Reports" of each TM's election whether to "skip" meal periods on shifts over five hours.  TMs commonly choose to skip taking a 30-minute meal break when their shifts are more than 5 hours, but less than 8 in order to shorten their day.  The vast majority of TMs who are eligible for meal breaks elect to forego an unpaid 30-minute meal period,  instead choosing to stay on the clock and end their shift 30 minutes earlier than they otherwise would had they choosen to take the 30-minute meal period.[20]  See Compendium Ex. 89 (Declaration of Crandall Report).

TMs use an electronic system called "Aloha" to clock-in and clock-out at the restaurants. The system includes a touch screen on the POS computers in each restaurant. All non-exempt TMs are prompted at the start of their shift and at the end of the shift about Brinker's meal and rest break policies and, as authorized by the Court in *Hohnbaum*, a TM may choose not to take (i.e. to "skip") the authorized meal period and/or rest break.[21]  ***At the start of every shift***, all TM's receive a "reminder" prompt about Brinker's meal and rest break policies when they clock in.[22]  The prompt states:

"I have read and understand the California Meal & Rest Break Policy. It's my responsibility to clock out for my 30-minute meal period before my 5th hour of work when I work a shift that is over 5 hours. All 10 minute rest breaks are on-the-clock."[23]

***At the end of their shift,*** if a TM clocks out after a shift of more than 5 hours, and did not clock out for a full 30-minute meal period during the shift, the following screen will appear:

"I acknowledge Brinker provided me a 30 minute meal period if I worked over 5 hours and

---

[19] *See*  Compendium Exs. 1-3 (Deposition of Catherine Zefer-Fredericks); 78-88 (Managers Declarations)
[20] *See*  Compendium Exs. 1-4 (Deposition of Catherine Zefer-Fredericks, Melodie Hunt);
[21] *See*  Compendium Exs. 1-4 (Deposition of Catherine Zefer-Fredericks, Melodie Hunt); Exs. 9 California Compliance Manual.
[22] *See*  Compendium Exs. 1-4 (Deposition of Catherine Zefer-Fredericks, Melodie Hunt); Exs. 9 California Compliance Manual.
[23] From November 18, 2017 until April 22, 2019, the prompt stated as follows: "I have read and understand the California Meal Period Policy. I understand that it is my responsibility to clock out and back in for my 30 minute meal period provided when I work a shift that is over 5 hours." Compendium Ex. 2; Compendium Ex. 4 ("Hunt Depo.").

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

a 2nd one if I worked over 10 hours. If I chose not to take a provided meal period, I acknowledge it was my voluntary choice & I was paid for my time.
        Yes_____                          No_____"

If the TM selects YES at this point, he / she will continue to clock out at usual. If for any reason, the TM selects NO, the TM will receive 1 hour of premium pay.[24] Compendium Ex. 2.

## H.    FORENSIC ANALYSIS OF POS, KITCHEN PRODUCTION, AND COMPLIMENTARY/DISCOUNT MEALS DATA

Brinker analyzed TMs' capacity to operate with a given amount of customer flow; to identify periods when the restaurants were busy and not busy to evaluate meal and break opportunities; and analyze staff scheduling practices relative to customer flow.[25] Rob Crandall of Resolution Economics analyzed a variety of data related to Plaintiffs claims that Brinker failed to *provide* the *opportunity* for an uninterrupted, 30-minute unpaid meal break within the first 5 hours of employees shifts and that Brinker failed to *authorize and permit* a net 10 minutes rest for every four hours worked or major fraction thereof.[26]

Mr. Crandle analyzed a variety of records of shifts worked data including: timekeeping, daily break attestation, and payroll data to study day and shift level (day/evening): 1) the staffing and scheduling practices at each restaurant; 2) meal breaks are recorded in timekeeping; 3) the daily break attestations showing breaks reported as provided, taken, or waived; and 4)  premiums paid  when the breaks are not taken or waived by the employee.  Mr. Crandall studied business operations data including: 5) POS data generated when servers and bartenders open customer checks, input customer orders, generate customer checks, and close out customer checks; 6) complimentary meals ("comp meals") data generated when employees receive free or discounted meals; and 7) kitchen data related to the number of items produced and when.[27]

