UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HALE, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>BRINKER INTERNATIONAL, INC., et al.,<br><br>   Defendants. | Case No. 21-cv-09978-VC<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 89 |

  The primary issue in this case is whether the plaintiffs, who used to work at the defendant's restaurants in California, can represent a class of all such workers in their claim that the defendant unlawfully prevented them from taking unpaid 30-minute meal breaks. The answer is no.

  Under California law, if the employer's time records suggest that employees did not receive unpaid meal breaks, this creates a rebuttable presumption that the employer is liable for violating meal break requirements. The employer can then rebut the presumption at trial by proving that employees voluntarily skipped their unpaid meal breaks despite having an opportunity to take them. In this case, the time records suggest that employees typically did not take meal breaks, so it appears that the presumption will apply and the employer will be required to rebut it at trial. At times, the plaintiffs seem to take the view that the mere applicability of the presumption means they're entitled to class certification. That is somewhat understandable, because some courts seem to have approached class certification this way. But it's wrong. Yes, the potential applicability of the presumption will often present a common question. But to

obtain class certification, the named plaintiffs must not merely show that common questions exist; they must show that common questions will predominate at trial. That the presumption will likely apply at trial only begs the far more important question: will the defendant's efforts to rebut the presumption generate common questions that are susceptible to common answers across the class, or will the rebuttal case generate questions that are susceptible to different answers depending on the class member? If the latter, common questions will not predominate, and class certification should be denied.

      Considering all the evidence presented in connection with this class certification motion, the plaintiffs have not met their burden of showing that common issues will predominate on rebuttal. To the contrary, the evidence tends to paint a picture of an industry where servers often won't want to take 30-minute unpaid meal breaks in the middle of their shifts despite having the opportunity to do so, because handing off their tables to someone else for 30 minutes could disrupt service for their customers in a way that jeopardizes tips. In addition, sometimes servers prefer not to take meal breaks because they're not hungry and/or because they don't wish to prolong their shift—particularly since they get no extra pay for staying the extra 30 minutes. To be sure, the plaintiffs have presented evidence suggesting that some workers would have preferred to take meal breaks but were unable to—for example, because the restaurant was too understaffed and too busy. And some workers may well have felt coerced by management to refrain from taking breaks. But based on the totality of the evidence, it's clear that these questions cannot be answered the same way across a class of 1,289 workers at 108 restaurants throughout California.

      Accordingly, class certification is denied for the meal break claim. It is also denied for the plaintiffs' claims based on failure to provide rest breaks and failure to reimburse for expenses.

# I

      The plaintiffs, Amanda Hale and Jesus Gomez, are former Chili's Bar and Grill employees. They have sued Brinker, which owns the restaurants where they worked. They allege

that Brinker violates California labor law by (1) failing to give employees a reasonable opportunity to take unpaid meal breaks, (2) failing to provide rest periods, and (3) refusing to pay for employees' cell phone operating expenses related to their work for Brinker. Hale and Gomez bring their suit as a proposed class action, on behalf of employees at Brinker's 108 Chili's restaurants throughout California.

The plaintiffs assert that Brinker has created a system that denies employees the opportunity to take meal and rest breaks—the restaurants are busy and leanly staffed, the employees are required to ask managers for meal and rest breaks, and management discourages them from taking those breaks. With respect to meal periods in particular, Brinker's time records reveal that there was no recorded break for 96.2% of the 779,422 shifts worked by the proposed class members. Dkt. No. 102-22, Ex. U to Plaintiffs' Compendium, Decl. of James Toney at 3. Rest periods are not recorded at all, and so the time records are not probative, but the plaintiffs make similar arguments (about lean staffing and a coercive environment) in support of their rest period claim.

Hale and Gomez both submitted declarations in support of class certification. Hale worked as a server at a restaurant in Simi Valley, while Gomez worked as a cook at a restaurant in Carson. In addition, the plaintiffs' counsel compiled declarations from fifteen other proposed class members, all Chili's workers from different restaurant locations.

