Kevin D. Reese (State Bar No. 172992)
Andrew J. Mailhot (State Bar No. 238956)
Geoffrey R. Pittman (State Bar No. 253876)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail:  Kevin.Reese@jacksonlewis.com
E-mail:  Andrew.Mailhot@jacksonlewis.com
E-mail:  Geoffrey.Pittman@jacksonlewis.com

Attorneys for Defendants
BRINKER INTERNATIONAL, INC., BRINKER
INTERNATIONAL PAYROLL COMPANY, L.P., and
BRINKER RESTAURANT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HALE and JESUS GOMEZ, on behalf of themselves and all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BRINKER INTERNATIONAL, INC., a Delaware corporation; BRINKER INTERNATIONAL PAYROLL COMPANY, L.P., a Delaware limited partnership; BRINKER RESTAURANT CORPORATION, a Virginia corporation; and DOES 1 through 50, inclusive,<br>Defendants. | Case No. 3:21-cv-09978-VC<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Date:   October 2, 2025**<br>**Time:   10:00 a.m.**<br>**Dept.   Courtroom 4**<br>**Judge: Hon. Vince Chhabria**<br><br>Complaint Filed:    11/18/2021<br>Removal Filed:     12/23/2021<br>Trial Date:        12/8/2025 |

TO PLAINTIFFS AMANDA HALE AND JESUS GOMEZ (collectively "Plaintiffs"), AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on October 2, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the above-captioned Court, located at 450 Golden Gate Avenue,17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants BRINKER INTERNATIONAL, INC., BRINKER INTERNATIONAL PAYROL COMPANY, L.P., and BRINKER RESTAURANT CORPORATION (collectively "Defendants") will, and hereby do, move this Court for summary judgment in their favor and against Plaintiffs on the operative Second Amended Complaint.

This Motion is made pursuant to California Code of Civil Procedure Section 56 on the grounds that there is not triable issue of material fact such that Defendants are entitled to judgment as a matter of law, as to the following claims and/or issues:

1. Defendants Brinker International, Inc. ("BII") and Brinker Restaurant Corporation ("BRC") should be dismissed from this action because neither entity was the "employer" of Plaintiffs as defined by relevant law.  Plaintiffs were instead solely employed by Brinker International Payroll Company, L.P. ("BIPC").

2. Defendants are entitled to judgment as a matter of law as to all of Plaintiff Gomez's claims.  Plaintiff Gomez failed to timely respond to Defendants' Requests for Admissions (including failing to timely object to the method of service of Defendants' discovery requests). Gomez likewise failed to move the Court for relief from his default.  Accordingly, Defendants' Requests are deemed admitted and conclusively established, the result of which is that Plaintiff has admitted that Defendants are not liable on any of the claims asserted by Gomez in the SAC.

3. Plaintiff Hale's First Cause of Action (Failure to Provide Meal Breaks) and Second Cause of Action (Failure to Provide Rest Breaks) fail as a matter of law.  The undisputed facts show that Defendants have lawful meal and rest break policies, that Hale was never instructed or pressured to forego a break, or instructed or pressured to execute an attestation that she voluntarily elected not to take a break, and that Hale overwhelmingly attested that she voluntarily elected not to take her breaks.

4. Plaintiffs' Fourth Cause of Action (Failure to Indemnify) fails as a matter of law because: (a) there is no evidence either Plaintiff was required to pay for the HotSchedule app within the statutory period; and (b) Plaintiffs' personal cell phone use for purposes of accessing the HotSchedule app was not a "necessary" business expense within the meaning of California Labor Code Section 2802.

5. Numerous demands for attorneys' fees in the SAC are improper, including the demands included in Plaintiffs' meal break, rest break, indemnification, and Unfair Competition Law claims.

6. Numerous demands for prejudgment interest under Labor Code § 281.6 are improper, including those included in Plaintiffs' meal break, rest break, and UCL claims.

Defendants' Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Kevin Reese ("Reese Decl.") and attachments thereto, and all other materials already on file in this matter in the Court's ECF Docketing system.

Dated: August 28, 2025                                JACKSON LEWIS P.C.


By:   /s/ Kevin D. Reese
                                                Kevin D. Reese
                                                Andrew J. Mailhot
                                                Geoffrey R. Pittman
                                                Attorneys for Defendants
                                                BRINKER INTERNATIONAL, INC.,
                                                BRINKER INTERNATIONAL PAYROLL
                                                COMPANY, L.P., and BRINKER
                                                RESTAURANT CORPORATION

4932-0729-7379, v. 3

# TABLE OF CONTENTS

Page

I.    STATEMENT OF ISSUES TO BE DECIDED ....................................................................1

II.   RELEVANT UNDISPUTED FACTS ..............................................................................2

    A.    Issue 1: Plaintiffs' Claims should be Dismissed as to Defendant's BII and BRC Because Neither BII nor BRC Employed Plaintiffs .................................................2

    B.    Issue 2: Gomez's Failure to Timely Respond to RFAs is Fatal to Each of His Causes of Action. .........................................................................................................3

    C.    Issue 3: Hale's Deposition Testimony Undermines Her Meal and Rest Break Claims ...........................................................................................................................5

    D.    Issue 4: The Undisputed Record Refutes Plaintiffs' 2802 Indemnification Claim .............9

    E.    Issues 5 and 6: Neither Attorneys' Fees Nor Prejudgment Interest Are Available on Various of Plaintiffs' Claims. .....................................................................................11

III.  ARGUMENT .................................................................................................................11

    A.    Legal Standard ..............................................................................................................11

    B.    Defendants Are Entitled to Summary Judgment on the Claims and/or Issues Articulated Below ..........................................................................................................11

        1.    ISSUE ONE: Defendants BII and BRC Are Entitled to Dismissal Because They Were Not Plaintiffs' Employer ...........................................................11

        2.    ISSUE TWO: All Causes of Action Brought by Plaintiff Gomez Are Subject to Dismissal Due to His Failure to Timely Deny or Object to Defendants' Requests For Admissions. ................................................................13

        3.    ISSUE THREE: Defendants Are Entitled to Judgment as a Matter of Law as to Plaintiff Hale's First Cause of Action (Meal Break Violations) and Second Cause of Action (Rest Break Violations)....................................................14

        4.    ISSUE FOUR: Plaintiffs' Expense Reimbursement Claim Fails as a Matter of Law .......................................................................................................16

5.    ISSUE FIVE: Attorneys' Fees Are Not Recoverable on Several of

Plaintiffs' Claims ...................................................................................19

a.    Meal and Rest Breaks ................................................................19

b.    Indemnification Claim ...............................................................20

c.    UCL Claim.................................................................................20

6.    ISSUE SIX: Prejudgment Interest under Labor Code Section 218.6 is Not

Available on Several of Plaintiffs' Claims. ............................................21

IV.    CONCLUSION.......................................................................................................22

MPA ISO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Anderson v. Liberty Lobby, Inc.*,
5
    477 U.S. 242 (1986)........................................................................................................11

6

*In re Autozone, Inc.*,
    2016 U.S. Dist. LEXIS 105746 ......................................................................................21

7

*Barajas v. Carriage Servs., Inc.*,
8
    No. (N.D. Cal. Dec. 9, 2019) 19-CV-02035-EMC, 2019 WL 6699737................................12

9

*Coleman v. Quaker Oats Co.*,
10
    232 F. 3d 1271 (9th Cir. 2000)........................................................................................17

11

*Delodder v. Aerotek, Inc.*,
    2009 U.S. Dist. LEXIS 109256 (C.D. Cal. Nov. 9, 2009)......................................................20

