**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Fletcher W. Schmidt (SBN 286462)
fschmidt@haineslawgroup.com
Andrew J. Rowbotham (SBN 301367)
arowbotham@haineslawgroup.com
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

*Attorneys for Plaintiffs AMANDA HALE and JESUS GOMEZ*

[Additional counsel listed on following page[

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA HALE and JESUS GOMEZ, on behalf of themselves and all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>BRINKER INTERNATIONAL, INC., a Delaware corporation; BRINKER INTERNATIONAL PAYROLL COMPANY, L.P., a Delaware limited partnership; BRINKER RESTAURANT CORPORATION, a Virginia corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 3:21-CV-09978-VC<br><br>[*Case assigned for all purposes to the Hon. Vince Chhabria, Dept. 17*]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: 11/18/2021<br>Removal Filed: 12/23/2021<br>Trial Date: 12/8/2025<br><br>Hearing Date: 10/2/2025<br>Hearing Time: 10:00 a.m. |

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Shaun Setareh (SBN 204514)
shaun@setarehlaw.com
Jose Maria D. Patino, Jr. (SBN 270194)
jose@setarehlaw.com
Brian Louis (SBN 353058)
brian@setarehlaw.com
**SETAREH LAW GROUP**
420 North Camden Drive
Beverly Hills, California 90210
Tel: (310) 888-7771
Fax: (310) 888-0109

*Attorneys for Plaintiffs AMANDA HALE and JESUS GOMEZ*

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A. ISSUE TWO: Plaintiff Gomez Did Not Fail to Timely Deny or Object to the Requests for Admission Because the Requests Were Never Validly Served. ........................................................................................................... 2

    B. ISSUE THREE: Plaintiff Hale's Testimony Supports Her Meal and Rest Period Claims. ............................................................................................... 7

        i. Plaintiff Hale Testified that She Was Not Authorized and Permitted to Take Duty-Free Rest Periods. ......................................................... 7

        ii. Plaintiff Hale Testified That She Was Denied Meal Periods. ........ 9

    C. ISSUE FOUR: Plaintiffs' Testimony Supports Their Claim for Unreimbursed Business Expenses. .............................................................. 12

    D. ISSUE FIVE: Plaintiffs Are Entitled to Seek Attorney's Fees Pursuant to Labor Code 218.5 and 2802(c). ................................................................. 14

    E. ISSUE SIX: Plaintiffs Are Entitled to Seek Prejudgment Interest Based on the California Constitution and/or Labor Code Section 218.6. ................... 15

III. CONCLUSION ............................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarez v. Hill*
    518 F.3d 1152 (9th Cir. 2008) ................................................................ 14, 15

*Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*
    896 F.Supp.2d 223 (S.D.N.Y. 2012) ................................................................ 6

*Stephenson v. California*
    761 F.Supp.3d 1242 (C.D. Cal. 2025) ............................................................. 5

**Federal Rules**

Fed. R. Civ. P. 5(b)(2)(E) ................................................................................ 3, 4

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 14

**State Cases**

*Betancourt v. OS Restaurant Services, LLC*
    83 Cal.App.5th 132 (2022) ........................................................................ 15, 16

*Cochran v. Schwan's Home Service, Inc.*
    228 Cal.App.4th 1137 (2014) ......................................................................... 13

*Naranjo v. Spectrum Security Services, Inc.*
    13 Cal.5th 93 (2022) ....................................................................................... 15

**State Statues and Rules**

Labor Code § 218.5 ........................................................................................... 14

Labor Code § 218.6 ..................................................................................... 15,16

Labor Code § 2802(c) ...................................................................................... 15

**Unpublished Cases**

*Bunn v. Dash*
    No. 2:20-cv-07389-DMG-JC
    2021 WL 4868353 (C.D. Cal. Jul. 23, 2021) ............................................. 4, 6

*Moten v. Pulido*
    No. 2:22-cv-04942-DOC
    2023 WL 8254480 (C.D. Cal. Oct. 23, 2023) ................................................ 6

*Thomas v. Anderson*
    No. 1:12-cv-1343 2020 WL 1042517 (C.D. Ill. Mar. 4, 2020) ..................... 6

## I. INTRODUCTION

Plaintiffs Amanda Hale and Jesus Gomez ("Plaintiffs") respectfully request that this Court deny Defendants Brinker International, Inc., Brinker International Payroll Company, L.P., and Brinker Restaurant Corporation's (referred to herein collectively as "Defendants") Motion for Summary Judgment (the "Motion"), as set forth herein.