By connecting the shift time and pay records with the business operations records, Mr. Crandall was able to evaluate: 1) whether there is wide variation across restaurants and across shifts in terms of the

///

---

[24] *See*  Compendium Exs. 1-4 (Deposition of  Zefer-Fredericks, Melodie Hunt); Exs. 9 California Compliance Manual.
[25] See Compendium Ex. 89 (Declaration of Crandall Report).
[26] Id.
[27] Id.

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

number of customers, the level of staffing, and the ratio of customers to staffing; 2) whether the POS data demonstrates that customer traffic ebbs and flows around traditional meal times, creating *opportunities* for meal and rest breaks on either side of the peak busy period; 3) whether the POS data demonstrates that generally adequate staffing was available to handle the level of business in the restaurant while providing meal and rest break opportunities; 4) whether the daily attestation data shows that most employees choose to waive breaks on nearly every shift; 5) whether the comped meals data shows that employees ate meals while clocked in; 6) whether a substantial portion of eligible shifts show both a waiver and a comped meal; and, 7) whether the payroll data shows that  premium paids when an employee reported "no" to the meal break or rest break prompts in the daily attestation data.[28]

Based on the data analysis, the variation observed in customer flow on a restaurant-by-restaurant, day-by-day, shift-by-shift basis can also be observed on an hour-by-hour basis as well.  The POS data analysis demonstrates there is considerable variation in customer flow on an hour-by-hour basis.  The implication is that a busy day can also have slower periods.  When charted, this variation results in peaks and valleys in customer flow throughout the day resulting in the unsurprising conclusion that restaurants tend to be busier at traditional mealtimes and less busy at other times.  This ebb and flow of customers throughout the day results in natural lulls in customer traffic.  Thus, the argument that the restaurant was "too busy" to take a rest or meal break is inconsistent with the operational patterns.[29]

The findings of variation in these staffing-to-customer flow ratios demonstrate that staffing levels are not uniform across all restaurants, or even across time of day at the same restaurant. This variation does not support Plaintiffs' contention that Brinker employees were subject to policies and procedures that produced *systematic* understaffing, resulting in uniform and consistent meal and rest break outcomes across all employees at all restaurants over the entire putative class period.  Instead, the variation in outcomes indicates that determining whether an employee was not *provided* the opportunity for a meal break or not *authorized and permitted* to take rest breaks  likely requires collecting detailed individualized facts and data regarding the shift, the staffing and customer flow on that shift, and what meal and rest break opportunities may have been available to employees on that shift.  In other words, the customer

---

[28] Id.
[29] Id.

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

flow data provides Brinker the opportunity to present affirmative defenses regarding break opportunities on an hour-by-hour basis during a given shift.[30]

Plaintiffs' expert, Mr. Toney, has no scientifically representative testimony or data from employees he could rely upon that would support the assumption that employees were never able to take rest breaks when they worked shifts greater than 3.5 hours systematically prevented from taking rest breaks because they had to ask a manager or supervisor.