The declarations allege that employees were almost never provided with a 30-minute meal period because the restaurant was busy but too understaffed for employees to take breaks. For example, Hale's declaration says that, even when she punched out for a meal, she still monitored her tables. And she asserts that she frequently could not take a break because there was no one to relieve her of her duties. Dkt. No. 102-6, Ex. E to Plaintiffs' Compendium, Decl. of Amanda Hale. She also testified in a deposition that there were times when she asked for a meal break and was told by a manager that she could not take one because the restaurant was too busy, or that she could not go until "food was ran," i.e., delivered to her tables. *See* Dkt. No. 99-5, Ex. E to Plaintiffs' Compendium of Evidence in Support of Reply, Dep. of Amanda Hale at

3

119:9–11. Gomez's declaration says that, due to lean staffing, there was rarely anyone to cover him, so he frequently was unable to take a meal period. He says that when he was able to take a break, he would have to find a supervisor to ask and would have to wait for his supervisor to arrange for coverage. And he asserts that he was never told he could get extra compensation for missed meal periods. Dkt. No. 102-7, Ex. F to Plaintiffs' Compendium, Decl. of Jesus Gomez. During his deposition, Gomez testified that, because he was not able to take meal breaks, he and other cooks would get so hungry that they would have to "eat[] . . . on the food line as [they were] preparing the food for the other people." Dkt. No. 99-6, Ex. F to Plaintiffs' Compendium of Evidence in Support of Reply, Dep. of Jesus Gomez at 49:7–12. As for rest periods, he declares that he could never take them because of the lack of coverage, the barrier of asking a supervisor to take a break, and the business of the restaurant. Decl. of Jesus Gomez.

Brinker contends that the missed meal periods simply reflect the realities of the restaurant industry—occasionally workers take their unpaid meal breaks, but typically they prefer not to. The company offers over fifty declarations from Chili's workers. Some say there have been times when they did not want to take an unpaid meal period because they did not wish to prolong their shift. Others declare that they do not wish to leave their tables for thirty minutes after building a rapport with the customers at that table, which would jeopardize their tips. *See, e.g.*, Dkt. No. 104-34, Ex. 33 to Defendants' Compendium, Decl. of Brian Michael Carter ("If I have tables in the restaurant that I have built a bond with, losing that presence with them to go on a break can mess up the connection."); Dkt. No. 104-60, Ex. 59 to Defendants' Compendium, Decl. of Veronica Melendez ("I choose not to take a meal break because I would rather work through it and get paid for my time, and not miss out on tips."). One declarant says she usually takes her 30-minute meal periods in her car or the breakroom, but on the shifts when she does not wish to take her break, it's because she isn't hungry and doesn't want to sit idle during an unpaid meal period. Dkt. No. 104-27, Ex. 26 to Defendants' Compendium, Decl. of Jordyn Andersen.

Brinker also submitted declarations from managers. One says that she coordinates break

times at the beginning of the shift. Dkt. No. 104-86, Ex. 85 to Defendants' Compendium, Decl. of Rebecca Kraft. Another says his employees do not like to take their meal breaks, so it is "not [his] practice to force team members to take unpaid meal breaks," but he nevertheless coordinates with his employees for them to take a break if they want one. Dkt. No. 104-83, Ex. 82 to Defendants' Compendium, Decl. of Antonio Elizondo.

      As for the ten-minute rest periods, Brinker's employee declarants also consistently assert that they have the opportunity to take them, and that the reasons for not taking a rest break can vary. For example, one declarant says she coordinated with her manager at the start of her shift to establish when breaks would be taken. Dkt. No. 104-33, Ex. 32 to Defendants' Compendium, Decl. of Monique Carrillo. Some declarants say that they rarely take ten-minute breaks, and that their decisions not to take them are voluntary. *See, e.g.*, Dkt. No. 104-53, Ex. 52 to Defendants' Compendium, Decl. of Estrella Krizo (stating that rest periods were occasionally missed "because I wanted to stay with my tables and not miss out on tips."); Dkt. No. 104-32, Ex. 31 to Defendants' Compendium, Decl. of Elliana Capurro ("I chose to skip my rest breaks usually because I don't care for them, I am in the flow, and I would rather just stay in the flow.").

      With respect to the issue of lean staffing and busy periods, Brinker also contends that this does not preclude employees from taking breaks because business fluctuates throughout the day. In support of this contention, Brinker's expert analyzed customer volume at different restaurants and explained that although there were certain peak hours in the day with high volume, the volume fluctuates throughout the day and varies among restaurants. Dkt. No. 112, Decl. of Robert W. Crandall, 28–36. Brinker thus asserts that its restaurants are not too busy, outside of those peak hours, for its employees to take breaks, regardless of staffing level. Brinker's expert also highlighted differences between front-of-house workers (hosts, servers, bartenders, bussers) and back-of-house workers (cooks, dishwashers): generally, front-of-house workers were scheduled for shorter shifts, while back-of-house workers were scheduled for longer shifts due to the prep and clean-up work that they are responsible for (although there is less time pressure during prep and cleanup portions of the shift than when customers are being served food). *Id.* at

16–18.