12

*Drumm v. Morningstar, Inc.*,
13
    695 F. Supp. 2d 1014 ......................................................................................................21

14

*Dugan v. Ashley Furniture Indus., Inc.* (C.D. Cal. Nov. 29, 2016), 2016 U.S. Dist. LEXSI
15
    189011......................................................................................................................17

16

*Milligan v. American Airlines, Inc.*,
    327 Fed. Appx. 694 (9th Cir. Apr. 30, 2009) ....................................................................21

17

*Pyara v. Sysco Corp.*,
18
    No. 2:15-cv-01208-JAM-KJN, 2017 U.S. Dist. LEXIS 34164 (E.D. Cal. Mar. 9,
19
    2017) ..........................................................................................................................17

20

*Reyna v. WestRock Co.*,
    No. 20-CV-01666-BLF, 2020 WL 5074390 (N.D. Cal. Aug. 24, 2020)................................12

21

*Richards v. Ernst & Young*
22
    LLP, 2010 U.S. Dist. LEXIS 16366 (Feb. 24, 2010)..............................................................20

23

*Salazar v. McDonald's Corp.* (9th Cir. 2019)
24
    944 F.3d 1024 ................................................................................................................12

25

*Taylor v. Waddell & Reed Inc.* (S.D. Cal. Feb. 1, 2013)
    09-CV- 02909 AJB WVG, 2013 WL 435907 ......................................................................12

26

*Thuy Van v. Language Line, LLC*,
27
    2016 U.S. Dist. LEXIS 130753 (N.D. Cal. Sept. 23, 2016) ..............................................19, 20

28

**California Cases**

*Braude v. Auto. Club of S. Cal.*,
    178 Cal. App. 3d 994 (1986) .................................................................................20

*Brinker v. Superior Court (Hohnbaum)*,
    53 Cal. 4th 1004 (2012) ...........................................................................6, 8, 14

*Cassady v. Morgan, Lewis & Bockius LLP*,
    145 Cal. App. 4th 220 (2006)................................................................................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999).........................................................................................20

*Cirrincione v. American Scissor Lift, Inc.*,
    73 Cal. App. 5h 619, 639 (2021) .........................................................................15

*Cochran v. Schwan's Home Service, Inc.*,
    228 Cal. App. 4th 1137 (2014).............................................................................17

*Donohue v. AMN Services, LLC* (2011) 11 Cal. 5th 58 (2021) .......................6, 8, 14, 15

*Futrell v. Payday Cal., Inc.* (2010)
    190 Cal.App.4th 1419 ...........................................................................................12

*Kirby v. Immoos Fire Protection, Inc.*,
    53 Cal. 4th 1244 ...................................................................................................19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .......................................................................................20

*Martinez v. Combs* (2010)
    49 Cal. 4th 35 ...........................................................................................3, 12, 13

*Naranjo v. Spectrum Security Services, Inc.*,
    13 Cal. 5th 93 .......................................................................................................21

*Press v. Lucky Stores, Inc.*,
    34 Cal. 3d 311 (1983) ..........................................................................................19

*Rocha v. U-Haul Co. of California*,
    88 Cal. App. 5th 65 (2023)......................................................................................4

*Rodriguez v. Lawrence Equipment, Inc.*,
    106 Cal. App. 5th 645 (2024) ..................................................................................4

*Save El Toro Assn. v. Days*,
    98 Cal. App. 3d 544 (1979) ..................................................................................20

*Sotelo v. MediaNews Group, Inc.* (2012)
    207 Cal.App.4th 639 .............................................................................................12

*Woodland Hills Residents Assn., Inc. v. City Council*,
   23 Cal. 3d 917 (1979) ...........................................................................................20

**Federal Statutes**

Fed. R. Civ. P. 56(a) ...............................................................................................11

Fed. R. Civ. Proc. 56(g) ..........................................................................................19

Fed. Rules Civ. Proc. Rule 36(a)(3) .....................................................................3, 13

FRCP 36(b) ...............................................................................................3, 5, 13, 14

**California Statutes**

Cal. Bus. & Prof. Code
   § 17200 *et seq.* ..............................................................................................12, 13

Cal. Gov. Code
   § 12928...............................................................................................................12

California Labor Code
   §§ 201, 203.....................................................................................................11, 12
   § 226(a) ................................................................................................................4
   § 512..................................................................................................................19
   §§ 202, 204, 218.5, 226, 2698 *et seq.*, 510, 1182.12, 1194.2, and 1197..................12
   § 218.6...........................................................................................................12, 21
   § 226.7.......................................................................................................12, 19, 21
   § 1102.5...............................................................................................................4
   § 1194............................................................................................................12, 19
   § 2802.........................................................................................1, 9, 11, 16, 17

California Code of Civil Procedure
   § 1021.5.........................................................................................................19, 20

**Other Authorities**

CACI 2750 .............................................................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF ISSUES TO BE DECIDED

Defendants Brinker International, Inc. ("BII"), Brinker International Payroll Company, L.P. ("BIPC"), and Brinker Restaurant Corporation ("BRC") (collectively "Defendants") bring the following Motion for Summary Judgment to resolve various matters for which there is no dispute of material fact such that Defendants are entitled to judgment as a matter of law.  Defendants seek resolution of the following questions, for which they contend no dispute of material fact exists:

**Issue 1:** Should Defendants Brinker International, Inc. ("BII") and Brinker Restaurant Corporation ("BRC") be dismissed from this action because they were not Plaintiffs' employers and are therefore not liable under any of the Causes of Action alleged in the operative Second Amended Complaint ("SAC")?

**Issue 2:** By virtue of Plaintiff Jesus Gomez's failure to timely respond to or object to Defendants' Requests for Admissions ("RFA"), were the matters therein deemed admitted and conclusively established such that Defendants are entitled to judgment as a matter of law on all claims raised by Gomez in the operative Second Amended Complaint ("SAC")?

**Issue 3:** Are Defendants entitled to judgment in their favor and against Plaintiff Amanda Hale on her First and Second Causes of Action (for meal and rest break violations) as alleged in the SAC, by virtue of the existence of a compliant meal and rest break policy, coupled with Hale's various admissions that she was never instructed or pressured to forego a break, was never instructed or pressured to execute an attestation that she had voluntarily elected not to take a break, and the evidence that she overwhelmingly attested to her voluntary election to skip her breaks?

**Issue 4:** Are Defendants entitled to judgment in their favor and against Plaintiffs as to the Fourth Cause of Action in the SAC (indemnification of necessary business expenses) given that neither Plaintiff has produced evidence of purchasing the HotSchedules cell phone application within the statutory period, and given Plaintiffs' admissions that other methods for accessing their schedules were available in addition to the cell phone application, meaning it was not "necessary" within the meaning of Labor Code Section 2802?

**Issue 5:** Are Defendants entitled to judgment in their favor as to Plaintiffs' claims for attorneys' fees on the SAC's First (meal break), Second (rest break), Fourth (indemnification) and Seventh (Unfair

Competition) causes of action, given that attorneys' fees are not available under the statutes and/or doctrines referenced in those causes of action?

**Issue 6:** Are Defendants entitled to judgment in their favor as to Plaintiffs' claims for prejudgment interest on the SAC's First (meal break), Second (rest break), and Seventh (unfair competition) causes of action, given that prejudgment interest is not available under any statute or doctrine referenced in those causes of action?