With the exception of Issue One, which Plaintiffs do not oppose,[1] Defendants have not carried their burden of proof as to **any** of the other six issues presented in their Motion.

As to Issue Two, the Requests for Admission upon which Defendants' entire argument is based have not been deemed admitted by Plaintiff Gomez, because they were never served in compliance with Rule 5.

As to Issue Three, Defendants have omitted and/or mischaracterized significant portions of Plaintiff Hale's deposition testimony, which shows that she was not authorized and permitted to take duty-free rest periods, and was denied the opportunity to take duty-free meal periods, which at a minimum creates disputed issues of fact that must be resolved by a factfinder.

As to Issue Four, Plaintiffs have presented sufficient evidence of unreimbursed business expenses to support their claim, or at a minimum, create disputed issues of fact.

As to Issues Five and Six, Defendants' Motion fails to address numerous alternative bases to seek both attorney's fees and prejudgment interest on Plaintiffs' claims.

For all the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendants' Motion as to Issues Two through Six.

---

[1] Plaintiffs do not oppose the dismissal of Defendants Brinker International, Inc., and Brinker Restaurant Corporation, as requested in Defendants' Issue One.

1
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## II. ARGUMENT

### A. ISSUE TWO: Plaintiff Gomez Did Not Fail to Timely Deny or Object to the Requests for Admission Because the Requests Were Never Validly Served.

Defendants argue that all of Plaintiff Gomez's claims should be adjudicated in Defendants' favor, because Plaintiff Gomez allegedly failed to timely respond to Defendants' Requests for Admissions, Set One (the "RFAs"). Defendants contend that the RFAs have therefore been deemed admitted. However, as explained below, the RFAs were never properly served in compliance with Federal Rule of Civil Procedure 5, and therefore, **none** of the RFAs have been deemed admitted. This is fatal to Defendants' Motion as to Issue Two, which is based entirely on the allegedly admitted RFAs.

Defendants claim to have "served" the RFAs on both Plaintiffs on July 3, 2024, but have not even included a proof of service with their Motion. In reality, the RFAs were e-mailed to counsel for Plaintiffs on July 3, 2024, in an e-mail sent to attorneys and staff at the Setareh Law Group, and three attorneys (and no staff) at the Haines Law Group.[2] However, neither Plaintiff in this action has ever consented to electronic service in writing, as required by Rule 5(b)(2)(E) for electronic service to be effective. *See* Declaration of Fletcher W. Schmidt ("Schmidt Decl.") at ¶ 5; Declaration of Shaun Setareh ("Setareh Decl.") at ¶ 4; Declaration of Paul K. Haines ("Haines Decl.") at ¶ 3; Declaration of Andrew J. Rowbotham

---

[2] When this litigation was first initiated, Plaintiff Amanda Hale was represented by Setareh Law Group, and Plaintiff Jesus Gomez was represented by Haines Law Group, in two separate lawsuits. Schmidt Decl. at ¶ 2; Setareh Decl. at ¶ 2. The matters were consolidated on August 8, 2023 through the filing of a Second Amended Complaint naming both Plaintiffs. *See* ECF No. 61. Counsel for Plaintiffs reached an agreement to jointly prosecute the case, with Setareh Law Group being primarily responsible for handling the litigation, but with each office remaining responsible for responding to discovery served on their respective clients. Schmidt Decl. at ¶ 2; Setareh Decl. at ¶ 2.

2
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

("Rowbotham Decl.") at ¶ 3; and Fed. R. Civ. P. 5(b)(2)(E) (authorizing electronic service through a "means that the person consented to in writing").