## III.   LEGAL ARGUMENT

### A.   California Meal and Rest Break Legal Principles

In *Brinker vs. Superior Court* (*Hohnbaum*) and again recently in *Donohue vs. AMN Services, LLC*, the California Supreme Court stated the core principles governing meal and rest breaks. With respect to meal breaks, *Donohue* reiterated the rules set forth in *Hohnbaum*: "An employer is liable only if it does not provide an employee with the opportunity to take a complaint meal period.  The employer is not liable ***if the employee chooses*** to take a short or delayed meal period or ***no meal period at all***.  The employer is not required to police meal periods to make sure no work is performed.  "Instead, the employer's duty is to ensure that it provides the employee with bona fide relief from duty and this is accurately reflected in the employer's time records."  *Donohue*, 11 Cal. 5th 58, 78 (Emphasis Added). With respect to an employers' obligation to record meal periods, the Court held if time records show noncompliant meal periods, then a rebuttable presumption of liability arises. *Id*.  This presumption goes to the question of liability. *Id*. at 77.  Importantly, "[a]pplying the presumption does not mean that time records showing missed, short, or delayed meal periods result in 'automatic liability' for employers." *Id*. Employers "can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." *Id*.  An employer's assertion that "…the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case in chief. Rather,…the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it." *Id*. (Citing Brinker, 53 Cal. 4th at pp 1052-1053 (conc. Opn. Of Werdegar, J.) "Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay…." "A missed meal break does not

---

[30] Id.

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

constitute a violation if the employee waived the meal break, or otherwise voluntarily shortened or postponed it." *Cirrincione vs. American Scissor Lift*, Inc, 73 Cal. App. 5th 619, 639, (2021).

"Employers can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided complaint meal periods ***during which they chose to work***. "Representative testimony, surveys and statistical analysis," along with other types of evidence, "are available as tools to render manageable determinations of the extent of liability."   *Donohue*, 11 Cal.5th at 77. "Employers may use a timekeeping system like Team Time to track meal periods."   "Team Time included a dropdown menu for employees to indicate whether they were provided a compliant meal period but chose to work … Team Time would have ensured accurate tracking of meal period violations if it had simply omitted rounding." *Id.*, at 78.

**B.     Rule 23 Requires a Rigorous Analysis Before Certifying A Class.**

The party seeking class certification always bears the burden of proving class certification is appropriate. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). Plaintiffs must meet the burden of proving each element of the claims asserted.  "Importantly, a party cannot plead or speculate her way to class certification.  She must marshal facts showing, by a preponderance of the evidence, that class issues predominate."   See *Miles vs. Kirkland Stores, Inc*., 89 F.4th 1217 9th Cir. 2023). To obtain class certification under Rule 23, Plaintiffs must demonstrate that their proposed classes satisfy each of the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. FRCP 23(a). Additionally, Plaintiffs must show that their action falls within one of the three subsections of Rule 23(b).

Plaintiffs seek certification of three classes under Rule 23(b)(3), which permits certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). This "predominance" requirement imposes a burden on Plaintiffs to show Brinker "used a standard policy that was uniformly implemented." *Amey v. Cinemark*, No. 13-cv-05669-WHO, 2018 U.S. Dist. LEXIS 140156, at *11 (N.D. Cal. Aug. 17, 2018), citing *Kamar v. Radio Shack*, 254 F.R.D. 387, 399 (C.D. Cal. 2008) *aff'd sub nom.*, *Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) ("When the claim is that an employer's policy and

practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability.").

"Plaintiffs wishing to proceed through a class action must actually prove – not simply plead – that their proposed class satisfies each requirement of Rule 23 . . . and must carry their burden of proof before class certification." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods*, 31 F.4th 651, 664 (9th Cir. 2022) (internal citations and quotations omitted). Before it can certify a class, a court must be "satisfied, after a rigorous analysis, that the prerequisites" of both Rule 23(a) and Rule 23(b)(3) have been satisfied, which will entail overlap with the merits of the plaintiffs' underlying claims. *Id.* at 667 (citing *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate." A plaintiff must establish that their theory of legal liability can be resolved on a class-wide basis through common facts and law.

## C.    Plaintiffs' Meal and Rest Break Claims Cannot Be Certified Because pf Brinker Facially Compliant Meal and Rest Break Policies.