When employees clock out at the end of their shift, they are presented with the following attestation regarding meal and rest breaks:

> Brinker provided me paid rest breaks when eligible & a 30-minute meal period before the 5th hour worked & a 2nd one before the 10th hour worked. If I chose not to take a meal period I acknowledge it was my voluntary choice & I was paid for my time. Dkt. No. 104-3, Ex. 2 to Defendants' Compendium.

At one point in the past, although the record is unclear when, an employee who said "no" in response to this prompt was required to wait for a manager to approve that employee's time sheet before they were permitted to clock out and leave. Now, a "no" response just shows up in a weekly report sent to store managers. Brinker asserts that the purpose of notifying store managers that an employee declined the attestation is so that the manager can coach the employee regarding their entitlement to rest and meal periods. The plaintiffs provided evidence that some class members were told by management to say "yes" to the prompt and were worried about reprisals if they said "no." *See* Dkt. No. 99-7, Ex. G to Plaintiffs' Compendium of Evidence in Support of Reply, Dep. of Rachel Barrios at 44:17–21; Dkt. No. 99-6, Dep. of Jesus Gomez at 149:12–14.

Finally, with respect to cell phone usage, the plaintiffs contend that proposed class members used their personal cell phones to communicate with management and co-workers about work, without any reimbursement from Brinker for expenses related to that cell phone usage. In addition, the plaintiffs assert that employees were required to buy and use the HotSchedules app—an app that costs $2.99—on personal cell phones to review shift schedules and request shift changes.

Brinker responds that there is no policy requiring employees to download HotSchedules on their personal phones, and any download of the HotSchedules app was a personal choice by that employee. It offers declarations stating that employees might have downloaded the cell phone app for convenience, but any employee who downloaded the app did not do so because they had been directed to by Brinker. It also says that employees can use iPads at work to check

6

their schedules.

After removal from state court, this Court denied Brinker's motion to compel arbitration as to Hale and Gomez and granted its motion to compel arbitration as to another named plaintiff who had signed a different arbitration agreement. *See* Order Denying Motion to Compel Arbitration, Dkt. No. 22; Order Granting Motion to Compel Arbitration and Granting in Part Motion to Strike Class Allegations, Dkt. No. 66. The order granting the motion to compel arbitration noted that any potential class in this case would be limited to those class members who signed the same agreement as Hale and Gomez. Order Granting Motion to Compel Arbitration and Granting in Part Motion to Strike Class Allegations, Dkt. No. 66.

The plaintiffs have now moved for class certification. The proposed class consists of both front-of-house workers and back-of-house workers. The plaintiffs contend that liability can be determined on a classwide basis because Brinker's system (of staffing restaurants leanly, requiring employees to ask managers for a break, and creating an atmosphere of discouraging people from taking such breaks) applies to everyone. They seek class certification on all three of their claims—for meal period violations, rest period violations, and cell phone expenses. The meal period claim is most complicated; it is discussed at length in Section II. The rest break claim is discussed in Section III, and the cell phone expenses claim is discussed in Section IV.

## II

### A

Some challenging questions arise from the interaction between federal procedural law governing class actions and California substantive law on employee meal breaks. This has generated confusion in the case law, and it has led some federal courts to misapply the Rule 23 standard in cases about meal break violations.

Under California law, an employee is entitled to a 30-minute unpaid meal period for any shift longer than five hours, and a second 30-minute unpaid meal period for any shift longer than ten hours. Cal. Lab. Code § 512(a). But employees are not required by law to take unpaid meal periods; if they prefer to keep working (and keep getting paid), they can do that, so long as the

employer has provided the opportunity in the first instance. *Donohue v. AMN Services, LLC*, 11 Cal. 5th 58, 67 (2021).

Thus, determining whether an employer has satisfied its meal period obligations is highly fact-specific. An employer complies when it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). What it means to have a "reasonable opportunity" to take a meal break will "vary from industry to industry." *Id.* "[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.*

Sometimes, an employer's time records will affect the analysis of whether an employer should be liable for a meal period violation. If there is no meal break reflected in an employee's time records, this might mean there was no opportunity to take a break. But maybe the employee simply didn't want an unpaid meal break, despite the opportunity to take one. In *Donohue*, the California Supreme Court addressed this issue by holding that if the records do not show meal breaks, and if the records do not specify that the employee voluntarily declined to take the meal break, there is a presumption of meal break violations. 11 Cal. 5th at 61, 77. Courts now typically refer to this as "the *Donohue* presumption."