## II. RELEVANT UNDISPUTED FACTS[1]

The operative Second Amended Complaint in this action – brought by former Chili's Restaurant employees Amanda Hale (Simi Valley Chili's) and Jesus Gomez (Rancho Dominguez Chili's) (collectively "Plaintiffs") – raises numerous wage and hour causes of action against Defendants,[2] including (1) failure to provide meal breaks, (2) failure to provide rest breaks, (3) failure to pay hourly wages, (4) failure to indemnify, (5) failure to provide accurate wage statements, (6) failure to timely pay final wages, (7) Unfair Competition, and (8) PAGA. *See* ECF No. 61 (Second Amended Complaint).) Although these causes of action were initially brought on a putative class basis, following the Court's February 6, 2025, order denying Plaintiffs' motion for class certification (ECF No. 125), Plaintiffs' claims are now proceeding solely on an individual basis (with the exception of Plaintiff's PAGA claim). As articulated herein, the undisputed facts demonstrate that Defendants are entitled to judgment as a matter of law as to each of the following claims or issues:

### A. Issue 1: Plaintiffs' Claims should be Dismissed as to Defendant's BII and BRC Because Neither BII nor BRC Employed Plaintiffs

All causes of action alleged against BII and BRC are subject to dismissal because neither of those entities employed Plaintiffs. Rather, Plaintiffs were employed solely by BIPC. The entity identified as

---

[1] The accompanying Declaration of Kevin Reese ("Reese Decl.") includes reference to all evidence in support of this Motion which has not already been made part of the Court's electronic record. Where the evidence is already part of the Court's record in this matter – in particular in connection with the parties' briefing on Plaintiffs' Motion for Class Certification (*see, e.g.,* ECF Nos. 103, 104 [Defendants' Opposition to Class Cert and Compendium of Evidence thereto]) – this motion includes direct reference to the appropriate ECF Number. Documents not yet made part of the Court's record are included as exhibits to the accompanying Reese Decl.

[2] At all relevant times, Plaintiffs were solely employed by Brinker International Payroll Company, LP. ("BIPC"). Any references to "Defendants" or to "Brinker" collectively in this motion are for ease of use, and are not an admission of any employment relationship between Plaintiffs and any entity other than Brinker International Payroll Company, L.P. (*See* ECF No. 103 at n. 1.)

Plaintiffs' employer on their W-2s during the relevant time period is BIPC, creating a rebuttable presumption that BIPC was their employer. Reese Decl. ¶10, Exhs. 6 and 7 (Redacted 2020 W-2s for Hale and Gomez, respectively). BIPC is also the employer listed on Plaintiffs' Wage Statements. Reese Decl. ¶11, Exhs. 8 and 9 (Sample Redacted Wage Statements for Hale and Gomez, respectively).

Plaintiffs cannot rebut the presumption that their employer was BIPC or otherwise establish the existence of an employment relationship between themselves and BII/BRC, because there is no evidence that either BII or BRC (a) exercised control over their wages, hours, or working conditions; (b) suffered or permitted them to work; or (c) engaged them so as to create a common law employment relationship. *See Martinez v. Combs* (2010) 49 Cal. 4th 35, 64. Rather, the only evidence on this issue shows that those entities did not employ Plaintiffs. *See* Reese Decl. ¶9, Exh. 5 (Declaration of Daniel Fuller).

**B.    Issue 2: Gomez's Failure to Timely Respond to RFAs is Fatal to Each of His Causes of Action.**

All causes of action alleged by Plaintiff Gomez are subject to dismissal at the summary judgment stage due to Gomez's failure to timely respond to or object to Defendants' Requests For Admission ("RFA"). Defendants served RFAs on both Hale and Gomez on July 3, 2024; those requests sought admissions that each claim alleged by Plaintiffs lacked factual and/or legal support. (Reese Decl. ¶4-5, Exh. 1.) While Hale timely responded to Defendants' RFAs, Gomez did not serve responses to Defendants' RFAs until June 10, 2025, over *ten months* after the deadline for him to respond or object had passed. (*Id.* ¶7, Exh. 3 (Gomez's 6/10/25 Responses to Defendants' RFAs)). Accordingly, Defendants' RFAs are deemed admitted (FRCP 36(a)(3)) and conclusively established (FRCP 36(b)). This is fatal to Gomez's claims as follows:

Cause of Action No. 1 (Meal Break): RFA Nos. 1 through 7, conclusively establish that Gomez either voluntarily elected not to take meal breaks and/or was provided premium pay for missed meal periods.

Cause of Action No. 2 (Rest Break): RFA Nos. 8, 9, 18, and 26 conclusively establish that Gomez was authorized and permitted to take rest breaks, had the opportunity to purchase and eat food during those breaks, did take paid rest breaks, and was not prevented from taking rest breaks.

Cause of Action No. 3 (Failure to Pay Hourly Wages/Off-the-Clock Work): RFA Nos. 20 and 21 establish that it was against policy to work off-the-clock and that Gomez did not work off-the-clock.

Cause of Action No. 4 (Failure to Indemnify): RFA No. 19 establishes that Gomez has no unreimbursed necessary business expenses.

Cause of Action No. 5 (Failure to Provide Accurate Wage Statements): this cause of action is derivative of causes of action one through four and thus fails alongside them. In addition, RFA No. 23 establishes that Gomez was provided with wage statements in compliance with California Labor Code section 226(a).

Cause of Action No. 6 (Failure to Timely Pay Wages Due on Termination): this cause of action is derivative of causes of action one through four and thus fails with them. In addition, RFA No. 25 establishes that Gomez was paid all final wages due when his employment terminated.

Cause of Action No. 7 (Unfair Competition): this cause of action is derivative of causes of action one through four and thus fails with them.

Cause of Action No. 8 (PAGA): Gomez's PAGA claim cannot be sustained because the failure of his underlying Labor Code claims means he is precluded from pursuing representative claims under PAGA. *See, e.g., Rodriguez v. Lawrence Equipment, Inc.*, 106 Cal. App. 5th 645 (2024) (after arbitration decision in employer's favor on employee's individual wage and hour claims, employee could not maintain representative PAGA claims); *Rocha v. U-Haul Co. of California*, 88 Cal. App. 5th 65 (2023) (arbitrator's finding that employer did not violate Labor Code Section 1102.5 precluded employees from alleging standing under PAGA to pursue civil penalties for same violation). In addition, RFA No. 24 conclusively establishes that Defendants did not violate any Labor Code provision entitling Gomez to penalties under PAGA.

Gomez's belated attempt to object to the method of service of Defendants' RFAs (*See* Reese Decl. ¶7, Exh. C) is unavailing, both because the time to object has long since run, and because the method of service of Defendants' RFAs was consistently used throughout this litigation, including by Plaintiffs. *See, e.g.,* Reese Decl. ¶6, Exh. B (sample Proof of Service from Plaintiffs' discovery requests served on

Defendants).[3] Finally, Gomez has failed to avail himself of the remedy under FRCP 36(b) of moving to withdraw or amend his admissions.

## C.    Issue 3: Hale's Deposition Testimony Undermines Her Meal and Rest Break Claims

The undisputed evidence demonstrates that Hale's First and Second Causes of Action for meal and rest break violations are without merit. Her "evidence" of meal and rest break violations consists solely of statements made in her self-serving declaration, and time records that are rebutted by the contemporaneous record of her own meal skip attestations. Even assuming Hale's declaration was otherwise sufficient to defeat summary judgment, it is undermined by Hale's own admissions in deposition testimony. Hale's deposition admissions make clear that the allegations that she was somehow prevented or discouraged from taking compliant meal or rest breaks or was forced or encouraged to attest that she had voluntarily waived her breaks are specious. Rather, as shown below, the undisputed facts show that BIPC had a compliant meal and rest break policy which provided Team Members with the opportunity to take compliant breaks (but did not force them to do so). In addition, Hale was never prevented from taking a compliant break, was never disciplined for taking a compliant break, was never pressured or forced to falsify an attestation stating she had voluntarily skipped a break and was never punished for indicating that she had not received a compliant break. Finally, the contemporaneous record shows that Hale overwhelmingly elected not to take a meal break on break-eligible shifts.