While the attorneys and staff at Setareh Law Group saw and responded to the discovery served on Plaintiff Hale, the attorneys at Haines Law Group did not see the e-mail with the RFAs directed to Plaintiff Gomez which was sent on July 3, 2024 (as the Haines Law Group was already closed for the July 4th holiday). *See* Schmidt Decl., at ¶ 3; Setareh Decl., at ¶ 4; Haines Decl., at ¶ 2; and Rowbotham Decl., at ¶ 2. Counsel for Plaintiff Gomez was not even aware of the existence of the RFAs until May 12, 2025, when counsel for Defendants inquired into the missing responses for the first time. *Id*. Counsel for Plaintiff Gomez immediately responded to counsel for Defendants, notified counsel for Defendants that they were not aware of any discovery having been served on Plaintiff Gomez, and agreed to provide substantive responses, notwithstanding their position that the discovery had not been validly served since Plaintiffs had never consented to e-mail service in writing. Schmidt Decl., at ¶ 4 and Exhibit A. Counsel for Plaintiff Gomez explained that in any matter where their office was consenting to e-mail service, they always provide a service list that includes the paralegals who are responsible for processing discovery requests and calendaring all discovery deadlines, and offered to enter into such an agreement in this case moving forward. *Id*. Plaintiff Gomez served verified responses on June 11, 2025, which included objections that the RFAs were improperly served in violation of Rule 5(b)(2). *Id.* at ¶ 6; and ECF No. 150-4.

Defendants argue that their own failure to comply with Rule 5(b)(2) should be excused, and all of Plaintiff Gomez's claims should be adjudicated in Defendants favor, because: (1) the time to object to the method of service of the RFAs has expired; (2) Plaintiffs also served discovery through e-mail; and (3) Plaintiff Gomez has not filed a motion for relief from the admissions pursuant to Rule 36(b). **All** of these arguments are without merit and have been rejected by numerous courts under nearly identical circumstances.

3
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 5(b)(2)(E) authorizes service by electronic means "**that the person consented to in writing**." Fed. R. Civ. P. 5(b)(2)(E) (emphasis added). Furthermore, the Advisory Committee notes from the 2001 amendment to FRCP 5 specify that "[t]he consent **must be express**, and **cannot be implied from conduct**." Fed. R. Civ. P. 5, Advisory Committee Notes, 2001 Amendment (emphasis added).

In *Bunn v. Dash*, the plaintiff propounded requests for admissions on the defendant, and served the requests via e-mail only to the attorney for the defendant. *See Bunn v. Dash*, No. 2:20-cv-07389-DMG-JC, 2021 WL 4868353 at *2 (C.D. Cal. Jul. 23, 2021). The defendant failed to respond to the requests for admissions, and the plaintiff subsequently moved for summary judgment, relying in part on the purportedly "deemed admissions" which the plaintiff claimed had been deemed admitted by operation of Rule 36. *Id.* at *2-4. In response, the defendant filed a motion for relief from the deemed admissions, arguing that improper service of the requests meant that there could not be any deemed admissions under Rule 36. *Id.* at *5. In ruling on the motion, the court expressly rejected the plaintiff's argument that the defendant had impliedly consented to e-mail service based on serving its own discovery via e-mail, and found that the requests had never been properly served in compliance with Rule 5:

> [T]he Requests were never "deemed admitted" by operation of law under Rule 36(a) because they were not properly served so there is no need to "relieve" Defendant of making deemed admissions or to authorize him to "withdraw" the same. As noted above, Plaintiff served Defendant with the Requests solely by email on November 16, 2021, but Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure authorizes service by "electronic means if the person consented in writing." Plaintiff essentially argues that the Court should reject Defendant's contentions regarding service because the record reflects that defense counsel actually received the Requests and, in any event, defense counsel's own service of discovery to Plaintiff via

Case 3:21-cv-09978-VC   Document 152   Filed 09/11/25   Page 9 of 20

> electronic drop boxes created by defense counsel evidences defense counsel's agreement to receive documents via electronic service. The Court disagrees. As suggested by the Advisory Committee notes to Rule 5, **the Court may not imply agreement from conduct – the agreement must be express** and here, no evidence of such an express agreement has been presented. Moreover, because Plaintiff served the Requests only via email, Defendant was under no obligation to respond, even assuming defense counsel actually did receive and see the Requests when they were emailed on November 16, 2021. Thus, Defendant's Motion is effectively moot because there are no "deemed admissions" to withdraw or from which to relieve him.