Courts routinely deny class certification where, as here, an employer has facially lawful meal and rest break policies because individualized inquiries would be necessary to determine instances where the policies were violated, thereby precluding adjudication of defendant's liability on a classwide basis. *See, e.g., Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1054 (9th Cir. 2015) (denial of class certification where employer had compliant policies: "questions as to why [employees] missed their meal and rest breaks, whether because of their employer's failure to provide them or their own choice to forego them, would predominate over questions common to the class"); *Flores v. Supervalu, Inc.*, 509 F. App'x 593, 594 (9th Cir. 2013) (affirming denial of class certification; where the employer's "written meal and rest break policies were facially lawful . . ., [t]he district court correctly found that this claim required examination of 'a number of human factors and individual idiosyncrasies' having 'little to do with an overarching policy'"; *Sultan v. Medtronic, Inc.*, No. CV 11-4132-MWF (PLAx), 2012 U.S. Dist. LEXIS 107046, at

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

*5 (C.D. Cal. July 23, 2012) (denial of class certification where employer had lawful meal and rest break policies and the "reasons that employees fail to take rest breaks can be manifold: the employees could have forgotten, wanted to finish assignments, were not hungry, did not want to leave the premises, wanted to leave early or, possibly, were manipulating their timecards.").

Throughout the putative class period, Brinker's California Meal and Rest Break Policy provided that employees receive uninterrupted meal and rest breaks in accordance with California law. Plaintiffs and putative class members received daily reminders of Brinker's policy when they clocked-in and when they clocked-out each day. Compendium Exs. 2-3, 9. Brinker is not legally required to ensure employees actually take meal and rest breaks.[31]

### D. Class Certification Is Not Proper Because Individualized Issues Predominate.

Plaintiffs bear the burden of establishing FRCP 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the requirements of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Under Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Courts must conduct a "rigorous analysis of the Rule 23 factors." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). "Because the merits of the claims are 'intimately involved' with many class certification questions, the court's rigorous Rule 23 analysis must overlap with merits issues to some extent." *Quinlan v. Macy's Corp. Svcs., Inc.*, No. CV 12-00737 DDP (JCx), 2013 U.S. Dist. LEXIS 164724, at *5 (C.D. Cal. Aug. 22, 2013) (citing *Dukes*, 131 S. Ct. at 2551).

Further, the predominance requirement under Rule 23(b)(3) is far more demanding than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The predominance requirement is not satisfied where common questions are overwhelmed by the "significant questions peculiar

---

[31] *See, e.g., Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012) ("An employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so . . . the employer is not obligated to police meal breaks and to ensure no work thereafter is performed."

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                Case No. 3:21-cv-09978-VC

to several categories of class members, and to individuals within each category." *Id.* at 624. Rather, common questions must predominate. *Id.* "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F. 3d 538, 545 (9th Cir. 2013) (citation and internal quotation marks omitted). Even if there is a "common nucleus of facts" regarding alleged class claims, [i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Institute, Inc.*, 253 F. 3d 1180, 1192 (9th Cir. 2001).

Plaintiffs cannot meet their burden to certify their claims as a class action. As mentioned above, Brinker has more than 100 Chili's locations throughout California, with multiple positions at each location. The Putative Class consists of 1,289 people, employed over nearly a seven-year period at various locations across the state, with varying positions within each facility, all of which have different responsibilities and varying shifts.

Plaintiffs cannot establish that Brinker conducts itself in a common way toward all Putative Class members, or that its policies and practices tend to have a widespread effect of denying meal periods and rest breaks to thousands of current and former employees working in dozens of job classifications, across more than 100 different restaurants, throughout the course of the Putative Class period. If anything, the evidence shows that Brinker's policies are compliant with California law and the reasons for any TM's decision whether to take a rest break or an off-the-clock meal period varies significantly from one location to another, one job classification to another, and even within a single restaurant and single classification, based on a TM's individual choice.

Plaintiffs will be unable to certify a class as there are many variables that make the claims impossible to decide on a class wide basis. Most importantly, Brinker maintains lawful policies and procedures. Therefore, any alleged violations are the result of decisions and/or conduct of individual employees and/or their individual managers. Additionally, a myriad of individualized inquiries will be required to determine the reasons any Putative Class member allegedly worked off-the-clock, was denied the ability to take meal and/or rest breaks or was required to incur out-of-pocket business expenses without reimbursement. All

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

1   these individualized inquiries predominate over any issues common to the Putative Class and make class

2   treatment inappropriate under FRCP Rule 23(b)(3).