Employers can seek to rebut the *Donohue* presumption by presenting evidence that employees were given the opportunity for a meal break but chose (without coercion) to work instead. 11 Cal. 5th at 77–78. If a reasonable jury could go either way on whether the employer's evidence rebuts the presumption, the case must go to trial. *See id.* at 79–80. The case law is somewhat vague on whether a jury would ever decide on the applicability of the presumption in the first place, or whether it would always be a question the trial judge would answer at summary judgment. The CACI instruction on meal breaks contemplates that the jury would decide this question, which seems right, because there will sometimes be factual disputes about whether the records give rise to the presumption. *See* Judicial Council of California Civil Jury Instruction

2766B; *see also* n.5, *infra*.

It's worth noting that the language in *Donohue* about when and how the presumption applies is somewhat confusing. For example, *Donohue* repeatedly intones that the presumption applies when records "show" "noncompliant meal periods." 11 Cal. 5th at 61, 76, 78. What does this mean? How does a record show a noncompliant meal period? By stating that the employee did not get a meal break even though they wanted one? By noting that an employee was still doing work during their unpaid meal break? By noting that the break was shorter than 30 minutes? With the possible exception of the last example, time records will almost never be so clear, so seems fairly unlikely that they will "show" a "noncompliant meal period."

The better way to understand the presumption (and this is based on other language from *Donohue*) is that it applies if the time records: (1) indicate a potential violation by showing missing, short, or delayed meal periods; (2) are incomplete; or (3) are inaccurate. *See, e.g.*, *id.* at 76. So, as discussed above, a time record might indicate a potential violation if it shows that a meal period lasted for less than 30 minutes. A time record might be incomplete if, for example, it contains no indication that an employee took an unpaid meal period, and also no indication that the employee declined an unpaid meal period that was available to them. In this circumstance, the time record is incomplete because it begs the question whether the employer complied with the statute. And of course, a time record might still be inaccurate, even if it specifies that the employee voluntarily declined an unpaid meal period. If there is some contrary evidence (for example, testimony that the employee didn't actually decline the break, or evidence that they declined but the declination was coerced), then the record will potentially be inaccurate. In such a situation, the jury will need to decide whether the record is accurate. If the jury decides the record is accurate, the employer wins. If the jury decides the record is inaccurate, the presumption will apply and the employer has the burden of proving that the employee did, in fact, voluntarily decline the unpaid break despite a reasonable opportunity to take one. There

9

may be other scenarios, but these seem like the main ones.[1]

When federal courts preside over class actions involving meal break violations under California law, they must apply the substantive law described above. But in deciding whether to certify a class, a federal court must apply federal procedural law—namely, the law of Federal Rule of Civil Procedure 23. As relevant here, this means that the burden is always on the named plaintiff to demonstrate the existence of common questions of law or fact—questions that are susceptible to the same answer for all class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Olean Wholesale Grocery Cooperative v. Bumble Bee Foods LLC*, 31 F.4th 651, 663–65 (9th Cir. 2022). Moreover, even if the named plaintiff can show that common questions exist, they still must show that those questions would predominate at trial over any questions specific to individual class members. *Lytle v. Nutramax Laboratories, Inc*., 114 F.4th 1011, 1024 (9th Cir. 2024). While a named plaintiff is not actually required to prove their case at class certification (and indeed the court should not be deciding any merits questions at class certification), the named plaintiff must demonstrate that they meet Rule 23's requirements by a preponderance of the evidence. *Olean*, 31 F.4th at 664–65.

The upshot is that it will sometimes be very difficult (at least in federal court) to get a California meal break claim certified for class treatment. It's easy to imagine a day when one employee in a given workplace received a reasonable opportunity to take a meal break while another employee in the same workplace did not (say, because of the demands the manager placed on that particular employee, or because things got too busy for a meal break later in the shift). And when you have an employer with multiple workplaces, in different locations, run by different managers, it becomes even easier to imagine variance among employees on the key

---

[1] All this is reflected in the CACI instruction on meal breaks. Although that instruction has its own ambiguities and probably needs a language overhaul, it specifies that the presumption will arise if records are missing, if records show missed meal breaks, if records show that the break was less than 30 minutes, if records show meal breaks taken too late in the shift, or if the records are inaccurate. It then instructs the jury that if the plaintiff proves that the presumption applies, then the burden is on the defendant to prove that the employee voluntarily declined a 30-minute meal break despite having the opportunity to take one. *See generally* Judicial Council of California Civil Jury Instruction 2766B.

question the jury must answer. Absent the implementation of a company-wide practice or policy that uniformly affects the ability of employees to take meal breaks, class certification will be an uphill battle, to say the least.

But what about *Donohue*'s rebuttable presumption based on the failure of the employer's records to reflect compliance with the meal break laws? If the time records suggest that the presumption will apply for the class, is this enough on its own to support class certification? It is not.