The material facts on Hale's meal and rest break claims are as follows:

- Plaintiff Hale worked at the Simi Valley Chili's primarily as a food server from December 17, 2005 to March 19, 2020. *See* ECF No. 103 (Opposition to Motion for Class Certification) at p. 7.

- At all relevant times, BIPC's written meal break policies provided employees, including Hale, with a 30-minute unpaid meal period on shifts over five hours to be taken before the end of the fifth hour and which can be waived on shifts of six hours or less, and a second 30-minute meal period on shifts over ten hours that must be taken before the end of the

---

[3] The Proof of Service document attached as Exhibit 2 (from Hale's Second Set of Special Interrogatories) specifically states that electronic service was made "[b]ased on a court order or an agreement of the parties to accept service by electronic transmission…."

tenth hour and which can be waived only if the employee works fewer than twelve hours and did not waive the first meal period. *See* ECF No. 104-2 through 104-4 (Excerpts of Deposition of Catherine Zefer-Fredericks); ECF No. 104-5 (Excerpts of Deposition of Melodie Hunt).

- At all relevant times, BIPC's written Meal and Rest Break Policies authorized and permitted 10-minute rest breaks on shifts over 3.5 hours for every four hours or fraction thereof. *Id.*

- Team Members – including Hale – acknowledge receipt of BIPC's written meal and rest break policies at the time of hire and are also reminded of those policies through daily reminder prompts when they clock-in. ECF No. 104-5 (Deposition of Melodie Hunt) at 24:17-25:9.

- The meal break policy used by BIPC, including at the Simi Valley location at which Hale worked, tracks the policies found compliant with California law in *Brinker v. Superior Court* (*"Hohnbaum"*) and again in *Donohue v. AMN Services, LLC*. ECF No. 103 at p. 17, 19.

- Team Members at the restaurant at which Hale worked used an electronic system called "Aloha" to clock-in and clock-out.[4] The system includes a touch screen on the POS computer. The Aloha system prompts non-exempt employees such as Hale at the start and end of their shifts about Defendants' meal and rest break policies. *See* ECF No. 104-2 through 104-6; 104-10 (California Compliance Manual).

- At the *start* of each shift, the Aloha system prompts Team Members as follows:

  o "I have read and understand the California Meal & Rest Break Policy. It's my responsibility to clock out for my 30-minute meal period before my 5th hour of work when I work a shift that is over 5 hours. All 10 minute rest breaks are on-the-clock."[5] ECF No. 104-2 through 104-5, 104-10.

---

[4] The "Aloha" system used by Team Members including Hale is described more fully in Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 103). As noted above, Defendants incorporate by reference all matters already on file in this matter, including the facts described in ECF No. 103 and the evidence contained in the accompanying compendium of evidence, ECF No. 104.

[5] From November 18, 2017 until April 22, 2019, the prompt stated as follows: "I have read and understand the California Meal Period Policy. I understand that it is my responsibility to clock out and

- At the *end* of each shift, the Aloha system prompts Team Members who did not clock out for a full 30-minute meal period during a shift of more than 5 hours as follows:

  - "I acknowledge Brinker provided me a 30 minute meal period if I worked over 5 hours and a 2nd one if I worked over 10 hours.  If I chose not to take a provided meal period, I acknowledge it was my voluntary choice & I was paid for my time. Yes_____  No _____" ECF No. 104-3.

- If a Team Member such as Hale selected "YES" in response to that prompt, they continued to clock out as usual.  If Hale or another team member selected "NO" they would receive one hour of premium pay.  ECF No. 104-2 through 104-5, 104-10 (California Compliance Manual).

- BIPC maintained "skip reports" of Hale's election whether to "skip" meal periods on shifts over five hours.  ECF No. 104-90 (Declaration of Crandall Report).  The skip report for Hale indicates that she selected "YES" regarding voluntarily skipping her meal break on the vast majority (357 out of 364) of her meal-eligible shifts.  *Id.*

- While Hale stated in her declaration she was frequently denied meal breaks (ECF 89-1 (Hale Decl. iso Motion for Class Cert.) at ¶ 8; ECF No. 104-7 (same)), she subsequently walked back that assertion, instead admitting in deposition testimony that no manager ever told her she couldn't take meal or rest break.  ECF No. 104-6 (Hale Depo.) at 119:4-120:5.

- While Hale stated in her declaration she had been "reprimanded over meal periods (ECF No. 89-1 at ¶ 9) she walked back that assertion and admitted in her deposition that she could not recall ever being punished for taking a meal break (ECF No. 104-6 at 166:24-167:4) and that she does not remember anyone else being punished for doing so.  (*Id.* 168:24-169:7).

- While Hale stated in her declaration that she couldn't take rest breaks due to understaffing (ECF No. 89-1 at ¶ 10) she admitted in her deposition that she didn't even know about rest

---

back in for my 30 minute meal period provided when I work a shift that is over 5 hours." ECF No. 104-3, 104-5.

breaks[6] (ECF No. 104-6 170:24-171:8, 172:2-4) and that she never asked for a rest break. (*Id.* at 173:3-17).  She further admitted to being a smoker and taking cigarette breaks and admitted that she did not know the duration of those breaks (*id.* at 173:3-17).  She never testified that anyone ever required her to return from a cigarette (or any other) break before 10 minutes' time had passed.

- While Hale stated in her declaration that she understood she would be prevented from clocking out if she selected "NO" in her attestation (ECF No. 89-1 at ¶ 9) she later admitted that she doesn't actually know what clicking "NO" on the attestation would do. (ECF No. 104-6 at 100:4-20).

- Hale admitted that she was never instructed to wait on tables while on a meal break.  ECF No. 104-6 at 129:9-130:2.

- Hale admitted that she could not remember ever being punished for taking a meal break.  ECF No. 104-6 at 166:24-167:4. She also does not remember anyone else being punished for taking a break.  *Id.* at 168:24-169:7.

The above facts demonstrate that Defendants are entitled to judgment as a matter of law on Hale's meal and rest break claims.  First, it is undisputed that BIPC's meal and rest break policies are compliant with California law.  In particular, the meal break policies closely track policies endorsed as compliant by the California Supreme Court in *Hohnbaum* and *Donohue*. Second, the undisputed facts show that Hale was presented with a message informing her of her meal and rest break rights every single time she clocked in using the Aloha system.  Third, the record shows that Hale attested that she had *voluntarily* foregone her meal period on 357 of 364 meal-eligible shifts.  Fourth, her declaration notwithstanding, Hale admitted in sworn deposition testimony that she was never told she could not take a meal or rest break, that she does not recall being punished or observing anyone else being punished for taking a break, that she never asked for a rest break, that she was never instructed to continue working while on meal breaks (and took 30 minute breaks, as well as, at a minimum, cigarette breaks), that she could not identity a single manager who ever told her to execute 'yes' on the meal break attestation or be prevented from leaving work, that

---

[6] A remarkable claim given she was reminded of her rest break rights *every day* upon log in via the Aloha system prompt.

she never personally experienced any negative consequence for selecting 'no' on the attestation, and that she is unaware of anyone else experiencing a negative consequence for doing so.  These undisputed facts are fatal to Hale's meal and rest break claims; accordingly, Defendants are entitled to judgment as a matter of law on Hale's First and Second Causes of Action.