*Id.* at *6-7 (internal citations omitted) (emphasis added).

The same conclusion was reached by the court in *Stephenson v. California*, where the defendant moved for summary judgment on the grounds that the plaintiff's failure to respond to requests for admissions deemed the matters admitted. *See Stephenson v. California*, 761 F.Supp.3d 1242 (C.D. Cal. 2025). The *Stephenson* court found that the plaintiffs had never expressly consented to electronic service in writing and therefore none of the requests for admission could be deemed admitted:

> There has been no proffer of written consent by Plaintiffs to electronic service. McKee argues that Plaintiffs should be equitably estopped from contesting electronic service of the RFAs because they also engaged in electronic service throughout discovery, acknowledged receipt of the RFAs, and never previously objected to electronic service…Notwithstanding that Plaintiffs engaged in electronic service and that the RFAs may have been received, the text of Fed. R. Civ. P. 5(b)(2)(E) requires written consent. The advisory notes confirm that consent "must be express, and cannot be implied from conduct." Fed. R. Civ. P. 5, Advisory Committee Notes, 2001 Amendment. Without an electronic service agreement in

5
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

place, the unanswered RFAs cannot deemed admitted contrary to the plain text of the rule.

*Id.* at *1258-59. *See also, e.g., Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, 896 F.Supp.2d 223, 228 (S.D.N.Y. 2012) ("Here, it is undisputed that the FD Defendants did not consent *in writing* to accept service by electronic means. Thus, the service was void, and no response was necessary.") (italics in original); and *Thomas v. Anderson*, No. 1:12-cv-1343, 2020 WL 1042517 at *2-3 (C.D. Ill. Mar. 4, 2020) ("But where service is void, no response is necessary. Therefore, Defendants did not fail to timely object because they had no duty to object…The Advisory Committee's notes leave no doubt that express consent is required under Rule 5(b)(2)(E) and it 'cannot be implied from conduct.'…Therefore, Defendants did not waive their objection by themselves serving discovery electronically.") (internal citations omitted).

Here, just as in *Bunn v. Dash* and *Stephenson v. California*, the time to object to the method of service of the RFAs has not expired, **because it never began to run**. *See, e.g., Moten v. Pulido*, No. 2:22-cv-04942-DOC, 2023 WL 8254480 at *1 (C.D. Cal. Oct. 23, 2023) ("Because defendants were never properly served with the July RFAs, they were not obligated to respond to them."). For the same reason, Plaintiff Gomez had no obligation to seek relief from the purportedly "deemed admissions" because there were no admissions deemed in the first place to seek relief from. *See, e.g., Bunn v. Dash, supra*, 2021 WL 4868353 at *6 ("[I]rrespective of Defendant's Motion, the Requests were never "deemed admitted" by operation of law under Rule 36(a) because they were not properly served so there is no need to "relieve" Defendant of making deemed admissions or to authorize him to "withdraw" the same.").

Lastly, Defendants' attempt to convince this Court to find that Plaintiff Gomez impliedly consented to e-mail service based on a proof of service showing

that Plaintiff Hale and Setareh Law Group served discovery via e-mail[3] is completely at odds with the controlling law, which requires **express written consent** to e-mail service. Because there was no express written consent to e-mail service here, the RFAs were never properly served and therefore never deemed admitted. Because all of Defendants' arguments as to Issue Two are entirely dependent upon the allegedly admitted RFAs, Defendants' Motion must be denied as to Issue Two.

### B. ISSUE THREE: Plaintiff Hale's Testimony Supports Her Meal and Rest Period Claims.

Defendants contend that they are entitled to judgment as to Plaintiff Hale's meal and rest period claims based primarily on Plaintiff Hale's deposition testimony and timeclock attestation responses, which Defendants argue show that Plaintiff Hale always had the opportunity to take all of her meal and rest periods and any missed meal or rest periods were purely voluntary. However, Defendants have omitted and mischaracterized sworn testimony from Plaintiff Hale that in fact does establish that she was prevented from taking duty-free meal and rest periods, or at a minimum, creates disputed fact issues that must be resolved by a finder of fact.