3        Additionally, Brinker has affirmative evidence of compliance with California law.  Specifically,

4   Brinker documents each employee's decision to voluntarily "skip" a meal period consistent with the record

5   keeping requirement.  In *Donohue vs. AMN Services, LLC*, the California Supreme Court noted

6   "Employers may use a timekeeping system like Team Time to track meal period violations …" In

7   *Donohue*, the Court noted that the Team Time included a dropdown menu for employees to indicate

8   whether they were provided a compliant meal period ***but chose to work***…" Finally, the Court noted

9   "Team Time would have ensured accurate tracking of meal period violations *if it had simply omitted*

10  *rounding*."  Brinker's timekeeping system has similar features without rounding and like the Team Time

11  system approved by the Court has an electronic system that provides employees with the ability to

12  affirmatively represent that voluntarily chose to work instead of taking a 30 minute off the clock meal

13  break.

14       The attestation data alone largely eviscerates Plaintiffs' ability to point to any "common practice

15  or policy" for class certification purposes.  *See Cirrincione vs.* American *Scissor Lift, Inc.*, 73 Cal. App.

16  5th 619 (2021) ***affirming the trial court's*** <u>***denial of class certification of a meal period class***</u> where the

17  court "determined that individual issues arising from ASL's affirmative defense of waiver and other factors

18  preclude certification.***"***).  As Plaintiffs' meal break claim is predicated on a theory that the attestations

19  forms (skip reports) are false, individualized issues predominate.

20       Similarly, because rest breaks do not require employer mandated record keeping and as rest breaks

21  are also waivable, determining why a rest break was missed would be a highly individualized assessment.

22  Here, given the nature of the industry, particularly with FOH TMs who are highly reluctant to take breaks

23  in order to maximize their tip income, these shift by shift decisions further demonstrate that individualized

24  issues predominate. In short, each of Plaintiffs' claims are subject to individualized issues that will

25  predominate over any common issues making class certification improper under Federal Rule of Civil

26  Procedure 23(b)(3).

27  ///

28  ///

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

**E.     Plaintiffs' Claims for Failure to Reimburse Business Expenses Are Factually Unsupported and Present Highly Individualized Issues**

Plaintiffs allege that they, Putative Class members, and aggrieved employees incurred necessary business-related expenses and costs, including being required to "purchase a phone application used to check their schedules." (SAC, ¶ 94.) Despite Plaintiffs' contention, the use of the HotSchedules application is entirely voluntary and offered for the convenience of the employees. Thus, as an initial matter, Plaintiff have not carried their burden of proving Brinker has a policy or practice that requires the purchase of this application or the use of their personal phones to utilize it.  All of the information relating to employees' schedules is also accessible without cost on iPads and computers in the restaurants as set forth in many of the declarations. Plaintiffs' allegations regarding not being reimbursed for purchasing an "application" present highly individualized claims that will vary from employee to employee, and restaurant to restaurant.  In particular, given that this particular class involves employees with lengthy history with Chili's it is likely that most of the employees who purchased the application did so before the start of the class period. Therefore, those claims cannot be adjudicated on a class-wide basis. Thus, Plaintiffs' expense reimbursement claims are both (1) factually unsupported with any specific evidence; and (2) presents highly individualized questions unique to each Putative Class member that cannot be decided on a class-wide basis.

**F.     Plaintiffs Fails To Prove the Class Representatives Are Adequate.**

Adequacy "requires the class representatives to posses a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation." *See Berger vs. Compaq Computer Corp*, 257 F.3d 475, 482-83 (5th Cir. 2001)[32]. Class certification may properly be denied where "the class representative had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interest of the class against the possibly competing interests of the attorneys." *See Kirkpatrick vs. JC Bradford & Co*., 827 F.2d 718, 727 (11 Cir. 1987)

**1.     Hale Is Not Acting in A Fiduciary Capacity to the Class**

Hale's deposition testimony demonstrates a lack of involvement or knowledge regarding the litigation.  She had extreme difficulty identifying documents which she allegedly reviewed, could provide

---

[32] In addition to a willingness to vigorously protect the interests of the class.