Recall that whether the presumption applies, and whether the employer has rebutted the presumption if it does apply, are merits questions. At class certification, the relevant inquiries are: (1) will the answer about whether presumption applies be the same as to the entire class at trial, regardless of what that answer ends up being; and (2) if the presumption ends up applying and the employer needs to try to rebut the presumption, will the evidence considered by the jury in connection with rebuttal allow for a common answer on liability with respect to all the class members, regardless of what that answer ends up being? *See Dukes*, 564 U.S. at 350. Sometimes, the first question will be a common question—the employer's records will look the same for all employees, and there will be questions about whether the records show compliance with meal period requirements. But common questions must predominate, and most of the important work at trial comes after the decision about whether the presumption applies. If the evidence suggests that the employer's effort to rebut the presumption—and the plaintiff's efforts to undermine that rebuttal—will affect all class members the same way, such that the jury could find either that the presumption is rebutted as to all or none of the class members, then yes, common questions will likely predominate. In other words, if the plaintiff's theory is that meal breaks are denied pursuant to a companywide policy or practice, and the parties would use classwide evidence to support or undermine the theory, then class certification will likely be warranted. But if the evidence that is reasonably expected to be presented at trial would likely lead to conflicting

11

conclusions about different class members, then common questions will not predominate.[2]

Here's another way to think about it: at trial, regardless of whether the presumption applies, the evidence the jury must consider will not change in any material way. Whoever has the burden, the key legal question at trial is the same: did the employer deny the class members a reasonable opportunity for unpaid meal breaks, or did the class members voluntarily decline unpaid meal breaks despite the opportunity to take them? At class certification, regardless of who will end up having the burden at trial, the question is whether the evidence on this issue will apply across the class or vary significantly among class members. And in federal court, it's the named plaintiff who has the burden at class certification to show that the evidence will apply across the class.

As mentioned earlier, there has been confusion in the case law about this. Some federal district court rulings seem to assume that courts should actually make the decision, at the class certification stage, about whether the presumption applies. These rulings also seem to suggest that if the presumption does apply, class certification will likely be warranted. *See Chacon v. Express Fashion Operations LLC*, No. 19-CV-00564, 2021 WL 4595772, at *8 (C.D. Cal. June 14, 2021) (quoting *Donohue*, 11 Cal. 5th at 74 (citing *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring))); *see also Garcia v. Central Coast Restaurants, Inc.*, No. 18-CV-02370, 2022 WL 657972, at *6 (N.D. Cal. Mar. 4, 2022) (granting motion for class certification because the presumption applied and because the employer did not adequately rebut it at the class certification stage). It's possible that these courts were ultimately right to certify classes based on the records presented in those cases, but they were wrong to do so based on findings that the presumption applies and/or that the employer failed to present enough evidence to rebut it. Those are merits questions. The plaintiffs still had the burden, at class certification, to prove that the

---

[2] To be clear, an employer cannot simply intone that its rebuttal evidence will be individualized. If the named plaintiff presents sufficient evidence that the applicability of the presumption can be answered the same way across the class, and if the named plaintiff presents sufficient evidence that the rebuttal question can be answered the same way across the class, then class certification will likely be appropriate.

employers' rebuttal cases would not cause individual issues to predominate at trial.

The muddled state of the case law is perhaps understandable given various California court rulings. For example, in *Donohue* itself, the California Supreme Court made a stray comment that the presumption "applies" at the class certification stage. 11 Cal. 5th at 76. And in *Estrada v. Royalty Carpet Mills, Inc*., the California Court of Appeal seemed to hold that, once the court finds at the class certification stage that the presumption applies, the burden is on the employer to prove that individual issues predominate. 76 Cal. App. 5th 685, 723–24 (2022), *aff'd*, 15 Cal. 5th 582 (2024). But whatever role the presumption is supposed to play at class certification in state court under state law, that can't displace the Rule 23 requirement that, in federal court, the named plaintiff bears the burden of proving that common questions predominate, even while the answer to those questions must await summary judgment or trial. *See Nash v. Horizon Freight Systems, Inc*., No. 19-CV-01883, 2020 WL 7640878, at *2 n.2 (N.D. Cal. Dec. 23, 2020) (noting that the law on class certification in California state court "is not strictly controlling on the question of whether a class should be certified in federal court under Rule 23"). And so in federal court, the named plaintiff must show that the rebuttal evidence the jury is likely to consider at trial would not create too many individualized inquiries.[3]

**B**

Applying this framework to the current case, class certification is not warranted for the meal break claim. To be sure, there is a common question: does the *Donohue* presumption apply to the class members' meal period claims, given the percentage of shifts where the time records do not reflect an unpaid meal break (and without any indication that the employee voluntarily chose to skip the break)? That question can readily be answered at trial the same way for each

---

[3] In any event, it's not clear that the California Supreme Court really meant to convey that the presumption "applies" at the class certification stage in the sense that trial courts should be actually deciding whether the presumption will apply. It could be that the Court meant only that the presumption is "relevant" at the class certification stage, in the sense that if the plaintiff shows that the applicability of the presumption is a common question for the class, that means the plaintiff has satisfied the commonality requirement.