**D.    Issue 4: The Undisputed Record Refutes Plaintiffs' 2802 Indemnification Claim**

Plaintiffs' Indemnification claim – based on their alleged purchase and/or required use of the "HotSchedules" shift scheduling application on their personal cell phones – is unsustainable as a matter of law.   The undisputed facts show that (a) neither Plaintiff can establish that they purchased the HotSchedules app within the statutory period, and (b) use of personal cell phones to access their schedules via the HotSchedules app was not "necessary" within the meaning of Labor Code Section 2802.

Regarding alleged purchase of the HotSchedules app, the material undisputed facts are as follows:

- Plaintiff Gomez admits he did not pay for the HotSchedules app.  (ECF No. 104-8 (Gomez Depo.) at 121:5-11).

- Plaintiff Hale claims she paid for the HotSchedules app (ECF No. 104-6 (Hale Depo.) at 109:4-6).

- However, Hale admits does not remember when she first used the HotSchedules app (ECF No. 104-6 at 107:9-24).

- Hale could not identify a date "or even a year" on which she first downloaded the HotSchedules app (ECF No. 104-6 at 108:25-109:3)

- Hale admits that her allegation she needed to pay for the app is merely her "belief" and that she did not, in fact, personally purchase the app.  (ECF No. 104-6 at 109:1-15); *see also id.* at 111:5-12) (answering "Possibly" and "I can't recall" regarding alleged purchase of the HotSchedules app and stating that the app was purchased by her cousin rather than herself).

- Neither Gomez nor Hale produced any documentation to support a claim that they paid for the HotSchedules app.

Based on the undisputed facts as articulated above, neither Hale nor Gomez can demonstrate that they paid for the HotSchedules app at all, let alone within the statutory period.  Regarding the allegedly

"necessary" use of personal cell phones to access Hale and Gomez's work schedules, the undisputed facts are as follows:

- During the relevant period, personal cell phones were not required to access Team Member schedules. Schedules were accessible online without using an app and were accessible via in-store tablets and computers. ECF No. 104-2 through 104-5.

- Plaintiff Hale alleges in her declaration that she was required to use her cell phone to access her schedule via the HotSchedules app. (ECF No. 89-1 (Hale Decl.) ¶12).

- However, Plaintiff Hale concedes that while she used her cell phone to access her schedule, she was "sure there were other ways" to access schedules. (ECF No. 104-6 at 112:13-20).

- Plaintiff Hale further admits that while use of the HotSchedules cell phone app was "convenient" (ECF No. 104-6 at 112:11-12) there were probably other ways to access HotSchedules other than via her personal cell phone. (*Id.* 107:7-108:3, 108:25-110:22).

- Plaintiff Gomez similarly alleges he was required to use his cell phone to access his schedule via HotSchedules. (ECF No. 104-9 (Gomez Declaration) at ¶12).

- However, Gomez concedes that there was a computer in the office at his restaurant location which could be used to access schedules via HotSchedules. (ECF No. 104-8 (Gomez Depo.) at 71:25-74:1).

- Gomez further admits he "never asked" to use the office computer to access his schedule because he "never needed it" (*Id.* at 74:9-11).

- Gomez admits there was a Team Member at his restaurant location who did not have a cell phone and was still able to access his schedule using the office computer. (*Id.* at 73:8-18).

- Gomez alleges that in-restaurant tablets were only available to access recipes. (ECF No. 104-8 at 76:3-8). However, he admits he "never saw" whether he could access HotSchedules on those tablets. (ECF No. 104-8 at 76:9-11), which is consistent with his statement that he "never needed" to use the store computer to access HotSchedules. Moreover, a fellow cook who worked alongside Gomez refutes the claim that HotSchedules was not available via those devices. Gomez's co-worker stated in his declaration that the restaurant's tablets *can* be used for HotSchedules access, and that

HotSchedules can also be accessed via a website, with Wi-Fi available in the restaurant. (ECF No. 104-71 (Declaration of Adam Serrano) at ¶ 13).

- Neither Gomez nor Hale produced or can identify a single document – including any BIPC policy document – mandating the use of personal cell phones for accessing Team Member schedules.

Based on the undisputed facts as articulated above, neither Gomez or Hale can demonstrate that they their use of personal cell phones to access the HotSchedules app was "necessary" within the meaning of Labor Code 2802.

### E.    Issues 5 and 6: Neither Attorneys' Fees Nor Prejudgment Interest Are Available on Various of Plaintiffs' Claims.

As detailed below, various of Plaintiffs' claims – which are now being pursued only in an individual capacity in light of the Court's ruling denying class certification – do not provide for attorneys' fees and/or for prejudgment interest under any of the statutes or doctrines referenced by Plaintiffs in the SAC. The only material fact with respect to these issues – which is not in dispute – is that Plaintiffs' lawsuit is proceeding on an individual rather than a putative class basis following the Court's ruling on Plaintiff's class certification motion.

## III.    ARGUMENT

### A.    Legal Standard

Summary Judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are limited to those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is only 'genuine' if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

### B.    Defendants Are Entitled to Summary Judgment on the Claims and/or Issues Articulated Below

#### 1.    ISSUE ONE: Defendants BII and BRC Are Entitled to Dismissal Because They Were Not Plaintiffs' Employer

In order to prevail on claims under California's Labor Code, Plaintiffs must show that an employment relationship exists between themselves and the Defendant(s). *See, e.g.,* Cal. Labor Code §§

201, 203.[7]  There is a rebuttable presumption that a person's "employer" is the entity listed on the employee's W-2 tax forms.  *See* Cal. Gov. Code § 12928; *see also Reyna v. WestRock Co.,* No. 20-CV-01666-BLF, 2020 WL 5074390, at *2 (N.D. Cal. Aug. 24, 2020) (dismissing the plaintiff's employment claims against parent and affiliate subsidiaries of her employer because plaintiff failed to rebut presumption that the entity identified on her W-2 was her employer and further failed to allege sufficient facts to support her claim that the defendants were an integrated enterprise).  As noted above, only Brinker International Payroll Company, L.P. ("BIPC") is identified on Plaintiffs' W-2 forms.  Likewise, BIPC is the only employer listed on Plaintiffs' wage statements.  Neither BII nor BRC are identified as Plaintiffs' employer on any of these (or any other similar) documents.

Plaintiffs cannot rebut the presumption that neither BII or BRC was their employer, because absolutely no evidence exists to establish an employment relationship between them.  To determine whether an entity is an employer in an action based on Labor Code violations, courts employ California Supreme Court's test articulated in *Martinez v. Combs* (2010) 49 Cal. 4th 35, 64.  Under *Martinez*, an employer is one who: (a) exercises control over the wages, hours, or working conditions of an employee; (b) suffers or permits an employee to work; or (c) engages an employee thereby creating a common law, or "regular," employment relationship.  *Martinez*, *supra*, 49 Cal. 4th 35 at 64; *see also Sotelo v. MediaNews Group, Inc.* (2012) 207 Cal.App.4th 639, 660-662 (applying *Martinez* to a different IWC wage order); *Futrell v. Payday Cal., Inc.* (2010) 190 Cal.App.4th 1419, 1430 (applying *Martinez* definition to Labor Code §§ 203, 226, 510, and 1194); *Taylor v. Waddell & Reed Inc.* (S.D. Cal. Feb. 1, 2013) 09-CV- 02909 AJB WVG, 2013 WL 435907, at *10 (applying the *Martinez* definition of "employment" to causes of action brought under Labor Code §§ 201, 202, 203, 204, 218.5, 218.6, 226, 226.7, 2698 *et seq*., 510, 1182.12, 1194, 1194.2, and 1197 as well as Cal, Bus. & Prof. Code §§ 17200 *et seq*.); *Barajas v. Carriage Servs., Inc.*, No. (N.D. Cal. Dec. 9, 2019) 19-CV-02035-EMC, 2019 WL 6699737, at *11; *Salazar v. McDonald's Corp.* (9th Cir. 2019) 944 F.3d 1024, 1033.