#### i. Plaintiff Hale Testified that She Was Not Authorized and Permitted to Take Duty-Free Rest Periods.

First, the evidence cited by Defendants as to Issue Three relates primarily to meal periods and addresses rest periods only minimally, omitting substantial testimony from Plaintiff Hale regarding Defendants' failure to authorize and permit duty-free rest periods. For example, Plaintiff Hale testified unequivocally that she was not authorized and permitted to take duty-free rest periods while employed by

---

[3] While it is not necessary to the Court's decision on this issue, Plaintiff Gomez emphasizes that his counsel, the Haines Law Group, had only served papers by mail prior to the dispute over the RFAs arising in May 2025. Schmidt Decl., ¶ 7.

Defendants. *See* Hale[4] at 136:12 – 137:24 ("Rest break, I didn't even know rest breaks existed...yeah, there was no rest break. I would ask to step out for a cigarette, but that would take two minutes. But as a rest break, those didn't exist."); *id.* at 171:2-8 ("we didn't know about rest breaks"); *id.* at 172:8-9 ("I don't ever even recall a rest break.").

While Defendants characterize this as a "remarkable claim," it is actually consistent with Defendants' own testimony regarding their workplace culture (*See, e.g.* Fredericks at 39:22 – 40:1 ("you're talking about something that just isn't in our – it's not our culture. People just don't in the middle of the heat – you know, servers would never want to take a break.")), and the fact that Defendants do not have any policy or procedure for paying rest period premiums. *See* Hunt at 37:21 – 39:17 (admitting that Defendants have never paid a single rest period premium and have no procedure for paying rest period premiums). Although Defendants claim that Plaintiff "did not know the duration" of her cigarette breaks, Plaintiff Hale testified that her cigarette breaks were nowhere near 10 minutes in length. *See* Hale at 173:1-2 ("I would ask to step out for a cigarette. But for 10 minutes, no."); and *id* at 136:22-24 ("…that would take two minutes.").

The timeclock attestations relied on by Defendants do not help them on Plaintiff Hale's rest period claim, because the wording of the attestations misses the mark. The language of the timeclock attestations,[5] as quoted by Defendants on

---

[4] All of the deposition testimony cited herein is attached to the Schmidt Declaration filed concurrently herewith.

[5] The clock-in prompt states: "I have read and understand the California Meal & Rest Break Policy. It's my responsibility to clock out for my 30-minute meal period before my 5th hour of work when I work a shift that is over 5 hours. All 10 minute rest breaks are on-the-clock."
The clock-out prompt states: "I acknowledge Brinker provided me a 30 minute meal period if I worked over 5 hours and a 2nd one if I worked over 10 hours. If I chose not to take a provided meal period, I acknowledge it was my voluntary choice & I was paid for my time. Yes____ No ____" *See* Motion at pp. 6-7.

pages 6 and 7 of their Motion, barely refer to rest periods, and they do not require the employees to attest that they have been authorized and permitted to take a duty-free rest period of at least 10 minutes for each four-hours worked, or major fraction thereof. Without this legally significant language, the attestations are largely irrelevant with respect to rest periods.

### ii. Plaintiff Hale Testified That She Was Denied Meal Periods.

Contrary to Defendants' characterization of Plaintiff Hale's testimony, Plaintiff Hale testified at length about meal period violations and did not "walk back" her allegations.

Plaintiff Hale testified that there were occasions when she requested a meal period and was denied by her manager. *See* Hale at 118:17-21 ("**Q:** So did you ever go to a manager and request to take a meal break and they told you you are not allowed to have a meal break? **A:** Yeah, occasionally, yes."); and *id* at 119:17-19 ("So what was told to me, yes, if I did ask for a meal period, I was sometimes declined due to based on the way the restaurant was running.").

Plaintiff Hale also testified that there were shifts where she was so busy that there was no opportunity at all to even think of taking a meal period. *See* Hale at 121:25 – 122:4 ("There are days that you didn't get breaks. There are days we were very busy from 4:00 to closing, on some days. That…didn't even come to thought."); and *id.* at 221:10-11 ("There was days where you could be busy from 4:00 to close.").