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

no description, gave inconsistent testimony regarding what she had reviewed in any capacity. Some of the notable statements in her deposition were:

- Hale says she "overviewed" the Complaint. (Depo., 12:22-13:1.) But she walks this back later. (Depo., 105:12-21; 106:8-10.)

- Hale saying that she reviewed her declaration the prior Thursday but could not remember how long it was. And drastically thought it was far longer than it actually was suggesting that she had barely looked at the document. (Depo., 26:14-27:6.)

- Hale says that she was aware that Gomez had his depo taken but didn't review his transcript. (Depo., 28:3-9.)

- Hale admits to not reading any other declarations. (Depo., 28:10-21.)

- Hale admits to not knowing Gomez. (Depo., 196:21-24.)

- Hale admits to not knowing what a motion for class certification is. (Depo., 204:4-21.)

- Hale admits to not knowing if her declaration went into the motion for class certification. (Depo., 204:24-205:23.)

- Hale admits she doesn't know what the rest of the class / Chilis does and only can recall instances of things happening to her. (Depo., 219:13-220:7; 225.)

Compendium Ex. 5.

Hale admits to not knowing what other servers did re rest and meal breaks. (Id. Depo., 236:5-238:12.)

In addition to her lack of knowledge or involvement, Hale's fairly dramatic reversal of large portions of her declaration

### 2. Gomez Failure to Disclose Pending Litigation in Bankruptcy disqualifies him as a Class Representative.

At deposition, Gomez acknowledged he  filed for bankruptcy protection during the pendency of this action. See Defendant's **Request for Judicial Notice** filed concurrently herewith, Exs. 1-2. Under the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement case" belong to the bankruptcy estate created at the debtor's filing of a bankruptcy petition. 11 U.S.C. § 541(a)(1). See *Rhita Bercy vs. City of Phoenix*, 103 F.4th 591 (9th Cir. 2024).  "A claim belonging to the debtor at the time of the bankruptcy filing is such a property interest. *See Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is broad, and includes causes of action."). Ordinarily only the bankruptcy trustee, "the representative of the estate" and the real party in interest in a suit on the estate's claims, has "capacity to sue" on the estate's behalf. 11 U.S.C. § 323(a)– (b). The debtor lacks prudential standing to do so. *See Dunmore v. United States*,

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC

358 F.3d 1107, 1112 (9th Cir. 2004)." Additionally, the failure to disclose a claim in the Bankruptcy petition judicially, may act to judicially estop the plaintiff from bringing claims that belong to the bankruptcy estate. See *EEOC v. BNSF Ry.* Co., 902 F.3d 916, 928 n.12 (9th Cir. 2018).  Additionally, since Gomez claim belongs within the bankruptcy estate, the trustee of that estate would be an inappropriate class representative because of potentially conflicting fiduciary duties.  See *Morlan v. Univeral Guar. Life Ins. Co.*, 298 F.3d 609, 619 (7th Cir. 2002).

## G.    CONCLUSION

For all the foregoing reasons, this court should denied plaintiffs motion for class certification in its entirety.

Dated:  August 30, 2024                    JACKSON LEWIS P.C.


By:   /s/ Kevin D. Reese
        Kevin D. Reese
        Geoffrey R. Pittman
        Robert Yang
        Attorneys for Defendants
        BRINKER INTERNATIONAL, INC., BRINKER
        INTERNATIONAL PAYROLL COMPANY, L.P.,
        and BRINKER RESTAURANT CORPORATION

4876-9979-0303, v. 2

Defendants' Memorandum of Points and Authorities in
Opposition to Plaintiffs' Motion for Class Certification                    Case No. 3:21-cv-09978-VC