13

class member. And Brinker appears to concede that the answer will be yes.[4] But based on the record developed in connection with this class certification motion, it seems clear that the rebuttal portion of the trial will be dominated by individual liability questions that are specific to particular restaurants, particular categories of workers, and particular workers within each category. Although the plaintiffs repeatedly utter words like "policy," "coercion," and "culture," they have not presented evidence of a system that affected the opportunity of class members to take meal breaks in nearly the same way. If anything, the evidence leans the opposite direction. It paints the picture of a unique industry where business ebbs and flows, often in unpredictable ways. An industry where some workers wish to take unpaid meal breaks, but many would rather stay on the clock so that their customers don't experience a disruption in service that could affect tips. An industry where workers may be especially likely to want to go home half an hour early, rather than extending the length of their shift for no extra pay. This means that the answer to the question of whether employees were denied the opportunity to take meal breaks as opposed to voluntarily relinquishing them is likely to be different depending on the class member—and indeed the particular shift—at issue.

---

[4] There's a caveat worth noting. Brinker has time records, and it also has records of employees attesting that they declined their breaks. There's an argument that all those records should be considered together when deciding if the presumption applies. Again, on this Court's understanding, there are three ways the presumption could apply: (1) the records show a potential violation; (2) the records are incomplete; or (3) the records are inaccurate. Considering the time sheets and the attestations together, and assuming that the attestation is worded in a way that it suffices to reflect voluntariness, the records would not suggest failure to comply with the meal break requirement so long as an employee answered "yes" to the prompt. The records would seemingly suggest compliance—that some minority of employees took meal breaks, and the others voluntarily declined to do so. Nor, on this understanding, would the records be incomplete, because they would reflect not only an absence of meal breaks but a compliant reason for the absence. Of course, the records could be inaccurate in the sense that they don't reflect what happened on the ground (if, for example, employees were pressured into responding in the affirmative to the attestation). Or maybe there would be an argument that the attestation is not clearly worded enough to reflect voluntariness. *See, e.g.*, *Robbins v. Phillips 66 Co.*, No. 18-CV-00292, 2024 WL 3550902, at *5 (N.D. Cal. June 14, 2024)). The plaintiffs could present evidence of that, and if the jury accepted it, the presumption would apply. Although this may be the most logical way to think about the presumption, Brinker has conceded its applicability in these proceedings, based on Brinker's understanding that California law would not allow the attestation records to be included among the records that could be reviewed in determining whether the presumption applies.

This conclusion is supported by Brinker's evidence that some restaurants are slower than others, that any given restaurant has busy days and slow days, that even within a given day there will be busy periods and slow periods, and that it is sometimes hard to predict when the rush will come. What this suggests is that there are probably times when it's unrealistic for an employee to take a meal break, and there are other times when it makes sense to do so. There may well be days when a restaurant is staffed too leanly to take meal breaks given how much business is coming in, but there will be other days when this is not the case. The evidence, in other words, cuts against the plaintiffs' assertion that restaurants are consistently too busy and staffed too leanly, such that this part of the analysis will be the same across the class.

The plaintiffs lean heavily on their evidence that employees must arrange their breaks with managers, as if this is somehow inherently coercive. But given the evidence of ebbs and flows of business at Chili's restaurants, not to mention the relative unpredictability of those ebbs and flows, requiring employees to coordinate with managers about breaks is simple common sense. It's difficult to imagine, in an industry like this (compared to, say, an office job), that things could function properly if employees took meal breaks whenever they wanted, or even at specific, preset times each shift. What this means for class certification is that, yes, one could imagine asking the jury whether requiring employees to ask managers for breaks is inherently coercive, but the answer is so obviously no that it wouldn't advance the ball at trial—the plaintiffs would need far more to establish liability on a classwide basis at trial. Relatedly, even if one were to think that requiring an employee to arrange a break with a manager could, depending on the context, potentially be coercive, certainly not all employees will feel coerced by having to arrange breaks with their managers. So to the extent that the potential effect of having to arrange breaks with managers is relevant at all, it cuts against the notion that liability can be determined on a classwide basis.