---

[7] The SAC's Seventh Cause of Action is brought under Cal. Bus. & Prof. Code § 17200 *et seq.* (the UCL) rather than the Labor Code.  However, Plaintiffs' UCL claim is derivative of their Labor Code claims and thus is subject to dismissal alongside them.  *See also Taylor*, 2013 WL 435907 at $10 (applying the *Martinez* definition of employer to, *inter alia*, UCL claims).

As noted above, Plaintiffs have produced absolutely no evidence of any employment relationship between themselves and either BII or BRC under any of the *Martinez* definitions. There is no evidence that BII or BRC controlled their wages, hours, or working conditions. There is no evidence that BII or BRC suffered or permitted them to work. And there is no evidence that BII or BRC entered into a common law employment relationship with Plaintiffs. Rather, as stated in the declaration of Daniel Fuller (Senior Vice President – General Counsel & Secretary of BIPC Management, LLC, the general partner of Brinker International Payroll Company, L.P.) BII and BRC do not employee non-exempt employees in California, and those entities do not exercise control over any non-exempt California employees. Reese Decl. ¶9, Exh. 5 at ¶¶ 4-5. Because no evidence exists to show an employment relationship between Plaintiffs and BII or BRC, and no evidence exists to rebut the presumption that Plaintiffs were employed by BIPC – the entity listed on their W-2s and other relevant documents – BII and BRC are entitled to dismissal as to all Causes of Action in the SAC.

## 2.    ISSUE TWO: All Causes of Action Brought by Plaintiff Gomez Are Subject to Dismissal Due to His Failure to Timely Deny or Object to Defendants' Requests For Admissions.

Defendants are entitled to summary judgment as to all of Gomez's claims. because, by virtue of Gomez's failure to timely respond to or object to Defendants' Requests for Admissions, the matters therein were deemed admitted. Fed. Rules Civ. Proc. Rule 36(a)(3). Based on those admissions, Defendants are entitled to judgment as a matter of law.

On July 3, 2024, Defendants served written discovery requests on Gomez (and Hale) via electronic mail, including Requests For Admission. (Reese Decl. ¶¶ 4-5, Exh. 1). Gomez did not provide either responses or objections to Plaintiff's discovery responses until June 10, 2025, which was *months* after the 30-day deadline to respond or object to Defendants' RFAs had passed. (Reese Decl. ¶ 7, Exh. 3). Because Gomez failed to timely object or respond to Defendants' RFAs, the matters therein are deemed admitted for purposes of this litigation. *See* FRCP 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection…."); FRCP 36(b) ("A matter admitted under this rule is *conclusively established*…." (emphasis added).) Defendants' RFAs expressly covered each of the causes of action in the operative SAC, with the exception of the derivative Unfair Competition Law claim (cause of action No. 7). By virtue of these

RFAs being deemed admitted, Defendants' lack of liability with respect to Gomez's claims is "conclusively established." FRCP 36(b). Accordingly, Defendants are entitled to judgment as a matter of law.

Defendants anticipate Gomez will challenge the sufficiency of service of Defendants' RFAs. This argument is unavailing for several reasons. First, as noted above, Gomez did not object to the manner of service of the RFAs until June 10, 2025, which was well after the expiration of the 30-day deadline to respond or object to Defendants' Requests. Moreover, Gomez failed to avail himself of the option to move to withdraw or amend his admissions. *See* FRCP 36(b). Finally, any objection regarding the manner of service – however belated – fails in light of the fact that Defendants' RFAs were served on Gomez in the same manner as discovery was served in this matter by both Defendants *and* Plaintiffs. *See, e.g.,* Reese Decl. ¶6, Exh. 2 (Sample Proof of Service for Plaintiffs' discovery requests on Defendants, including a reference to service via "e-mail or electronic transmission" made "[b]ased on a court order or an agreement of the parties to accept service by electronic transmission…."). Plaintiffs should be estopped from claiming that electronic service is not proper, given their own use of electronic service in this matter and their reference to either a court order or party agreement to accept such service.

### 3. ISSUE THREE: Defendants Are Entitled to Judgment as a Matter of Law as to Plaintiff Hale's First Cause of Action (Meal Break Violations) and Second Cause of Action (Rest Break Violations)

Hale's meal and rest break claims (causes of action One and Two) fail as a matter of law because the undisputed facts show: (a) BIPC's meal and rest break policies are legally compliant; (b) Hale was never instructed not to take a break, never threatened regarding breaks, never asked to work during breaks, never punished for taking a break or attesting that she had not received a break, and (c) Hale *overwhelmingly* attested that she had voluntarily foregone her meal breaks.

In *Brinker v. Superior Court* (*Hohnbaum*) and again recently in *Donohue v. AMN Services, LLC*, the California Supreme Court articulated the core principles governing meal and rest breaks. With respect to meal breaks, *Donohue* reiterated the rules set forth in *Hohnbaum*: "An employer is liable only if it does not provide an employee with the opportunity to take a compliant meal period. The employer is not liable *if the employee chooses* to take a short or delayed meal period or *no meal period at all*. The employer is not required to police meal periods to make sure no work is performed. Instead, the employer's duty is to

ensure that it provides the employee with bona fide relief from duty and that this is accurately reflected in the employer's time records." *Donohue*, 11 Cal. 5th 58, 78 (2021) (emphasis added); *citing Brinker v. Superior Court (Hohnbaum)*, 53 Cal. 4th 1004, 1040-41 (2012).

While time records showing facially noncompliant meal periods raise a presumption of liability on summary judgment (*Donohue* at 78), that presumption is *rebuttable*. (*Id.*).  Employers "can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work."  *Id.* at 77. "A missed meal break does not constitute a violation if the employee waived the meal break, or otherwise voluntarily shortened or postponed it."  *Cirrincione v. American Scissor Lift, Inc.*, 73 Cal. App. 5h 619, 639 (2021).

In *Donohue*, the Court endorsed employers' use of a timekeeping system which provides employees with the opportunity at the end of each shift to attest to their election to forego a meal break as a method of proving that a missing or facially non-compliant meal was not an actual meal break violation.[8] The "Team Time" system used by the employer in *Donohue* "included a dropdown menu for employees to indicate whether they were provided a compliant meal period but chose to work." *Donohue* at 78.  The "Aloha" timekeeping system used by BIPC at Hale's restaurant similarly provided Hale with the opportunity, on a daily basis, to either attest that she had voluntarily foregone a compliant break, or that she had, in fact, not received a compliant meal break.  As noted above, Hale's attestations via the Aloha system show that she overwhelmingly elected to forego her meal break.[9]  Thus, the contemporaneous record – critically consisting of Hale's own attestations that she had elected not to take a meal break despite having the opportunity to do so – are indicative of meal break compliance by BIPC.