Plaintiff Hale also testified that on the rare occasions when she did clock out for a meal period, she remained on duty despite being off-the-clock. *See* Hale at 114:23 – 115:25 ("**Q:** So if [you] clocked out for lunch break, [you] couldn't walk across the street to 7-Eleven? **A:** Depending on the shift and who you were working with, yes. **Q:** Why – why can't [you] leave the store if [you're] off the clock? **A:**

Because we didn't have servers to break us. So when we would ask for food, we would still have tables."); *id.* at 166:15-17 (**Q:** You were never punished for taking a 30-minute off-the-clock meal period; correct? **A:** No, because I worked during off the clock."); *id.* at 168:4-8 ("During that meal break, as I stated, I'd watch my tables"); and *id.* at 169:8-16 ("That was majority of the time when I did not have someone there to watch my tables, that's correct. When I would clock out for food on a meal period, majority of the time I was always still working while eating.").

While Plaintiff Hale testified that she was not specifically instructed by her manager to clock out and continue working, she testified that manager approval was needed before clocking out for a meal period, meaning her manager would be aware that she was off-the-clock and continuing to wait on her tables because there was nobody to cover them. *See* Hale at 129:16 – 130:2; 132:12-14; and 168:4-18.

The timeclock attestations are also not particularly probative of a knowing and voluntary waiver of Plaintiff Hale's meal periods, because there is a dispute of fact over whether the attestations were truly knowing and voluntary.[6] Defendants admit that until some time in 2019, if an employee selected "no" in response to the clock-out prompt (indicating that the employee had not voluntarily waived their meal period) the system would require them to obtain manager approval before allowing them to clock out and go home for the day. *See* Hunt at 17:7 – 18:8 and Exhibit 2. Plaintiff Hale testified multiple times that the requirement to obtain manager approval acted as a disincentive to honestly answering "no" at the clock-out screen:

> **Q:** So what did clicking "Yes" represent?
> **A:** It would let you clock out and go home. You wouldn't have to go search for a manager.

---

[6] The attestations also do not address whether the meal period was duty-free, which is a significant omission, particularly given Plaintiff Hale's testimony about remaining on duty during meal periods.

10
PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

> **Q:** No, no that's – not the consequence. What did pressing "Yes" represent, if you know?
> **A:** Honestly, I don't know. I was tired by the end of my shift. I just wanted to get out of there. That is what I'm trying to state.
>
> * * *
>
> **Q:** Okay. Do you know what is meant by the words "would create a large hassle" in this sentence?
> **A:** Yeah. It would have been a hassle getting a manager to clock me out. Managers were busy at the end of the night. They were doing their inventory. They were in back doing checkouts. Hassle, yeah, to go back there and stop them, they probably would not had a moment right away. I wanted to go home.

Hale at 99:12-20 and 164:16-23; *see also* Hale at 97:3-6 ("So when I hit 'No,' I had to go find a manager. By the end of my shift, I didn't want to find a manager. I wanted to go home."); *id.* at 99:8-9 ("What I do remember is we could not click out if we hit 'No.'"); *id.* at 159:18-19 ("I hit 'no' multiple times. And what I do remember is I had to get a manager."); *id.* at 161:21-22 ("If you said no, you couldn't click out. If you clicked yes, you can go home."); and *id.* at 163:17-24 (**Q:** Did you ever have that understanding that selecting no on the attestation form as you clocked out would create a large hassle? **A:** Yeah because I had to get a manager every time. So if I had to ask the manager five days a week to clock me out, could I have got in trouble, absolutely, I'm sure I could have.").

Adding to the farcical nature of the attestation, the language of the prompts actually contradict the testimony of Defendants' own 30(b)(6) witness. Specifically, the clock-in prompt states (in part): "It's my responsibility to clock out for my 30-minute meal period before my 5th hour of work when I work a shift that is over 5 hours." Motion at p. 6. However, Defendants' own 30(b)(6) witness testified that manager approval is required in order to take a meal period, and before an employee can take a meal period, "[t]he manager has to ensure that the restaurant duties at that time are taken care of if someone is not in their role doing their job

responsibilities." *See* Fredericks at 31:6-14; and *id.* at 61:11-15 ("So yes, we would have to have a coaching conversation with the team member on if you need to take a 30-minute break, or are planning to, you need to notify a manager so we can cover your job responsibilities during that time.").