This notion is further undermined by the totality of the testimony from Chili's workers submitted by both sides. The plaintiffs submit testimony from 17 workers that tends to support their contention that lean staffing, busy restaurants, and managerial hostility to breaks denies

15

employees the reasonable opportunity to take them. But Brinker offers testimony from 51 workers that quite plausibly presents a different story: I'm a server, I rely primarily on tips, and the last thing I want to do is disappear and hand off my tables for half an hour while I'm in the middle of providing good service to my customers. So even though I have opportunities to take meal breaks, I'd rather eat while watching my tables or after my shift, especially since I don't even get paid for that half-hour meal break. And I might have different preferences regarding meal breaks on different days, depending on the circumstances.

To be sure, courts should be very, very careful before relying too much on "happy camper" declarations from existing employees, because employees might feel pressure to toe the company line. *See, e.g.*, *Nash*, 2020 WL 7640878, at *1–2. Further, the position the employee takes in the declaration might be based on false information provided by the employer. *See id.* at *2; *see also James v. Uber Technologies, Inc.*, 338 F.R.D. 123, 133 n.3 (N.D. Cal. 2021). But the declarations submitted by Brinker are more plausible and reliable than your typical "happy camper" declaration. They are consistent with the other evidence in this record about how restaurants operate, and they are consistent with common sense. Indeed, the declarations submitted by the plaintiffs raise more credibility concerns than those submitted by Brinker. For example, Hale testified on the one hand that she was denied meal breaks, but on the other hand that when she asked for breaks, managers responded that she couldn't take one until "the food was ran." It's unclear how telling an employee that they need to wait a bit for their meal break—at least in the restaurant context—would constitute a violation (unless the break comes after the fifth hour of work). And as Brinker's opposition shows, Hale's testimony is unreliable and contradictory in a number of other ways (even allowing for the fact that some of Brinker's criticisms are nitpicky). Dkt. No. 94, Opp. at 7–10. In any event, there's no need to decide whose declarations are more credible; the point is that Brinker's declarations (considered in conjunction with all the other evidence in this record) are plausible enough to significantly undercut the plaintiffs' assertion that workers were, across the class, systematically denied a reasonable opportunity to take breaks. What seems most likely is that some workers had an opportunity to

take unpaid meal breaks but freely chose to work through them. This means that the answer to the question whether Brinker violated the meal break rules will depend on the worker in question, and even the individual shift in question.[5]

The plaintiffs repeatedly invoke the testimony of Brinker's Rule 30(b)(6) witness for the proposition that Brinker has a "culture" of discouraging employees from taking meal breaks. That's not what the witness said, nor is it what she implied. To the contrary, this witness said that an employee wanting to take a 30-minute unpaid meal break is "such a rare occurrence in the restaurant industry," including at Chili's, but that when employees do request such a break, "the managers find a way to make it happen." Dkt. No. 102-5, Dep. of Catherine Fredericks at 53:1–54:2. It was in this context that the witness referred to a "culture" at Chili's—it was a reference to an alleged culture, at Chili's and other restaurants, of preferring not to take meal breaks so as to protect tips and spend unpaid time at home rather than in the restaurant. If anything, this testimony bolsters Brinker's presentation on how its restaurants work and how its employees approach meal breaks. It certainly doesn't help the plaintiffs with their "culture of coercion" narrative, and thus it doesn't help them show that liability can be determined on a classwide basis.

The final piece of evidence relevant to whether common issues will predominate at trial is the attestation. The plaintiffs assert that the attestation, along with the evidence surrounding it, suggests that Brinker is coercing its employees into certifying that they voluntarily waived their breaks when they actually lacked a reasonable opportunity to take them. The plaintiffs also take issue with the language of the attestation, suggesting that the wording is insufficient to establish that employees' decisions to skip their breaks were truly voluntary. Brinker, for its part, seems to think that the attestation inoculates it from liability on a blanket basis, allowing it to rebut the

---

[5] Another issue the plaintiffs do not grapple with is that there appear to be categorical differences between the experience of the front-of-house worker (hosts, servers, bussers, bartenders) and the back-of-house workers (cooks, dishwashers). It appears from the declarations that scheduling for these two categories of worker is quite different, with people potentially getting opportunities for meal breaks at different times. But Brinker doesn't press this issue, so there's no need to explore it further.

presumption created by the time records. But in light of all the evidence discussed above, it's unlikely that the attestation would be dispositive one way or the other. There is at least some evidence that some employees felt coerced to attest that they voluntarily relinquished their breaks. But in light of Brinker's evidence, it's likely that at least some employees did not. So additional, individualized questions would need to be answered about particular restaurants, workers, and shifts regarding the effect of the attestation.