As noted above, in an attempt to dispute the contemporaneous record of her own meal break attestations, Hale makes several assertions (unsupported by anything beyond her own self-serving

---

[8] The "Team Time" system utilized in *Donohue* was found by the Court to be problematic not because it included employee attestations regarding their election to forego a break, but because it impermissibly rounded employee meal breaks.  The "Aloha" system used by Brinker at Hale's restaurant does not round employee meal periods.

[9] In connection with their opposition to class certification, Brinker's expert analyzed Hale's timekeeping data, including her meal period attestations.  Hale selected "Yes" regarding having voluntarily elected not to take a break on 357 of 364 meal-eligible shifts.

declaration) that she was denied compliant meal and rest breaks.  But her own deposition testimony completely undermines those assertions.  Hale admitted that no manager ever told her she couldn't take a meal or rest break.  She also admitted that she could not recall ever being punished for taking a break or witnessing anyone else being punished for doing so.  She claims that understaffing prevented her from taking breaks, but admits she never asked for a break.  She claimed she would be prevented from clocking out if she selected "No" on the Aloha system's meal break attestation but then admitted she did not know what clicking "No" on the attestation would do.  She admits that she was never instructed to wait on tables while on a meal break.  She admits she was never punished for taking a meal break and is not aware of anyone else being punished for doing so either.  In sum, Hale's deposition admissions, in combination with the contemporaneous record of her repeatedly attesting to having voluntarily foregone a meal break, completely undermine her allegations in the SAC and in her declaration that she was not provided with the opportunity to take compliant meal breaks and/or rest breaks.  Accordingly, because the undisputed facts show that Hale was provided the opportunity to take compliant breaks (but not required or policed to take them), Defendants are entitled to judgment as a matter of law on Hale's First and Second Causes of Action.

### 4.   ISSUE FOUR: Plaintiffs' Expense Reimbursement Claim Fails as a Matter of Law

To establish entitlement to Business Expense Reimbursement under Labor Code Section 2802, a plaintiff must show the following: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience of the directions of the employer; and (3) the expenditures or losses were necessary." *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230-31 (2006).; *see also* CACI 2750. Plaintiffs' expense reimbursement claim – which is solely based on their alleged purchase and use of a cell phone scheduling application called "HotSchedules"[10] – is subject to dismissal because there is no

---

[10] The SAC also alleges that Plaintiffs were required to purchase a black polo shirt from Defendants. ECF No. 61 (SAC) ¶ 94.  However, nowhere in the record do Plaintiffs provide supporting evidence for this allegation. For instance, Plaintiff Hale does not reference this alleged expense in responding to a Special Interrogatory asking her to identify all unreimbursed business expenses.  (*See* Reese Decl. ¶ 8, Exh. 4 at Response No. 7.)  She likewise fails to reference it in her declaration iso Plaintiffs' Motion for Class Certification (ECF No. 89-1) or in her deposition testimony.  (ECF No. 104-6.) No documentary evidence was produced by Plaintiffs in connection with this claim, including any purchase records.

evidence that (a) Plaintiffs paid for HotSchedules within the statutory period, or (b) that the use of a personal cell phone to access their schedules via HotSchedules was a "necessary" expense.

First, Plaintiffs cannot demonstrate that they had to pay for HotSchedules within the statutory period. As noted above, Plaintiff Gomez admitted during his deposition that he did not have to pay for the HotSchedules app. Plaintiff Hale claimed in her declaration that she did have to pay for the app. However, in her deposition she (a) was not able to identify a date, or even a year, at which she first started using HotSchedules, (b) was not able to identify when (e.g., whether or not within the statutory period) she allegedly purchased the HotSchedules app, and finally, (c) Hale admitted that she did not personally purchase HotSchedules, but rather a cousin of hers did so. In terms of documentary evidence, neither Hale nor Gomez produced any records of having incurred any charge for downloading the HotSchedules app. Accordingly, Plaintiffs' Section 2802 claim cannot be sustained as to alleged purchase of the HotSchedules app.

In addition, the record does not support Plaintiffs' claim that use of their personal cellular devices to access HotSchedules was a "necessary" business expense within the meaning of Section 2802.[11] California courts have held that employers must reimburse employees for the *mandatory* use of their personal cell phones. *See Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014). However, where personal cell phones are only one option among the available means of communication for employees, cell phone use is not "necessary" within the meaning of Section 2802. *See, e.g., Pyara v. Sysco Corp.*, No. 2:15-cv-01208-JAM-KJN, 2017 U.S. Dist. LEXIS 34164 (E.D. Cal. Mar. 9, 2017) (rejecting indemnification claim where employees could use company-issued phones in addition to their personal phones); *Dugan v. Ashley Furniture Indus., Inc.* (C.D. Cal. Nov. 29, 2016), 2016 U.S. Dist. LEXSI 189011 at *1, 4 n. 2 (C.D. Cal. Nov. 29, 2016) (dismissing indemnification claim where no policy required employees to use their personal cell phones and employees could have made calls from their employer's store phones).

---

[11] In addition to being factually unsupported, Plaintiffs' theory of liability based on personal cell phone use (rather than the alleged app purchase price) should be disregarded because it was not raised in the operative SAC. *See Coleman v. Quaker Oats Co.*, 232 F. 3d 1271, 1292-93 (9th Cir. 2000) (allowing plaintiffs to proceed with a new theory of liability at summary judgment after the close of discovery would prejudice defendants).

The record shows that during the relevant period at the locations where Plaintiffs worked, personal cell phones were not required to access employee schedules. Rather, schedules could also be accessed online without using an app and were accessible via in-store iPads and computers. For instance, while Hale alleges that she was required to use her cell phone to access her schedule via HotSchedules, that claim is contradicted by her own sworn testimony, wherein she conceded that while she used her cell phone app to access her schedule, she was "sure there were other ways" to access schedules (Hale Depo. 112:13-20), and that while use of the HotSchedules app was "convenient" (*Id.* 112:11-12) there were probably other ways than via her personal cell phone to access HotSchedules. (Hale Depo. ¶ 107:7-108:3, 108:25-110:22). Likewise, during his deposition Gomez conceded that there were methods other than personal cell phone use for him to access his schedule. For instance, Gomez admitted there was a computer in the office which could be used to access schedules via HotSchedules. Gomez Depo. 71:25-74:1. Gomez testified that he "never asked" to use the office computer to access his schedule, because he "never needed it." *Id.* at 9-11. Indeed, Gomez admits that there was a Team Member in his store who did not have a cell phone and was able to access his schedule by using the office computer. *Id.* at 73:8-18. Percipient witness testimony further undercuts Gomez's unsubstantiated claim that cell phone use was required; a fellow cook who worked with Gomez states that the restaurant has iPads for HotSchedules access, and that HotSchedules can also be accessed via a website, with Wi-Fi available in the restaurant. (Declaration of Adam Serrano at ¶13).[12] Finally, Plaintiffs have not and cannot point to a single document – including any BIPC policy document – mandating the use of employees' cell phones to access their schedules. Plaintiffs cannot carry their burden of establishing that the use of personal cell phones to access their schedules was "necessary" because the undisputed record reflects that numerous other methods of access were available. Accordingly, their 2802 claim fails as a matter of law and should be dismissed.