This is set against the backdrop of a workforce in which 96.2% of shifts in excess of six hours show no recorded meal period (*see* ECF No. 102) and the management speaks of a "culture" where breaks are not taken (*see, e.g.* Fredericks at 47:24 – 48:1 ("It is very uncommon in our restaurant culture at a Chili's for team members to request a 30-minute unpaid break while on a scheduled shift.")). Therefore, it is credible for Plaintiff Hale to testify that her affirmative responses to the prompt "I acknowledge Brinker provided me a 30 minute meal period…" were really just a default response in order to clock out, and the Court should assign the attestation responses little probative value.

### C. ISSUE FOUR: Plaintiffs' Testimony Supports Their Claim for Unreimbursed Business Expenses.

Defendants contend that they are entitled to judgment on Plaintiffs' claim for reimbursement of necessary business expenses because neither Plaintiff can demonstrate that they had to purchase the HotSchedules application during the statute of limitations period, and because it was not "necessary" for either Plaintiff to use their personal cell phone at work. As explained below, Defendants have fallen well short of carrying their burden to prove, based on undisputed facts, that they are entitled to judgment as a matter of law on Plaintiffs' reimbursement claim.

First, with respect to the expense of purchasing the HotSchedules application itself, while it is true that Plaintiff Hale could not recall the timing of when she downloaded the HotSchedules application, Plaintiff Gomez testified that it became a requirement in approximately 2018 or 2019, which would have fallen within the statute of limitations period, which reaches back to November 18, 2017. *See* Gomez at 74:2-10. Plaintiff Hale also testified that the HotSchedules application was not

free to download. *See* Hale at 108:25 – 109:19. Therefore, at a minimum, there is a question of fact as to whether Plaintiffs incurred a reimbursable business expense by downloading the HotSchedules application.

It is completely irrelevant that Plaintiff Hale testified that her cousin paid for her to download the HotSchedules application. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal.App.4th 1137, 1144 (2014) ("When ruling, the trial court assumed that an employe does not suffer an expenditure or loss under section 2802 if his or her cell phone charges were paid for by a third person…As we discuss, each of these legal assumptions was erroneous. It does not matter whether the phone bill is paid for by a third person, or at all. In other words, it is no concern to the employer that the employee may pass on the expense to a family member or friend…").

With respect to the use of his personal cell phone, contrary to what Defendants represented in their Motion, Plaintiff Gomez testified that he was specifically told that he was required to use HotSchedules on his personal cell phone:

> **Q:** Do you know whether there was a way to access HotSchedules in the restaurant, not using your phone?
> **A:** We asked once, but we were always told to use through our phones or if we had a computer at home, then to use that.
> \* \* \*
> **Q:** Approximately, five or six years ago, when you believe you were told to use HotSchedules on your phone, do you know whether you could access HotSchedules through the computer that you would clock in and out of?
> **A:** No. We were told that we needed to download the application. And if we did not download it, they would not have us on the schedule.

Gomez at 72:20-25 & 75:21 – 76:2.

Lastly, with respect to Plaintiff Hale's allegation that she was required to purchase a black polo shirt, she has not abandoned this allegation. While the black polo shirt was not referenced in Plaintiff Hale's response to Defendants' Special

Interrogatory No. 7 (which appears to have been inadvertently truncated) it was specifically referenced in response to Defendants' Special Interrogatory No. 14, which asked an almost identical question. *See* Schmidt Decl., at ¶ 8 and Exhibit B at Responses No. 7 & 14. The fact that Defendants' counsel chose not to ask her about the black polo shirt during her deposition should not be held against Plaintiff Hale.