All of this is enough to conclude that the plaintiffs have failed to prove that common questions relating to the meal break claim will predominate at trial. But that conclusion is underscored by the proposed verdict form submitted by the plaintiffs, per this Court's requirement that plaintiffs seeking class certification must submit a proposed verdict form to help assess whether a class action trial would be manageable. The first substantive question (Question 2) asks whether Brinker's records show any missed meal periods for the class members. Then Question 3 asks the jury to identify how many meal periods the records show as missed by class members. These questions appear designed to establish the presumption, and to identify the shifts for which Brinker must rebut the presumption. (As the discussion in Section II.A shows, these questions oversimplify the *Donohue* presumption, but let's put that to the side.) Then Question 4 asks, for any meal period that the records show as missed, "did Brinker prove [it] provided a meal period that complies with the law?" Dkt. No. 110, Proposed Special Verdict Form. To phrase the question this way is to pretty much concede that individualized questions will predominate. The plaintiffs, with their proposed verdict form, seem to be proposing one giant trial that will adjudicate every shift ever worked by any Chili's employee to determine which shifts involved the denial of a reasonable opportunity to take a meal break. That's not how class action trials work.

Of course, the plaintiffs could have done a better job of drafting a verdict form that fits their theory of the case. For example, they could have asked, "Do you find: (1) that Brinker denied the class a reasonable opportunity to take unpaid meal breaks; or (2) that the class voluntarily chose not to take unpaid meal breaks despite having a reasonable opportunity to do

18

so?" But that formulation would similarly have underscored the mismatch between the plaintiffs' theory of the case and the actual evidence submitted in connection with class certification, since it's so unlikely, given that evidence, that those questions could be answered on a classwide basis.

### III

California law also provides employees who work more than a three-and-a-half hour shift a ten-minute rest period for every four-hour block (or a major portion thereof) of that shift. IWC Wage Order No. 5, § 12(A). Similar to the law on meal periods, employers are required to provide a reasonable opportunity for a rest period, but an employee may choose to work through it. The *Donohue* presumption does not apply to rest periods because employers have no obligation to record rest breaks. *Garcia*, 2022 WL 657972, at *7.

The plaintiffs' rest period class cannot be certified because the plaintiffs have not demonstrated that common questions predominate with respect to Brinker's liability. As noted above, the plaintiffs have not carried their burden of establishing that Brinker had a uniform policy that tended to deny its employees the ability to take breaks. And because of that, Brinker's liability for each missed rest period is likely to hinge on individual questions.

### IV

"[W]hen employees must use their personal cell phones for work-related calls, [California] Labor Code section 2802 requires the employer to reimburse them." *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1140 (2014) (footnote omitted). "If the use of the personal cell phone is mandatory, then reimbursement is always required, regardless of whether the employee would have incurred cell phone expenses absent the job." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1078 (9th Cir. 2020). Reimbursement may take the form of a reasonable percentage of the employee's cell phone bill. *Cochran*, 228 Cal. App. 4th at 1144. To establish liability, an employee "need only show that he or she was required to use a personal cell phone to make work-related calls, and he or she was not reimbursed." *Id.* at 1145.

The plaintiffs have failed to provide evidence sufficient to conclude that common questions exist as to whether Brinker violated section 2802. For the charges related to the

HotSchedules app, the plaintiffs have not established that there was a Brinker policy requiring employees to purchase the app. For example, HotSchedules was also accessible via website. Several employees declared that they used Brinker's Wi-Fi to access the HotSchedules website on their phones. *See, e.g.*, Dkt. No. 104-70, Ex. 69 to Defendants' Compendium, Decl. of Sabrina Sauers. And Brinker produced evidence that employees were permitted to use iPads at the restaurant to check schedules and request shift changes. Dkt. No. 104-71, Ex. 70 to Defendants' Compendium, Decl. of Adan Serrano. The same goes for the allegations that the proposed class members used their personal cell phones to make schedule change arrangements: the plaintiffs have failed to allege that Brinker had a uniform policy or practice requiring that. Thus, it is likely that Brinker's liability—to the extent there is liability—would depend on the actions of individual managers and the choices of individual employees.

\*   \*   \*

The motion for class certification is denied. Denial is without leave to file a renewed motion, because the evidence is so strong that common issues will not predominate.

**IT IS SO ORDERED.**

Dated: February 6, 2025

VINCE CHHABRIA
United States District Judge