///

---

[12] While Gomez claimed in his deposition that the restaurant's iPads were only used to access recipes, he provides no foundation for any personal knowledge for this claim. He never stated that he ever tried to use the in-store iPads for that purpose; instead, he admitted that he and no reason to do so, because he was content using the cell phone HotSchedules app. While he personally may not have used the restaurant's iPads to access his schedule, that does not mean he could not do so. As noted above, the fact that in-restaurant iPads could be used to access HotSchedules is corroborated by the sworn declaration of Gomez's coworker.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.    **ISSUE FIVE: Attorneys' Fees Are Not Recoverable on Several of Plaintiffs' Claims**

a.    **Meal and Rest Breaks**

Plaintiffs seek an award of attorneys' fees on their meal break claim "pursuant Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine." ECF No. 61 (SAC) ¶ 56.  They likewise seek attorneys' fees on their rest break claim under the same statutes and doctrines.  *Id.* ¶ 67.  However, attorneys' fees are not available under any of the stated provisions for Plaintiffs' individual meal and rest break claims.  Accordingly, Defendants are entitled to summary judgment as to that issue.  *See* Fed. R. Civ. Proc. 56(g) (on motion for summary judgment, the Court is empowered to "enter an order stating any material fact – ***including an item of damages or other relief*** – that is not genuinely in dispute and treating the fact as established in the case.")

First, Plaintiffs are not entitled to recover attorneys' fees on their missed meal or rest break allegations under Labor Code § 1194.  Section 1194 authorizes the recovery of, *inter alia*, attorneys' fees to successful plaintiff-employees on minimum wage or overtime wage claims.  However, under California law, there is no entitlement to attorneys' fees for meal or rest break violations under Labor Code § 1194. *See Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1254-55 ("We conclude that section 1194 does not authorize an award of attorney's fees to employees who prevail on a section 226.7 action for the nonprovision of statutorily mandated rest periods.  Neither the plain text, the history of section 1194, nor the language of related statutes provides any reason to depart from the ordinary meaning of section 1194's words."); *Thuy Van v. Language Line, LLC*, 2016 U.S. Dist. LEXIS 130753 at **29-30 (N.D. Cal. Sept. 23, 2016) ("Although Plaintiff prevailed on her meal period and rest break claim under California Labor Code §§ 226.7 and 512, the Court explained at summary judgment that attorney's fees are not available for unpaid meal period and rest break claims.").

Plaintiffs are also not entitled to attorney's fees on their meal and rest break claims under the other statutes or doctrines referenced in the SAC.  CCP § 1021.5 permits recovery of attorneys' fees only where, *inter alia*, "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons…."  Cal. Code Civ. P. § 1021.5.  Following the Court's denial of

Plaintiffs' motion for class certification, only Plaintiffs' individual claims remain with respect to the first cause of action. Thus, only Plaintiffs' personal economic interests are at stake with respect to the first cause of action; an award of attorneys' fees under Section 1021.5 is therefore improper. *See, e.g., Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311 (1983) (even if constitutional rights are involved, litigation which advances only a plaintiff's personal economic interests does not confer a significant benefit on a large class of persons). The substantial benefit and common fund doctrines are likewise inapplicable. Both doctrines require that a claim be brought in a representative capacity and result in the conferral of a substantial benefit on a class. *See Braude v. Auto. Club of S. Cal.*, 178 Cal. App. 3d 994 (1986); *Save El Toro Assn. v. Days*, 98 Cal. App. 3d 544, 548 (1979); *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 943 (1979). Again, following the Court's denial of Plaintiffs' motion for class certification, all that remains with respect to Plaintiffs' first cause of action are their individual claims. Accordingly, neither the substantial benefit nor the common fund doctrine applies.

### b.  **Indemnification Claim**

Plaintiffs are also not entitled to attorneys' fees on their indemnification claim as pled in the SAC. Plaintiffs seek "reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5." ECF No. 61 ¶ 103. As noted *supra*, Section II(A)(4)(i), attorneys' fees are only available under Section 1021.5 where "a significant benefit…has been conferred on the general public or a large class of persons." Again, because Plaintiffs' expense reimbursement claim is only brought on an individual basis, attorneys' fees under CCP 1021.5 are not available.

### c.  **UCL Claim**

Plaintiffs likewise seek attorneys' fees on their UCL claim under CCP § 1021.5, the substantial benefit doctrine and/or the common fund doctrine. *See* ECF No. 61 ¶ 140. As identified above, none of these statutes or doctrines are a legitimate basis for an award of attorney's fees on Plaintiff's individual claims against Defendants. Moreover, California law is clear that attorney's fees are not available on UCL claims. *Thuy Van*, 2016 U.S. Dist. LEXIS 130753 at *30 ("[A]ttorney's fees are not recoverable under the UCL."); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("[A]ttorney fees

and damages…are not available under the UCL."); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (1999).[13]

**6.     ISSUE SIX: Prejudgment Interest under Labor Code Section 218.6 is Not Available on Several of Plaintiffs' Claims.**

In addition to improperly seeking attorneys' fees on various claims which do not support such an award, Plaintiffs also improperly seek prejudgment interest under Labor Code Section 218.6 on many claims for which such interest is not permitted.  Plaintiffs improperly seek prejudgment interest on their claims for meal break violations (ECF No. 61 ¶55), rest break violations (*id.* ¶66) and failure to pay all wages due at termination (*id.* ¶ 121).

Claims for meal and rest break penalties do not support a claim for prejudgment interest under Labor Code 218.6.  *See In re Autozone, Inc.*, 2016 U.S. Dist. LEXIS 105746 at **25-26, *citing Kirby*, 53 Cal. 4th at 1255; *see also Naranjo v. Spectrum Security Services, Inc.*, 13 Cal. 5th 93, 122 ("for purposes of prejudgment interest under Labor Code section 218.6, a section 226.7 suit is not an 'action brought for the nonpayment of wages,' as section 2186.6 requires….")

Prejudgment interest under Section 218.6 is also not available for waiting time penalty claims under Labor Code 203.  *See, e.g., Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1022 (holding that prejudgment interest under 218.6 does not apply to Labor Code 203 penalties, because the waiting time penalties are not "wages" but rather a penalty, and therefore Section 218.6, which authorizes prejudgment interest in actions brought to recover wages, does not apply.); *see also In re Autozone, Inc.*, 2016 U.S. Dist. LEXIS 105746 at *25.

///

///

---

[13] As former employees, Plaintiffs also lack Article III standing to seek prospective injunctive relief. *See, e.g., Richards v. Ernst & Young* LLP, 2010 U.S. Dist. LEXIS 16366 (Feb. 24, 2010) at *7 ("former employee lacks standing to seek prospective injunctive relief on behalf of a putative  class); *Delodder v. Aerotek, Inc.*, 2009 U.S. Dist. LEXIS 109256 at *3 (C.D. Cal. Nov. 9, 2009) ("plaintiffs lack standing to seek prospective relief under the UCL because plaintiffs do not dispute that they are no longer employees of defendant, and thus, they cannot demonstrate 'a real or immediate threat of irreparable injury' by defendant's employment practices"); *Milligan v. American Airlines, Inc.*, 327 Fed. Appx. 694 (9th Cir. Apr. 30, 2009).  Plaintiffs' UCL claim is proceeding on an individual basis, and by definition cannot include prospective injunctive relief.  Thus, apart from the lack of availability of attorneys' fees on a UCL claim, Plaintiffs cannot obtain relief under, *e.g.*, the substantial benefit doctrine.

# I.    CONCLUSION

For the reasons articulated herein, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment and rule in Defendants' favor as to Issues One through Six.

Dated:  August 28, 2025                    JACKSON LEWIS P.C.


By:    /s/ Kevin D. Reese
         Kevin D. Reese
         Andrew J. Mailhot
         Geoffrey R. Pittman
         Attorneys for Defendants
         BRINKER INTERNATIONAL, INC., BRINKER
         INTERNATIONAL PAYROLL COMPANY, L.P.,
         and BRINKER RESTAURANT CORPORATION