### D. ISSUE FIVE: Plaintiffs Are Entitled to Seek Attorney's Fees Pursuant to Labor Code 218.5 and 2802(c).

With respect to Issue Five in Defendants' Motion, Defendants are asking the Court to summarily adjudicate Plaintiffs' entitlement to attorney's fees based on the specific statutes and doctrines cited in Plaintiffs' operative complaint. Motion at p. 19. Plaintiffs concede that some of the statutes and doctrines cited in the operative complaint will not apply here now that this case is proceeding on an individual basis. However, Plaintiffs are not limited to seeking attorney's fees solely based on the specific statutes cited in their operative complaint. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief,* not causes of action, statutes or legal theories.") (italics in original) (citing Fed. R. Civ. P. 8(a)(2)). Here, the Court cannot grant summary adjudication as to Plaintiffs' entitlement to attorney's fees based solely on the statutes cited in the operative complaint, because Plaintiffs can seek attorney's fees based on other authorities, including Labor Code Section 218.5.

Labor Code Section 218.5 provides for attorney-fee shifting to a prevailing employee in "any action brought for the nonpayment of wages." Labor Code § 218.5. In *Betancourt v. OS Restaurant Services, LLC*, the California Court of Appeal held conclusively that where meal or rest period claims are paired with derivative claims for wage statement penalties under Labor Code Section 226 or waiting time penalties under Labor Code Section 203, just as they are here, the action *is* an action brought for the nonpayment of wages, and attorney's fees are

recoverable pursuant to Labor Code 218.5. *See Betancourt v. OS Restaurant Services, LLC*, 83 Cal.App.5th 132, 139-40 (2022) (affirming decision awarding attorney's fees under Section 218.5 in an action where "[t]he only wage and hour claims alleged and litigated by the parties were for rest break and meal period violations (§ 226.7), and claims for penalties (waiting time penalties under § 203 and wage statement violations under § 226) based on the rest break and meal period violations.").

Attorney's fees are also recoverable on Plaintiffs' expense reimbursement claim pursuant to Labor Code 2802(c), which includes its own fee shifting provision. *See* Labor Code § 2802(c) ("For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.").

### E. ISSUE SIX: Plaintiffs Are Entitled to Seek Prejudgment Interest Based on the California Constitution and/or Labor Code Section 218.6.

Similar to Issue Five, in Issue Six, Defendants are asking the Court to find that prejudgment interest is not available on Plaintiff's meal period and rest period claims, based solely on the specific statute cited in the operative complaint (Labor Code Section 218.6). As discussed in the previous section, Plaintiffs are not limited to seeking prejudgment interest solely based on the specific statutes cited in their operative complaint. *See Alvarez v. Hill*, *supra*, 518 F.3d at 1157. Here, prejudgment interest is available on Plaintiffs' meal and rest period claims based on the California Constitution. *See Naranjo v. Spectrum Security Services, Inc.* 13 Cal.5th 93, 102 (2022) ("We also resolve a dispute over the rate of prejudgment interest that applies to amounts due for failure to provide meal and rest breaks. Here, we agree with the Court of Appeal that the 7 percent default rate set by the state Constitution applies.")

However, even if Plaintiffs were limited to seeking fees under Section 218.6 only, the *Betancourt* decision implies that prejudgment interest at the 10 percent rate would be recoverable on Plaintiffs' meal period and rest period claims under Section 218.6. This is because both Sections 218.5 and 218.6 use the exact same wording of "[i]n any action brought for the nonpayment of wages…" Given that *Betancourt* (which was published after *Naranjo*) held that an action for meal and rest period premiums that includes derivative claims for wage statement and waiting time penalties *is* an "action brought for the nonpayment of wages" for purposes of Section 218.5, it would follow that the same would be true for Section 218.6, and prejudgment interest would be available at the higher rate. *See Betancourt v. OS Restaurant Services, LLC, supra*, 83 Cal.App.5th at 139-40 ("Here, plaintiff's complaint sought penalties, costs and attorney fees under section 226 for failing to include rest break premiums on her itemized wage statements; and waiting time penalties under sections 201 through 203 for failure to pay all wages on termination. These were claims for nonpayment of wages.")

## III.   CONCLUSION

For all the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' Motion.

Dated:  September 11, 2025

Respectfully submitted,
HAINES LAW GROUP, APC

By:  _____
Fletcher W. Schmidt
Attorneys for Plaintiffs